COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
EMILY E. TERRELL (234353)
(eterrell@cooley.com)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC., <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No.  2:20-cv-10753-AB-MRW <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FACEBOOK, INC.'S MOTION TO DISMISS** <br><br> DATE:  March 19, 2021 <br> TIME: 10:00 A.M. <br> COURTROOM: 7B <br> JUDGE:  Hon. André Birotte Jr. |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................... 2

   A.   Procedural Background ................................................................. 2

   B.   Overview of the '599 Patent ........................................................ 2

      1.   The Specification of the '599 Patent .................................. 2

      2.   The Claims of the '599 Patent ........................................... 4

   C.   Overview of the '439 Patent ........................................................ 6

      1.   The Specification of the '439 Patent .................................. 6

      2.   The Claims of the '439 Patent ........................................... 9

   D.   The Parties' Meet and Confer. ................................................... 10

III. LEGAL STANDARDS ........................................................................ 10

   A.   Patent Eligibility is Determined Using the *Alice* Two-Step Test. .......... 10

   B.   The Court Can and Should Address § 101 Invalidity Under Rule 12(b)(6) ................................................................................... 11

IV.  ARGUMENT: THE '599 AND '439 PATENTS ARE INVALID .................. 11

   A.   *Alice* Step 1: The '599 and '439 Claims Are Directed to Patent-Ineligible Abstract Ideas. ............................................................. 11

      1.   The '599 Claims Are Directed to an Abstract Idea. ..................... 11

      2.   The '439 Claims Are Directed to an Abstract Idea. ..................... 17

   B.   *Alice* Step 2: The '599 and '439 Claims Recite No Inventive Concept ....................................................................................... 19

      1.   The '599 Claims Recite No Inventive Concept. ......................... 19

      2.   The '439 Claims Recite No Inventive Concept. ......................... 21

   C.   Dismissal With Prejudice Is Appropriate. ............................... 22

V.   CONCUSION ..................................................................................... 22

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

**MEMO. OF POINTS AND AUTHORITIES ISO**
**FACEBOOK'S MOTION TO DISMISS**
**Case No. 2:20-cv-10753-AB-MRW**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ............................................................... 12, 20

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014).................................................................................*passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020) .................................................................... 12

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) .............................................................. 11, 15

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .................................................................... 21

*BlackBerry Ltd. v. Facebook, Inc. et al*,
  Case No. CV 18-1844-GW-KSx, 2019 WL 11670622 (C.D. Cal. Oct.
  1, 2019), *aff'd*, 831 Fed.Appx. 502 (Fed. Cir. Dec. 10, 2020)..................... 13, 14

*Bridge and Post, Inc. v. Verizon Commns., Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ............................................................ 12, 13

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .................................................................*passim*

*ChargePoint v. SemaConnect*,
  920 F.3d 759 (Fed. Cir. 2019) ................................................................. 11, 14

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) .................................................................*passim*

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) .................................................................... 16

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  No. 2019-1765, 2020 WL 3400682 (Fed. Cir. June 19, 2020) ......................... 20

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ............................................................... 1, 11, 15, 17

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ...................................................................*passim*

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ...................................................................... 16, 17

*Ericsson Inc. v. TCL Comm. Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) ............................................................................ 12

*EveryMD.com LLC v. Amazon.com, Inc.*,
    Case No. CV 17-05573-AB, 2017 WL 6886181 (C.D. Cal. Dec. 5,
    2017) .......................................................................................................... 13, 16

*Fairwarning IP v. LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016), ..................................................................... 12, 14

*Finnavations LLC v. Payoneer, Inc.*,
    C.A. No. 1:18-cv-00444-RGA, 2018 WL 6168618 (D. Del. Nov. 26,
    2018) ...................................................................................................................... 16

*FitBit Inc. v. Aliphcom, Inc.*,
    No. 16-cv-00118-BLF, 2017 WL 3129989 (N.D. Cal. July 24, 2017) ................... 15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ............................................................... 1, 12, 13, 20

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ...................................................................... 14, 21

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ............................................................................ 21

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ............................................................................ 15

*Nagravision SA et al v. NFL Enterprises, LLC*,
    Case No. 17-03919-AB, 2018 WL 1807285 ..................................................... 13, 21

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:18-cv-01844-GW-KS

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Purepredictive, Inc. v. H20.AI, Inc.*,
Case No. 17-cv-03049-WHO, 2017 WL 3721480 (N.D. Cal. Aug. 29, 2017), *aff'd*, 741 Fed.Appx. 802 (Fed. Cir. Nov. 7, 2018).....................................22

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ............................................................19

*SAP Am. Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) .......................................................*passim*

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) .....................................................11, 17

*Smartflash LLC v. Apple Inc.*,
680 Fed. App'x 977 (Fed. Cir. 2017) ....................................................14

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .......................................................19, 20

*Trading Techs. Int'l v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019) ............................................................18

*Trading Techs. Int'l v. IBG LLC*,
921 F.3d 1378 (Fed. Cir. 2019) ............................................................18

*TriDim Innovations LLC v. Amazon.com, Inc.*,
207 F.Supp.3d 1073 (N.D. Cal. 2016)...................................................22

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ............................................................19

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) .......................................................13, 20

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017) .....................................................16, 17

**Other Authorities**

Rule 12(b)(6).......................................................................................11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:18-cv-01844-GW-KS

## I.     INTRODUCTION

The '599 and '439 patents claim only high-level desired results for providing information based on a user's "context" such as time, location, and movement.   In particular, the '599 claims are directed to the abstract idea of presenting interactive content to a user based on their context.   The '439 claims are directed to the abstract idea of using event information to modify stored information about a user and providing a notification of the change.   People have used the same ideas in the real world for generations.   Indeed, the Federal Circuit has held that "tailoring content" based on "information known about the user," such as "location or address" or "time of day of viewing" content, is a "fundamental practice long prevalent in our system." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("*IV/Capital One I*") (quoting *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356 (2014)) (ellipses omitted).   The Federal Circuit has also made clear that claims directed to gathering, storing, analyzing, and transmitting information are not patent-eligible. *Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

The claims of both patents fail the two-step *Alice* test under a long line of Federal Circuit precedent.   The claims fail step one because they recite only desired results, not any improvement to the functioning of a computer or any specific technological solution.   The claims fail step two because they contemplate nothing more than a "generic computer implementation" with "purely functional" elements. *Alice*, 134 S.Ct. at 2358-60.   The claims never specify <u>how</u> to program a system to achieve the desired results.   Instead, the patents proclaim that their high-level ideas can be implemented with any code, data, and/or hardware.   ('599, col. 3:34-49; '439, col. 10:3-20.)

PARC has not raised any facts or claim constructions that might avoid dismissal. Any amendment would be futile in view of the claim language and specifications.   As such, the complaint should be dismissed with prejudice as to the '599 and '439 patents.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

## II.   STATEMENT OF FACTS

### A.   Procedural Background

PARC filed its original complaint on November 25, 2020.[1]  PARC alleges that Facebook infringes seven patents.  PARC also asserts six patents against Twitter, Inc.[2] and three patents against Snap, Inc. in cases pending before this Court.[3]

PARC alleges that in the 1970s it pioneered products such as laser printers and PCs.[4]  Decades later, PARC has entered the business of patent litigation.  The patents it asserts in this case, however, claim only ineligible ideas for gathering, analyzing, and presenting information using conventional technologies.  While none of the patents pass muster under § 101, this motion challenges only the first two patents asserted in PARC's complaint.  PARC also asserts these two patents against Twitter and Snap.

### B.   Overview of the '599 Patent

#### 1.   The Specification of the '599 Patent

The '599 patent was filed in 2008 and is titled "Context and activity-driven content delivery and interaction."  (Dkt. 1-1.)  Consistent with its title, the patent is concerned with ideas for "creating and presenting content based on contextual information."  '599, col. 1:7-11, Abstract; Compl. ¶¶ 30-37 (PARC's summary of the patent discussing "creating and presenting content based on contextual information").

The patent acknowledges that "mobile devices are becoming an integral part of human life" and may "perpetuate a fast-paced lifestyle" including monitoring "a number of communication channels."  '599, col. 1:17-32.  However, mobile devices were "not capable of learning and understanding the behavior of their users" and did "not take into account the activities that their users are involved in."  *Id.*, col. 1:29-46.

To address those perceived issues, the patent proposes the idea of "creating and presenting content based on contextual information."  *Id.*, col. 1:7-11.  The idea "is

---

[1] Dkt. 1 ("Compl.").
[2] Case No. 2-20-cv-10754-AB-MRW.
[3] Case No. 2-20-cv-10755-AB-MRW.
[4] Compl., ¶ 20.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

intended to help a user manage their content and responsibilities around their schedule"—much like people in the real world help each other manage their activities and schedules. *Id.*, col. 3:58-60.

The basic idea is straightforward. "Content" is created and stored, such as a "grocery list," music, or other possibilities. *Id.*, col. 7:60-8:60. A "context" for the user is determined that may include an activity and/or location such as "going out to dinner," "driving a car," or "commuting to work." *Id.*, col. 7:30-58. The context may be based on information such as "time of day," "geographical location," or "motion detection." *Id.*, col. 6:23-7:2. Based on "presentation rules" including a "trigger condition" that a user may define, the context may "trigger" the content to be presented to the user. *Id.*, col. 1:56-62, 3:55-58, 4:29-32, 11:11-21. Figure 3, cited in PARC's complaint (¶ 36), illustrates the idea.



**FIG. 3**

The content may be "interactive content" that includes "prompts or questions" to the user. '599, col. 7:65-8:3, 8:54-60. As one example of content eliciting a response, a simple "reminder" may be presented based on a user's context including time, location, and movement, similar to people in the real world providing reminders to other people. *Id.*, col. 13:59-14:12, 14:29-38 (Table 2). If the user responds "OK," the reminder is not presented again; if the user does not respond "OK," the reminder is suspended and presented again at a later time. *See id.* Another example is interactive language lessons. For example, for "a user that is learning Japanese," play "'good morning' in Japanese when the user is moving around the bedroom before 10 AM." *Id.*, col. 11:11-41, 15:63-67 (customized language lessons when "the user is driving to work" versus "riding the train to work"). The user can specify an "expected response"

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

to the content that is checked against a user's response, such as to "mimic" a spoken phrase by speaking it back correctly. *Id.*, col. 10:58-11:9 (Table 1), 11:27-41. For example, upon hearing "good morning" in Japanese, the user can repeat back the same greeting, and the lesson checks if the user "correctly mimics the phrase in Japanese." *Id.*, col. 11:33-36. The user can also "specify actions" to be performed based on the response, such as to "suspend" the greeting for seven days if the user mimics it correctly, or repeat it in five minutes if the user did not mimic it correctly. *Id.*, col. 11:31-41.

The patent does not narrowly limit the types of "context" or "content." A context may broadly include any "input data that is gathered by a computing device from a number of input sources" regarding the user and/or user's device, and "can be based on or include one or more user activities." *Id.*, col. 6:15-19, 4:9-29. The specification admits that mobile devices conventionally gathered "contextual information" of various types. *Id.*, col. 6:8-7:2. Similarly, the "content" may encompass audio, visual, or "any other content suitable for delivery in a range of contexts." *Id.*, col. 3:60-64; *see also* '599, claims 10, 11, 17, 18, 24, 25 (numerous examples of "context" and "content"). The specification admits that "[m]obile devices often include presentation mechanisms for reproducing audio and/or video content." *Id.*, col. 7:60-61.

Critically, the '599 patent does not describe any specific new technology or any improvement to a computer system. Instead, it states that its ideas could be implemented, somehow, with "code and/or data" or "hardware modules" that are "now known or later developed." *Id.*, col. 3:34-49.

### 2.    The Claims of the '599 Patent

Consistent with the specification, the '599 claims recite steps and functions for presenting interactive content based on context. PARC alleges that Facebook infringes at least independent claims 1, 12, and 19. (Compl., ¶ 44.) Claim 1 recites as follows:

> 1. A method for delivering context-based content to a first user, the method comprising:
>
> receiving at least one content package, wherein the content package includes at least one content piece and a set of rules

Cooley LLP
Attorneys at Law
Palo Alto

4.

Memo. of Points and Authorities ISO
Facebook's Motion to Dismiss
Case No. 2:20-cv-10753-AB-MRW

associated with the content package, wherein the set of rules includes a trigger condition and an expected response, and wherein the trigger condition specifies a context that triggers a presentation of the content piece;

receiving a set of contextual information with respect to the first user;

processing the contextual information to determine a current context for the first user;

determining whether the current context satisfies the trigger condition;

in response to the trigger condition being satisfied, presenting the content piece to the first user;

receiving a response from the first user corresponding to the presented content piece;

determining whether the received response matches the expected response; and

performing an action based on an outcome of the determination.

Claim 12 recites the same steps, to be performed by a "computer." Claim 19 recites substantially the same steps in the context of an apparatus with functional elements to perform each function. These three claims mirror the steps shown in Figure 3 of the '599 patent plus additional steps of receiving a response, determining a match, and performing some further action.

The dependent claims add various steps and functions: create content packages (claims 2, 13, and 20) that can be "sharable" (claims 3, 14, and 21); define a context (claims 4, 15, and 22) and update entries in a database (claims 5, 16, and 23); define contexts and rules using "high-level abstractions" and "parameters" (claims 6-8); share content with a remote device (claim 9); and use various types of contextual information (claims 10, 17, and 24) and content (claims 11, 18, and 25).

Even a cursory review confirms that the claims are directed only to abstract functional aspirations, not any concrete technological improvement. The same idea exists in the real world. Every day, people help manage each other's schedules and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

1    responsibilities and interact with each other based on context.  For example, an

2    employee is working on a project due on a certain date.  A week before the deadline,

3    their manager checks in with a reminder.  If the employee responds "Thanks, I'm on

4    it," the manager doesn't check in again.  If the employee doesn't respond, the manager

5    pings them again a day or two later.

6    **C.    Overview of the '439 Patent**

7         **1.    The Specification of the '439 Patent**

8         The '439 patent was filed in 2013, five years after the '599 patent, and is titled

9    "Generalized contextual intelligence platform."  (Dkt. 1-2.)  The patent generally

10   discusses receiving event data based on contextual information, using the event data to

11   modify stored information about a user, and providing a notification of the update.  *See*

12   Compl. ¶¶ 61-64 (summary of the purported invention including receiving event data,

13   modifying a context graph that stores user-related information based on the event data,

14   and sending a notification of the change if there is a matching registration).

15        The abstract nature of the purported invention can be readily appreciated in the

16   context of the background prior art.  The patent's "Related Art" section admits that

17   several relevant technologies were known in the prior art.  '439, col. 1:12-32.  There

18   were "mobile devices equipped with technology to detect physical surroundings."  *Id.*,

19   col. 1:13-15.  There were mobile devices with software providing "context-aware

20   systems that may adapt to the computing environment, including physical surroundings,

21   and make recommendations based on the physical surroundings."  *Id.*, col. 1:15-21.

22   Thus, a "context-aware system on a mobile device detects the computing environment

23   and adapts to changing conditions detected from the environment, such as location and

24   movement of the mobile device, nearby devices, and other surrounding conditions."

25   *Id.*, col. 1:22-26.  These "context-aware systems" could store a "user model" that

26   "describes user activity and interests at different points in time, including present and

27   future activity" such that the "system may recommend activities, such as leisure

28   activities, based on the user model."  *Id.*, col. 1:27-32.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

Against this background of admitted prior art technologies, the purported advance claimed in the '439 patent is not any inventive new technology. It is merely an idea for using event data to update stored information about a user and providing a notification of the change. *Cf.* Compl. ¶¶ 61-64. In particular, the patent describes and claims that event data can be used to modify stored information about a user in a "context graph," and then an update is sent to a "recommender." Both the "context graph" and the "recommender" borrow from prior art concepts. The "context graph" is a generic "model" for storing information about a user, much like the prior art "user model." '439, col. 1:28-30 (a prior art "user model describes user activity and interests at different points in time"), 3:20-22 (a "context graph is an in-memory model that stores facts and assertions about a user's behavior and interests"), 7:25-40 (describing "context graph" embodiment). For example, a context graph "may include data relating to the personal habits of the user. Such data may include that a user tends to drink coffee at four o'clock, or that the user tends to go to work at two o'clock." *Id.*, col. 7:29-33. A "recommender is an application that recommends items or activities for a user." *Id.*, col. 3:23-25. This is essentially the same as the admitted prior art software that can "make recommendations based on the physical surroundings" and "recommend activities . . . based on the user model." *Id.*, col. 1:18-32.

In the patent's disclosed embodiment, a generic server receives event data that is derived from contextual data, modifies a context graph, and sends a notification of the change to a recommender. *Id.*, col. 9:13-29. The specification describes that "event data" can be determined based on contextual information. For example, "event data" could be "a walking pattern" that is "sensed by an accelerometer" or other event data based on contextual data such as "location, movement, and/or compass measurement" information. *Id.* at 3:4-29, 5:36-44, 8:65-9:12.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW



**FIG. 6**

The high-level process flow is shown in Figure 6. First, conventional "detectors" such as "GPS, an accelerometer, and/or a compass" may provide contextual data that "may indicate that a user is performing certain activities such as, for example, walking, running, or opening an application on the mobile device." *Id*., col. 3:49-54, 8:65-9:9. The server may then receive "event data" from the device, as per step **602** in Figure 6. *Id*., col. 9:15-16. The server may then "modify" or "update" a context graph using the event data, as per steps **604** and **606** in Figure 6. *Id*., col. 9:23-26. The server then sends an update to a recommender, as per step **608** in Figure 6. *Id*., col. 9:28-29.

Like the '599 patent, the '439 patent does not teach any new technology. It states that its disclosure is intended to provide only a "generic" contextual intelligence platform with a "generic infrastructure" that "may be adapted for specific applications." *Id*., col. 2:49-55. The "generic" guidance would supposedly help someone "save considerable time and expense" in developing a "customized" system. *Id*., col. 2:49-55, 3:33-45. In other words, rather than describe the technical details of how to build a specific system application, the patent provides only a high-level "generic" abstraction and leaves to others the work of developing "customized" "specific applications." Indeed, the '439 contains substantially the same language as the '599 proclaiming that its ideas could be implemented, somehow, with any "code and/or data" or any "hardware modules" that are "now known or later developed." *Id*., col. 10:3-20.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

**2.      The Claims of the '439 Patent**

Consistent with the "generic" approach of the '439 specification, the '439 claims recite only desired functional results.  PARC alleges that Facebook infringes "at least" independent claims 1, 9, and 13.  (Compl., ¶ 69.)  Claim 1 recites as follows:

> 1. A method, comprising:
>
> receiving, from a mobile device, event data derived from contextual data collected using detectors that detect a physical context surrounding the mobile device;
>
> modifying a context graph that stores facts and assertions about a user's behavior and interests using the event data;
>
> in response to determining that there exists a registration for notification of changes that matches the modification to the context graph, sending a notification of context graph change to a recommender.

Claim 7 recites the same steps, to be performed by a "computer."  Claim 13 recites the same steps in the context of a system with "one or more processors."  These claims generally correspond with the flow in Figure 6 of the '439 patent: receive event information, use it to update a context graph, and notify a recommender of the change.

The dependent claims of the '439 patent recite similarly high-level, result-oriented steps and functions for gathering information: receive additional event data and send a "second notification" of a context graph change (claims 2, 8, 14); use "high-level event data" (claims 3, 9, 15); query for context graph data (claims 4, 10, 16); modify the context graph based on real-time event data from a "RESTful WebAPI" (claims 5, 11, 17); and modify the graph based on a "bulk upload" of event data (claims 6, 12, 18).

Nothing in the '439 claims improves any underlying computer or technology.  Indeed, the same idea exists in the real world.  Take the example of an employee working on a project.  The employee starts regularly working overtime hours at home.  Their manager is notified of the update and can make a recommendation such as suggesting that the employee check in regularly regarding workload.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

### D.    The Parties' Meet and Confer.

Facebook, Twitter, and Snap met and conferred with PARC prior to the present motion.  (Mead Decl., ¶ 2.)  Prior to the meet and confer, the defendants sent correspondence to PARC explaining that the asserted patents are ineligible under § 101 and requesting that PARC disclose any factual allegations and proposed claim constructions it believed would impact § 101.  (Mead Decl., Ex. A.)

In the meet and confer, PARC indicated certain positions on the '599 and '439 patents.  Regarding *Alice* step one, PARC stated its view that each of the '599 and '439 patents "solves an Internet-specific problem with an Internet-specific solution."  (Mead Decl., Ex. B.)  For the '599 patent, PARC noted that the Examiner had addressed § 101 during prosecution.  (*Id.*)  For the '439 patent, PARC asserted that the "context graph" is a computer-based data repository.  (*Id.*)  Regarding *Alice* step two, PARC stated its belief that the "context graph" is inventive for the '439 patent.  (*Id.*)  It did not identify anything for the '599 patent.  (*Id.*)

PARC subsequently sent correspondence indicating that it would not provide further details on its § 101 positions, nor would it amend its complaint, despite the defendants having informed PARC of their § 101 concerns and their expectation to move to dismiss on that basis.  (Mead Decl., Ex. C.)  Facebook subsequently notified PARC that it would be moving specifically on the '599 and '439 patents and offered to discuss anything further, which PARC declined.  (Mead Decl., Ex. D.)

## III.   LEGAL STANDARDS

### A.    Patent Eligibility is Determined Using the *Alice* Two-Step Test.

In *Alice*, the Supreme Court articulated the two-step test for determining eligibility under § 101.  *Alice,* 134 S. Ct. at 2355.  At step one, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea.  *Id.*  If the claims are directed to an abstract idea, then the court advances to step two to look to the elements of the claim "both individually and as an ordered combination" to determine whether there is an "inventive concept"—*i.e.*, an element or combination of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355.

### B. The Court Can and Should Address § 101 Invalidity Under Rule 12(b)(6).

Invalidity under § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *ChargePoint v. SemaConnect*, 920 F.3d 759, 765-66 (Fed. Cir. 2019) (affirming Rule 12(b)(6) dismissal). The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Elec. Comm'n Techs.*, 958 F.3d at 1184 (citation omitted).

## IV. ARGUMENT: THE '599 AND '439 PATENTS ARE INVALID.

### A. *Alice* Step 1: The '599 and '439 Claims Are Directed to Patent-Ineligible Abstract Ideas.

At step one, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art" to "determine whether the claim's character as a whole is directed to ineligible subject matter." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (citations and internal quotations omitted). For computer-related claims, courts determine whether the claims focus on a "specific means or method that improves the relevant technology," which may pass muster under § 101, or on a "result or effect that itself is the abstract idea and merely invokes generic processes and machinery," which cannot. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotation marks and citation omitted). "[T]o be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

#### 1. The '599 Claims Are Directed to an Abstract Idea.

The claims of the '599 patent fall squarely into the category of abstract ideas. The claims are directed to the abstract idea of presenting interactive content to a user based on their context. The claims recite only high-level functional results: content is

Cooley LLP
Attorneys At Law
Palo Alto

11.

Memo. of Points and Authorities ISO
Facebook's Motion to Dismiss
Case No. 2:20-cv-10753-AB-MRW

received, contextual information is received, a condition is satisfied, content is presented to a user, a user response is received and checked, and a resulting action is taken.  The claims "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem." *Customedia*, 951 F.3d at 1365.  They recite only "essentially result-focused, functional" language that fails to provide "the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1296-97 (Fed. Cir. 2020) (citation omitted).  "Merely claiming those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance, does not make a claim eligible at step one." *Ericsson Inc. v. TCL Comm. Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) (citation and internal quotations omitted).

The '599 claims thus reside in the "familiar class of claims that do not focus on an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *SAP Am.*, 898 F.3d at 1168.  These claims are ineligible just like claims directed to similar abstract ideas such as (1) "customizing information based on information known about the user and navigation data," *IV/Capital One I*, 792 F.3d at 1369, (2) "using a computer to deliver targeted advertising to a user," *Customedia*, 951 F.3d at 1362-63, (3) "analyzing records of human activity to detect suspicious behavior," *Fairwarning IP v. LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016), (4) "tracking a user's computer network activity and using information gained about the user to deliver targeted media, such as advertisements," *Bridge and Post, Inc. v. Verizon Commns., Inc.*, 778 F. App'x 882, 884-85, 889 (Fed. Cir. 2019), (5) "delivering user-selected media content to portable devices," *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267-69 (Fed. Cir. 2016) ("*Affinity/Amazon*"), (6) "having users consider historical usage information while inputting data," *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018), (7) "showing an advertisement before delivering free content," *Ultramercial, Inc. v. Hulu, LLC*, 772

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

F.3d 709, 714-15 (Fed. Cir. 2014), (8) "gathering and analyzing information of a specified content, then displaying the results," *Elec. Power*, 830 F.3d at 1354, and a host of others. *See also Nagravision SA et al v. NFL Enterprises, LLC*, Case No. 17-03919-AB (SKx), 2018 WL 1807285, at *15-18 (ineligible abstract idea of "limiting access to information based on location"); *EveryMD.com LLC v. Amazon.com, Inc.*, Case No. CV 17-05573-AB (FFMx), 2017 WL 6886181, at *7 (C.D. Cal. Dec. 5, 2017) (ineligible abstract idea of "using an intermediary to facilitate communication").

Indeed, the Federal Circuit has held that "tailoring content" based on "information known about the user," such as the user's "location or address" or "time of day of viewing" the content, is a "fundamental practice long prevalent in our system." *IV/Capital One I*, 792 F.3d at 1369-70 (quoting *Alice*, 134 S. Ct. at 2356) (ellipses omitted). For example, "television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed." *Id.* The claims of the '599 patent reflect a similar idea for customizing content for a user based on context such as time and/or location. *See also BlackBerry Ltd. v. Facebook, Inc. et al*, Case No. CV 18-1844-GW-KSx, 2019 WL 11670622 at *7 (C.D. Cal. Oct. 1, 2019) (noting that abstract ideas of "saving and organizing information and choosing some of that information to send to a person based on the person's location or a 'triggering event' . . . are concepts that the Federal Circuit has repeatedly held to be abstract."), *aff'd*, 831 Fed.Appx. 502 (Fed. Cir. Dec. 10, 2020); *Bridge and Post*, 778 F. App'x at 884 (noting that the "concept of tailoring advertisements based on user data . . . dates back at least to local radio and television ad[s], which played only for users located in specific cities"). Furthermore, the interactive nature of the content does not make it any less abstract, as humans commonly communicate interactively in the real world. *See Ultramercial*, 772 F.3d at 712-15 (invalidating claims reciting the selective presentation of "interactive" advertising messages); *IV/Capital One I*, 792 F.3d at 1370 (the ineligible claims recited an "interactive interface" that was "tasked with tailoring information and providing it to the user").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

The specification illustrates the same focus as the claims.  *ChargePoint*, 920 F.3d at 766-69 (the specification may be "helpful in illuminating what a claim is 'directed to'" though "reliance on the specification must always yield to the claim language in identifying that focus").  It states that the "present invention" relates to "creating and presenting content based on contextual information."  '599, col. 1:7-11, 1:50-62; Abstract.  Figure 3 illustrates a series of high-level functional steps consistent with the claims.  *Id.*, Fig. 3.  The idea may further involve "present[ing] interactive content to the user, where a user can interact with the interactive content" through questions and responses, such as an interactive Japanese language lesson or a "reminder" where the user can respond "OK."  *Id.*, col. 7:65-8:3, 8:54-60, 10:58-11:41, 13:59-14:38.

The abstract nature of the claims is not altered by the recited "rules" including a "trigger condition," which are essentially just logical "if-then" statements.  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("*IV/Capital One II*") (holding claim ineligible where it "provides little more than an unspecified set of rules" for achieving desired results); *Smartflash LLC v. Apple Inc.*, 680 Fed. App'x 977, 982 (Fed. Cir. 2017) (invalidating claims for controlling access to data based on rules); *Fairwarning IP*, 839 F.3d at 1094-96 (invalidating claims reciting "rules" for monitoring data); *BlackBerry*, 2019 WL 11670622 at *7 (ineligible claims recited choosing information to send to a person based on their location or a "triggering event").

Nothing in the dependent claims changes the overall focus.  They recite ideas for creating and storing types of content and contextual information, but "[i]nformation as such is an intangible, hence abstract." *SAP Am.*, 898 F.3d at 1167 (citation and internal quotes omitted).[5]  "As many cases make clear, even if a process of collecting and

---

[5] *See* '599, claims 2, 13, and 20 (create content packages), 3, 14, and 13 ("sharable" content packages), 4, 15, and 22 (define a context), 5, 16, and 23 (update entries in a database), 6-8 (define contexts and rules using "high-level abstractions" and "parameters"), 9 (share content with a remote device), 10, 17, and 24 (use various types of contextual information), 11, 18, and 25 (various types of content).

CooleyLLP
Attorneys At Law
Palo Alto

14.

Memo. of Points and Authorities ISO
Facebook's Motion to Dismiss
Case No. 2:20-cv-10753-AB-MRW

1    analyzing information is 'limited to particular content' or a particular 'source,' that

2    limitation does not make the collection and analysis other than abstract." *Id.* at 1168

3    (quoting *Elec. Power*, 830 F.3d at 1353).   The generic "database" in the dependent

4    claims does not affect the analysis either. *Alice*, 134 S. Ct. at 2360 (recitation of a "data

5    storage unit" failed to confer patent-eligibility); *Mortgage Grader, Inc. v. First Choice*

6    *Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (invalidating claims reciting

7    a "database" that stores input information that is searched).

8         Contrary to PARC's contention, the '599 patent does not solve an Internet-

9    specific problem with an Internet-specific solution.   The claims do not even mention

10   the Internet or Web other than three dependent claims mentioning types of content

11   (claims 11, 18, 25).   The idea reflected in the claims commonly arises in everyday life

12   when people communicate with each other based on each other's contexts.   The patent

13   states that its idea "is intended to help a user manage their content and responsibilities

14   around their schedule" ('599, col. 3:58-60)—much like humans do with each other, but

15   "do it on a computer." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir.

16   2016) (citing *Alice*, 134 S.Ct. at 2358).   It is well-settled that a "purported improvement

17   in user experience," without more, is not "sufficient to render the claims directed to an

18   improvement in computer functionality." *Customedia*, 941 F.3d at 1365.

19        In meet and confer, PARC identified the '599 prosecution as allegedly relevant,

20   but it is immaterial that § 101 arose during the pre-*Alice* prosecution.   In 2011, an

21   examiner applied the old outdated "machine or transformation" test to find the claims

22   "statutory" under § 101 because they would use a generic "processor" and "memory."

23   (Mead Decl., Ex. E.)   After the patent issued in 2013, *Alice* held in 2014 that such

24   "generic computer components" cannot confer eligibility. *Alice*, 134 S.Ct. at 2360.[6]

---

25   [6] Even if an examiner had found the claims eligible after *Alice* (which did not happen)
     that would not bind this Court. *Elec. Comm'n Techs.*, 958 F.3d at 1183 (holding claims
26   ineligible despite patent prosecution where the PTO found that the claims were patent
     eligible—the "procedure of prosecution before the USPTO" does not "in any way shield
27   the patent's claims from Article III review for patent eligibility"); *FitBit Inc. v.*
     *Aliphcom, Inc.*, No. 16-cv-00118-BLF, 2017 WL 3129989, at *1 (N.D. Cal. July 24,
28   2017) (granting § 101 motion and denying reconsideration: a court "need not defer to

1    During the meet and confer, PARC did not cite any cases that support a finding

2    of eligibility.  The *DDR Holdings*, *Enfish*, and *Visual Memory* cases PARC cited are

3    distinguishable.  In *DDR Holdings*, the patent "solved an internet-centric challenge

4    arising from the automatic transporting of website users to third-party websites 'after

5    "clicking" on an advertisement and activating a hyperlink.'"  *EveryMD.com*, 2017 WL

6    6886181, at *9 (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257

7    (Fed. Cir. 2014).  "This issue does not exist outside the cyber world.  For example,

8    customers shopping in a brick-and-mortar store cannot be automatically transported to

9    a different store when they 'encounter a kiosk selling third-party' items within the store.

10   Here, unlike the claimed invention in *DDR Holdings*, the claimed invention . . . does

11   not solve a technological problem or challenge unique to the internet."  *Id.* (citation

12   omitted).  The '599 patent merely proposes an idea for presenting content to a user

13   based on context that is familiar from real world experience.

14   *Enfish* and *Visual Memory* are similarly inapposite.  *Enfish, LLC v. Microsoft

15   Corp.*, 822 F.3d 1327, 1336-39 (Fed. Cir. 2016); *Visual Memory LLC v. NVIDIA Corp.*,

16   867 F.3d 1253, 1259-60 (Fed. Cir. 2017).  The patent in *Enfish* claimed a "specific type

17   of data structure designed to improve the way a computer stores and retrieves data in

18   memory," providing "an improvement to computer functionality itself" with "increased

19   flexibility, faster search times, and smaller memory requirements."  *Enfish*, 822 F.3d at

20   1336-39.  The *Visual Memory* patent claimed "a technological improvement: an

21   enhanced computer memory system" providing a specific "improvement in computer

22   capabilities" through the "use of programmable operational characteristics that are

23   configurable based on the type of processor."  *Visual Memory*, 867 F.3d at 1259-60.

24   Here, by contrast, the "claims do not recite any improvement to the way in which . . .

25   databases store or organize information analogous to the self-referential table in *Enfish*

26   the examiner's conclusions on patent eligibility"); *Finnavations LLC v. Payoneer, Inc.*,
     C.A. No. 1:18-cv-00444-RGA, 2018 WL 6168618, at *2, n.3 (D. Del. Nov. 26, 2018)
27   (granting § 101 motion to dismiss despite the fact the applicant "overcame a Section
     101 rejection during prosecution").
28

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

or the adaptable memory caches in *Visual Memory*." *BSG Tech*, 899 F.3d at 1288 (ineligible claims "directed to the abstract idea of having users consider historical usage information while inputting data").

For these reasons, the '599 claims fail step one.

### 2. The '439 Claims Are Directed to an Abstract Idea.

The claims of the '439 patent are directed to the abstract idea of using event information to modify stored information about a user and providing a notification of the change. The claims borrow from admitted prior art systems that store a user model, detect context around a mobile device, and make recommendations. '439, col. 1:13-32. As such, the "focus of the claimed advance over the prior art" is not any improved new technology but merely a high-level idea that uses conventional prior art technologies. *Simio*, 983 F.3d at 1359. The claims recite desired functional results for collecting information ("receiving, from a mobile device, event data . . ."), processing information ("modifying a context graph . . . using the event data" and "in response to determining that there exists a registration for notification of changes that matches the modification . . ."), and transmitting information (". . . sending a notification of context graph change to a recommender"). Thus, the '439 claims fall squarely within the line of Federal Circuit precedent holding that claims directed to ideas for collecting, storing, analyzing, and transmitting information fail *Alice* step one. *Elec. Comm'n Techs.*, 958 F.3d at 1182 (claimed invention found ineligible "because it amounts to nothing more than gathering, storing, and transmitting information"); *Elec. Power Grp.*, 830 F.3d at 1353-54 (invalidating claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis"); *SAP Am.*, 898 F.3d at 1167 (invalidating claims reciting "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis"). The '439 claims "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem." *Customedia*, 951 F.3d at 1365. They fall within the "familiar class of claims that do not focus on an improvement in computers as tools, but on certain

1  independently abstract ideas that use computers as tools." *SAP Am.*, 898 F.3d at 1168.

2  The '439 specification confirms that the purported invention is not any specific

3  technological solution or improvement, but merely a "generic" abstraction. *See* '439,

4  col. 2:49-52 (purporting to provide "a generic contextual intelligence platform that may

5  be adapted for specific applications"), 2:56 ("generic contextual intelligence platform"),

6  3:33-36 ("generic infrastructure"), 3:40-41 (same). The patent suggests that its

7  "generic" idea might help someone else save time in building "specific applications"

8  (*id.* at 3:33-45), but that does not "render the claims directed to an improvement in

9  computer functionality." *Customedia*, 941 F.3d at 1365; *Trading Techs. Int'l v. IBG*

10  *LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("*Trading Techs. I*") (invalidating claims

11  reciting "a purportedly new arrangement of generic information that assists traders in

12  processing information more quickly" because they did "not improve the functioning

13  of the computer, make it operate more efficiently, or solve any technological problem");

14  *Trading Techs. Int'l v. IBG LLC*, 921 F.3d 1378, 1384-85 (Fed. Cir. 2019) ("*Trading

15  Techs. II*") (invalidating claims that purportedly "improve[d] usability, visualization,

16  and efficiency" of a process rather than "improving computers or technology").

17  There is no basis for PARC's contention that the '439 patent "solves an Internet-

18  specific problem with an Internet-specific solution." The word "Internet" does not even

19  appear in the patent. The idea in the claims—using event information to update stored

20  information about a user and providing a notification of the change—is not specifically

21  rooted in computers or the Internet. It is an idea familiar from everyday life, such as

22  when employees update their work schedules and locations.

23  It is immaterial that the claimed "context graph" is a "computer-based" data

24  repository as PARC asserted during meet and confer. It has been clear since *Alice* that

25  a "generic computer implementation" is insufficient. *Alice*, 134 S.Ct. at 2358-60

26  (invalidating claims reciting "data storage unit"). The patent states that the context

27  graph is only a stored "model" about "a user's behavior and interests." '439, col. 3:20-

28  22. As such, it is merely stored information. "Information as such is an intangible,

Cooley LLP
Attorneys At Law
Palo Alto                                    18.                          Memo. of Points and Authorities ISO
                                                                          Facebook's Motion to Dismiss
                                                                          Case No. 2:20-cv-10753-AB-MRW

1  hence abstract." *SAP Am.*, 898 F.3d at 1167 (holding claims ineligible even though they

2  "require various databases") (citation and internal quotes omitted).

3       Finally, none of the dependent claims changes the overall focus of the claimed

4  invention reflected in the independent claims.   They merely recite various further

5  desired results relating to the event data, context graph, and notifications.[7]

6       As a result, the '439 patent claims fail step one.

7  **B.    *Alice* Step 2: The '599 and '439 Claims Recite No Inventive Concept.**

8       "To save a patent at step two, an inventive concept must be evident in the claims."

9  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).   The

10  inventive concept must provide "significantly more" than the abstract idea itself.   *BSG*

11  *Tech*, 899 F.3d at 1289-90.   "[P]urely functional" elements cannot confer eligibility.

12  *Alice*, 134 S. Ct. at 2359-60 (citation omitted); *In re TLI Commc'ns LLC Patent Litig.*,

13  823 F.3d 607, 611-12 (Fed. Cir. 2016).

14       **1.    The '599 Claims Recite No Inventive Concept.**

15       The '599 claims fail step 2 because they recite nothing more than a "generic

16  computer implementation" with "purely functional" features.   *Alice*, 134 S. Ct. at 2358-

17  60; *In re TLI*, 823 F.3d at 612.   The claims use only "generic functional language to

18  achieve the[] purported solutions."   *Two-Way Media Ltd. v. Comcast Cable Commc'ns,*

19  *LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).   The claims state only open-ended

20  functional goals that somehow, using some unspecified hardware and software, content

21  is received, contextual information is received, a condition is satisfied, a response is

22  received and checked, and an action is taken.   "At that level of generality, the claims do

23  no more than describe a desired function or outcome, without providing any limiting

24  detail that confines the claim to a particular solution to an identified problem."   *Affinity*

25  *Labs*, 838 F.3d at 1269.

---

26  [7] *See* '439 claims 2, 8, 14 (receive additional event data and send a "second
    notification" of a context graph change), 3, 9, 15 (use "high-level event data"), 4, 10,
27  16 (query for context graph data), 5, 11, 17 (modify the context graph based on real-
    time event data from a "RESTful WebAPI"), 6, 12, 18 (modify the graph based on a
28  "bulk upload" of event data).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

19.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

During the meet and confer, PARC did not point to any specific elements in the '599 claims that provide an inventive concept, and none exist.  For example, the claims' recitations of a generic "processor" or "computer" do not provide an inventive concept. *Alice*, 134 S. Ct. at 2358-60; *Customedia*, 951 F.3d at 1366 ("Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea.").  The "mechanism" and "manager" elements in claim 19 do not provide an inventive concept either.  The specification confirms these are merely conventional and purely functional "black box" items, as shown in Figure 1, not inventive new technology.  '599, col. 5:33-41, Fig. 1.  *Alice*, 134 S. Ct. at 2360 (claim elements such as "data processing system," "communications controller," and "data storage unit" were "purely functional and generic" and failed to provide an inventive concept); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 2019-1765, 2020 WL 3400682, at *3 (Fed. Cir. June 19, 2020) (affirming claimed advance over prior art was a "functional abstraction" where the specification treated an element of the claimed invention as "a black box"); *In re TLI*, 823 F.3d at 612 (claims failed step two where "[t]he specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.").

Nor is there any inventive concept in the cursory reference to Internet blogs and Web content in dependent claims 11, 18, and 25.  "An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *IV/Capital One I*, 792 F.3d at 1366 (citing *Alice*, 134 S. Ct. at 2358); *Ultramercial*, 772 F.3d at 716 ("[t]he claims' invocation of the Internet also adds no inventive concept.").

The specification confirms the absence of any inventive concept in the claims.  It admits that mobile devices conventionally gathered contextual information and presented content such as audio and video. '599, col. 6:8-7:2, 7:60-61.  It also proclaims that its ideas can be implemented with any software, data, and/or hardware. *Id.*, col. 3:34-49.  Thus, "[n]othing in the claims, understood in light of the specification,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1350.

Considering each claim as an "ordered combination" of elements does not reveal any inventive concept that is "significantly more" than the abstract idea sufficient to "transform the nature of the claim" into a patent-eligible invention. *BSG Tech*, 899 F.3d at 1289-90. The claims are devoid of any "specific or limiting recitation of improved computer technology." *Nagravision*, 2018 WL 1807285, at *18 (quoting *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016)) (ellipsis omitted). Whether "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *IV/Capital One II*, 850 F.3d at 1342; *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (claims lacked an inventive concept because they recited "no more than performing the abstract idea of parsing and comparing data with conventional computer components").

As a result, the '599 claims fail step two and are patent-ineligible under § 101.

### 2. The '439 Claims Recite No Inventive Concept.

The '439 claims fail step 2 under the same case law precedent as the '599 claims. The high-level, purely functional and result-oriented claims of the '439 patent do not recite anything "significantly more" than the abstract idea itself that would be sufficient to "transform" the idea into a patent-eligible invention. *BSG Tech*, 899 F.3d at 1289-90; *IV/Capital One II*, 850 F.3d at 1342; *Symantec*, 838 F.3d at 1316. The '439 claims do not contain anything significantly more than the abstract idea to be implemented using admittedly conventional technologies. The specification confirms that the patent purports to provide only a "generic" abstraction and does not describe any inventive new software or hardware. '439, col. 2:49-52, 10:3-20. *Alice*, 134 S. Ct. at 2358-60 (a "generic computer implementation" cannot confer eligibility at step two).

Contrary to PARC's contention, the "context graph" is not an inventive concept,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

for similar reasons as it did not save the claims at step one.  It is merely an "in-memory model" that stores information about a user, just like human memory.  '439, col. 3:20-22, 7:25-40.  As such, it is an abstract notion for storing intangible information that is nothing "significantly more" than the admitted prior art "user model."  *BSG Tech*, 899 F.3d at 1290.  It is also part of the abstract idea itself: stored information about a user. "It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *Id.* (citation omitted).

For these reasons, the '439 claims fail step 2 and are ineligible under § 101.

## C.   Dismissal With Prejudice Is Appropriate.

Finally, the Court should dismiss the complaint with prejudice as to these two patents.   During meet and confer, PARC did not proffer any additional factual allegations or proposed claim constructions that it believed might affect the § 101 inquiry, despite the defendants expressly asking PARC to identify any allegations or claim constructions that PARC believed might be relevant.   Moreover, amendment would be futile in view of the patents' claims and specifications.  *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F.Supp.3d 1073, 1081 (N.D. Cal. 2016) (granting dismissal for ineligibility: "Because the Court finds that any amendment would be futile, the dismissal is with prejudice").  *Purepredictive, Inc. v. H20.AI, Inc.*, Case No. 17-cv-03049-WHO, 2017 WL 3721480, at * 7 (N.D. Cal. Aug. 29, 2017) ("Amendment would be futile in light of the analysis above"), *aff'd*, 741 Fed.Appx. 802 (Fed. Cir. Nov. 7, 2018).

## V.   CONCUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the complaint with prejudice as to the '599 and '439 patents.

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

| 1 | Dated: February 12, 2021 | COOLEY LLP |
| 2 | | */s/ Heidi L. Keefe* |
| 3 | | HEIDI L. KEEFE (178960) |
| | | (hkeefe@cooley.com) |
| 4 | | MARK R. WEINSTEIN (193043) |
| | | (mweinstein@cooley.com) |
| 5 | | LOWELL D. MEAD (223989) |
| | | (lmead@cooley.com) |
| 6 | | 3175 Hanover Street |
| | | Palo Alto, CA  94304-1130 |
| 7 | | Telephone: (650) 843-5000 |
| | | Facsimile:  (650) 849-7400 |
| 8 | | |
| 9 | | EMILY E. TERRELL (234353) |
| | | (eterrell@cooley.com) |
| 10 | | 1299 Pennsylvania Avenue, NW |
| | | Suite 700 |
| | | Washington, DC 20004-2400 |
| 11 | | Telephone:  (202) 842-7800 |
| | | Facsimile:  (202) 842-7899 |
| 12 | | |
| 13 | | Attorneys for Defendant |
| | | Facebook, Inc. |
| 14 | | |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23.

MEMO. OF POINTS AND AUTHORITIES ISO
FACEBOOK'S MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW