Alan P. Block (SBN 143783)
ablock@mckoolsmith.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 694-1200
Facsimile:    (213) 694-1234

David Sochia (TX SBN 00797470)
(Pro Hac Vice)
dsochia@McKoolSmith.com
Ashley N. Moore (TX SBN 24074748)
(Pro Hac Vice)
amoore@McKoolSmith.com
Alexandra F. Easley (TX SBN 24099022)
(Pro Hac Vice)
aeasley@McKoolSmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 500
Dallas, Texas 75201
Telephone (214) 978-4000
Facsimile: (214) 978-4044

James E. Quigley (TX SBN 24075810)
(Pro Hac Vice)
jquigley@McKoolSmith.com
McKool Smith, P.C.
300 W. 6th Street, Suite 700
Austin,, Texas 7870
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Attorneys for Plaintiff
PALO ALTO RESEARCH CENTER INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC., <br><br> Plaintiff. <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 2:20-cv-10753 AB(MRWx) <br><br> **PALO ALTO RESEARCH CENTER INC.'S RESPONSE TO FACEBOOK, INC.'S MOTION TO DISMISS** <br><br> DATE: MARCH 19, 2021 <br> TIME: 10:00AM <br> COURTROOM: 7B <br> JUDGE: Hon. André Birotte Jr. |

McKool Smith, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKool Smith, P.C.

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................. 1

II. LEGAL STANDARD .......................................................... 2

    A.   Motions to Dismiss .................................................. 2

    B.   Patent Eligibility Under 35 U.S.C. § 101 ................................ 3

        1.   *Alice* Step One .................................................. 3

        2.   *Alice* Step Two .................................................. 4

III. ARGUMENT ................................................................. 5

    A.   Facebook's Motion Should be Denied for Failing to Meet and Confer. ............................................................. 5

    B.   The '599 Claims Solve a Difficult Problem Using Mobile-Device Tools to Trigger the Display of Specific Content in a New and Unique Way ...................................................... 8

        1.   The '599 Patent is Not Directed to an Abstract Idea. .................... 9

        2.   PARC's Plausible Allegations, When Taken as True, Show the '599 Claims Recite an Inventive Concept. ..................... 13

    C.   The '439 Patent Claims Patentable Subject Matter. .................... 16

        1.   The '439 Patent Claims are Not Directed to an Abstract Idea. ............................................................ 17

        2.   PARC's Plausible Allegations, When Taken as True, Show the '439 Claims Recite an Inventive Concept. ..................... 20

    D.   Facebook's Behavior Contradicts Its § 101 Arguments. .................. 22

    E.   If Needed, PARC Should Be Permitted to Amend its Complaint. .......... 22

IV. CONCLUSION ................................................................. 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKOOL SMITH, P.C.

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
   882 F.3d 1121 (Fed. Cir. 2018) .......................................................2, 15, 16, 22

*Access Ins. Co. v. Peralta,*
   No. 8:15-cv-622-JLS, 2015 WL 13036938 (C.D. Cal. Oct. 13, 2015) ...............7

*Aftechmobile Inc. v. Salesforce.com, Inc.,*
   No. 4:19-cv-5903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2, 2020).............23

*Alice Corp. Pty. v. CLS Bank Int'l,*
   573 U.S. 208 (2014)...................................................................................1, 3, 4

*Allconnect, Inc. v. Consumer Brands, LLC,*
   No. 2:18-cv-5959-DOC, 2018 WL 7377934 (C.D. Cal. Dec. 14, 2018) .....15, 21

*Amdocs (Israel) Limited v. Openet Telecom, Inc.,*
   841 F.3d 1288 (Fed. Cir. 2016) .........................................................................14

*Ancora Techs., Inc. v. HTC Am., Inc.,*
   908 F.3d 1343 (Fed. Cir. 2018) ...................................................................8, 16

*Baker v. Firstcom Music,*
   No. 2:16-CV-08931-VAP, 2017 WL 9500980 (C.D. Cal. Nov. 3, 2017) ..........7

*BASCOM Global Internet Servs. v. AT&T Mobility LLC,*
   827 F.3d 1341 (Fed. Cir. 2016) ................................................................4, 5, 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................2

*Berg v. Popham,*
   412 F.3d 1122 (9th Cir. 2005) ...........................................................................2

*Berkheimer v. HP Inc.,*
   881 F.3d 1360 (Fed. Cir. 2018) .........................................................................3

*CardioNet, LLC v. InfoBionic, Inc.,*
   955 F.3d 1358 (Fed. Cir. 2020) ..................................................................11, 19

PARC RESPONSE TO FACEBOOK MOTION TO DISMISS        CASE NO. 2:20-CV-10753 AB(MRWx)

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
  No. 2:19-cv-9129-AB, slip op. (C.D. Cal. July 1, 2020) (Ex. F) ................ 16, 22

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ................................................................... 5, 14

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ............................................................... 9, 10, 11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ................................................................ passim

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) .................................................................. 12, 19

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................ passim

*Erickson v. Pardus*,
  551 U.S. 89 (2007)............................................................................................. 2

*Genetic Techs. Ltd. v. Merial LLC.*,
  818 F.3d 1369 (Fed. Cir. 2016) ....................................................................... 3

*Hypermedia Navigation LLC v. Facebook, Inc.*,
  No. 4:17-cv-5383-HSG, 2018 WL 3932434 (N.D. Cal. Aug. 16, 2018) ........... 19

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) .................................................................. 12, 19

*Kajeet, Inc. v. Qustodio, LLC*,
  No. 8:18-cv-1519-JAK, 2019 WL 8060822 (C.D. Cal. Nov. 1, 2019) ............. 23

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
  942 F.3d 1143 (Fed. Cir. 2019) ...................................................................... 9, 10

*McRO, Inc. v. Bandai Namco Games America, Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................ 4, 11, 19

*Nagravision SA v. NFL Enters., LLC*,
  No. 2:17-cv-3919-AB, 2018 WL 1807285 (C.D. Cal. March 9, 2018) ....... 15, 22

*Proxyconn, Inc. v. Microsoft Corp.*,
  No. 8:16-cv-1102-DOC, 2016 WL 9109110 (C.D. Cal. Sept. 29, 2016)..... 12, 19

McKool Smith, P.C.

*Singer v. Live Nation Worldwide, Inc.*,
   No. 8:11-cv-427-DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012) .................7

*Speakware, Inc. v. Microsoft Corp.*,
   No. 8:18-cv-1293-DOC, slip op. (C.D. Cal. June 6, 2019) (Ex. E) .............15, 21

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020) ...................................................................passim

*Thales Visionix, Inc. v. U.S.*,
   850 F.3d 1343 (Fed. Cir. 2017) ........................................................................20

*Thomas v. Brett Sports & Entm't, Inc.*,
   No. 5:16-cv-480-AB, 2016 WL 4472995 (C.D. Cal. Aug. 23, 2016)..................7

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) ......................................................................3, 4

*Ward v. Circus Circus Casinos, Inc.*,
   473 F.3d 994 (9th Cir. 2007) ..............................................................................5

**STATUTES**

35 U.S.C. § 101.............................................................................................passim

**OTHER AUTHORITIES**

FED. R. CIV. P. 15(a)(2).........................................................................................22

Local Rule 7-3..............................................................................................5, 6, 7

McKool Smith, P.C.

McKool Smith, P.C.

## I.   INTRODUCTION

Facebook's Motion is the first in a series of collective efforts by Defendants (*i.e.*, Facebook, Twitter, and Snap) to render PARC's Patents-in-Suit invalid under 35 U.S.C. § 101. Using the very arguments Facebook has chastised others for employing against its own patents, Facebook here argues that PARC's '599 and '439 patents[1] are patent ineligible. Facebook, like Twitter and Snap, reduces the claimed inventions to the point of absurdity, with no more than lip service paid to the specification, the problems addressed by the technology, or the advances of the claimed inventions over the prior art, even though these considerations are required by law.

In contrast, a proper § 101 analysis considers the claims in light of the specification, the problems the claimed inventions overcome, and the environment in which the claimed inventions operate. That is precisely why the *Alice* test starts with what the claims are "directed to," and not what the claims "recite." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). When the Court views the patents through this lens, they are patent eligible. As explained below, each is directed to computer-specific problems, recites concrete techniques for solving those problems, and provides an advance over conventional systems. The claims are thus patent eligible.

Moreover, Facebook is disingenuous in its arguments. For example, it tries to shoot down the '439 patent's claimed context graph as a non-inventive "generic computer implementation." Yet when Facebook named its infringing system "Unicorn," it did so because it "would solve all of [Facebook's] problems and heal our woes *if only it existed*."[2] It is strange that on one hand, Facebook argues this concept "does not describe any inventive new software of hardware," while on the other hand, its publications lament the absence of the concept's existence. The same is true for the

---

[1]  The '599 patent refers to USP 8,489,599, and the '439 patent refers to USP 9,208,439.

[2]  Unicorn: A System for Searching the Social Graph, cited in PARC's Dkt. 1 ¶ 67 (emphasis added) (https://research.fb.com/wp-content/uploads/2013/08/unicorn-a-system-for-searching-the-social-graph.pdf).

1

'599 patent. Although Facebook characterizes its claims as nothing more than the abstract idea of "tailoring content" based on context (*e.g.,* location, activity, motion, time of day), it said the opposite when arguing the patentability of its own method of ranking notifications based on user history and time of day. A proper § 101 analysis and Facebook's admissions, show that PARC's patents recite patent eligible, inventive concepts such that Facebook's Motion should be denied.

None of what follows in this response is news to Facebook. PARC made these points in its Complaint. And PARC reiterated them in response to Facebook's vague and inadequate assertions about the patents' eligibility during a meet and confer. As a result, the Court need not even address the merits noted above, as Facebook failed to confer in good faith before filing its Motion. As explained below, Facebook's Motion should be denied, and this case should proceed onto the merits.

## II.   LEGAL STANDARD

### A.   Motions to Dismiss

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must provide enough factual detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To make this determination, a court must accept the allegations of the complaint as true, construe the complaint in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005).

The Federal Circuit has restricted the invalidation of patents on a 12(b)(6) motion to instances when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Patent eligibility may contain disputes over underlying facts, such as "[w]hether the claim elements or the claimed combination are well understood, routine, [or] conventional." *Id.* at 1128. And because patents are presumed valid, "[a]ny fact ... that is pertinent to the

McKool Smith, P.C.

2

1    invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*

2    *v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (internal citations omitted).

3    **B.    Patent Eligibility Under 35 U.S.C. § 101**

4         Patent-eligible subject matter is described in 35 U.S.C. § 101, which allows for

5    "any new and useful process, machine, manufacture, or composition of matter, or any

6    new and useful improvement thereof" to be patented. However, there are certain

7    exceptions, such as "[l]aws of nature, natural phenomena and abstract ideas." *Alice*,

8    573 U.S. at 216. To determine whether a patent claim falls into the allowed subject

9    matter or the exceptions noted above, the Supreme Court formulated a two-step test,

10   commonly called the "*Alice*" test. Step one considers whether the claims are directed

11   to one of the exceptions. *Id.* at 217. Step two considers whether the claim elements

12   individually or "as an ordered combination ... transform the nature of the claim into a

13   patent-eligible application." *Id.* (internal quotations omitted). Since *Alice*, the Federal

14   Circuit has added detail to both steps of the analysis, as described below.

15        **1.    *Alice* Step One**

16        *Alice* step one asks "what the patent asserts to be the focus of the claimed

17   advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir.

18   2020) (internal quotations omitted). To meet this step, the claims must be "considered

19   in light of the specification." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335

20   (Fed. Cir. 2016). The Court should also consider "any advances or advantage over the

21   prior art ... ." *Genetic Techs. Ltd. v. Merial LLC.*, 818 F.3d 1369, 1375 (Fed. Cir.

22   2016). To aid the analysis, courts often find it helpful to compare and contrast the

23   claims of prior § 101 rulings. *Enfish*, 822 F.3d at 1334.

24        As it relates to software inventions, the step one decision often "turns on

25   whether the claims focus on specific asserted improvements in computer capabilities

26   or instead on a process or system that qualifies as an abstract idea for which

27   computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,

28   957 F.3d 1303, 1306 (Fed. Cir. 2020); *TecSec*, 978 F.3d at 1293. The Federal Circuit

McKool Smith, P.C.

3

McKool Smith, P.C.

1   has "routinely held software claims patent eligible under *Alice* step one when they are
2   directed to improvements to the functionality of a computer or network platform
3   itself." *Uniloc*, 957 F.3d at 1307 (collecting cases). Another factor is "whether the
4   focus of the claimed advance is on a solution to 'a problem specifically arising in the
5   realm of computer networks' or computers." *TecSec*, 978 F.3d at 1293 (quoting *DDR*
6   *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014)).

7         The Supreme Court has recognized that "[a]t some level, 'all inventions ...
8   embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or
9   abstract ideas.'" *Alice*, 573 U.S. at 217 (quoting *Mayo*, 132 S. Ct. at 1293 (ellipsis in
10  original)). Thus, "courts must be careful" in step one of the analysis "to avoid
11  oversimplifying the claims by looking at them generally and failing to account for the
12  specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games America,*
13  *Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). This is because "describing the claims at
14  [a] high level of abstraction and untethered from the language of the claims all but
15  ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337. That
16  is to be avoided at all costs. *Alice*, 573 U.S. at 217.

17              **2.    *Alice* Step Two**

18        If the character of the claims as a whole—read without oversimplification and
19  in light of the specification—are directed to excluded matter, then the Court proceeds
20  to *Alice* step two. "An invention is not ineligible for patent simply because it involves
21  an abstract concept. Applications of such concepts to a new and useful end ... remain
22  eligible for patent protection." *Id.* Step two thus asks whether the claim elements,
23  considered both individually and as an ordered combination, contain an "inventive
24  concept." *Id.*

25        Courts must again be careful, as "[t]he inventive concept inquiry requires more
26  than recognizing that each claim element, by itself, was known in the art." *BASCOM*
27  *Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).
28  Specifically, "an inventive concept can be found in the non-conventional and non-

generic arrangement of known conventional pieces." *Id.* Similarly, "implementing a well-known technique with particular devices in a specific combination ... can be inventive." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019).

## III.   ARGUMENT

### A.   Facebook's Motion Should be Denied for Failing to Meet and Confer.

Facebook's Motion should be denied without reaching the merits because, prior to filing, Facebook refused to describe the bases for its § 101 allegations and never engaged in a good faith discussion of the substance of its contemplated motion.

Local Rule 7-3 sets forth a party's meet and confer obligations, stating that "counsel contemplating the filing of any motion shall first contact opposing counsel to *discuss thoroughly*, preferably in person, *the substance of the contemplated motion* and any potential resolution." L.R. 7-3 (emphases added). The Court's Standing Order provides that the Rule will be "strictly enforced" and reiterates the language requiring *a movant* to "'discuss thoroughly…the substance of the contemplated motion[.]'" Dkt. 18 at 4 (omission in original). The Standing Order explains that "[t]he purpose of meeting and conferring is to attempt to obviate the need for a motion and thus avoid unnecessary Court intervention, or to narrow the scope of issues the Court must resolve; the parties *must* meet and confer in a good faith attempt to fulfill this purpose." *Id.* (emphasis in original). The remedy for failing to meet and confer in good faith is "strik[ing] or outright deny[ing] a motion or other relief." *Id.*; *see, e.g.*, *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 1000 (9th Cir. 2007) (explaining that when a motion violates the Local Rules, the court may deny the motion on that basis alone).

The pre-filing meet and confer requirement is clear and unequivocal. Despite acknowledging its obligation under Local Rule 7-3, Facebook never disclosed the substance of its contemplated motion prior to filing. In its first notice on the subject, Facebook sent PARC a letter that included just 1.5 pages of text on "Section 101

McKool Smith, P.C.

1    Unpatentability." Dkt. 34-3. Rather than articulate any basis for its § 101 allegations,

2    Facebook simply summarized the two-step *Alice* test and provided a laundry list of

3    cases finding patents ineligible. Not once did Facebook analyze any of the seven

4    Patents-in-Suit, or apply the *Alice* test to explain why a particular claim was not patent

5    eligible. Facebook did not name one patent number in its letter.

6            The parties participated in a meet and confer approximately one week later.

7    During the meet and confer, Facebook refused to provide any additional information

8    about the substance of its § 101 allegations and instead pressed PARC to describe how

9    each of the Patents-in-Suit satisfies the *Alice* inquiry. *See* Dkt. 34-5. PARC explained

10   the difficulty of providing such a response given the lack of detail or analysis in

11   Facebook's letter; however, in an effort to meet and confer in good faith, PARC spent

12   nearly 30 minutes describing on a patent-by-patent basis how each of the Patents-in-

13   Suit are directed at patent-eligible subject matter. *See id.* ("As PARC explained during

14   the call, it is difficult, if not impossible, to divine Defendants' arguments and

15   preemptively address them with any specificity. Nor should such an ambush be the

16   appropriate manner in which a meet and confer is conducted."). At no point during the

17   meet and confer, did Facebook "discuss…the substance of its contemplated motion[,]"

18   as confirmed by both parties' summaries of the call. L.R. 7-3; Dkt. 34-4 (email from

19   Facebook's counsel reflecting that no information was disclosed by Facebook); Dkt.

20   34-5 (PARC letter reflecting same). Two days after the parties' meet and confer,

21   PARC sent Facebook a five-page letter outlining its positions as to why each of the

22   Patents-in-Suit are directed at patent-eligible subject matter.[3] *See* Dkt. 34-5. In that

23   letter, PARC pointed out that Facebook had not yet described the bases for its § 101

24

25   ─────────────────────────

     [3] Facebook states that "PARC subsequently sent correspondence indicating that it

26   would not provide further details on its § 101 positions[.]" Mot. at 5. A review of
     PARC's January 22 letter confirms that Facebook's statement is not accurate; rather,

27   PARC voluntarily sent Facebook a five-page letter outlining its § 101 positions
     shortly after it explained those positions during the parties' meet and confer and

28   answered all questions posed by Facebook's counsel during the call. *See* Dkt. 34-5.

PARC RESPONSE TO FACEBOOK MOTION TO DISMISS          CASE NO. 2:20-CV-10753 AB(MRWx)

McKool Smith, P.C.

1    allegations and had failed to comply with its obligation to meet and confer in good
2    faith. *See id.*

3         On February 3, two weeks *after* the parties' meet and confer, Facebook sent
4    PARC a four-sentence email identifying the patents that were the subject of
5    Facebook's forthcoming Motion. Dkt. 34-6. Facebook closed its email by noting that
6    it was available for another call if PARC believed that such a call would be fruitful.
7    *Id.* Despite what Facebook contends in its Motion, PARC never "declined"
8    Facebook's offer for further discussion. Mot. at 5; *see* Dkt. 34-6. Rather, PARC
9    responded to the email and stated that "further information from Facebook" was
10   needed in order to facilitate a productive discussion between the parties. *Id.* Facebook
11   did not respond to PARC's email and instead proceeded with filing its Motion.

12        Facebook refused to provide any information about the bases for its § 101
13   allegations and never once "discuss[ed] the substance of the contemplated motion[,]"
14   much less provided a "thorough" discussion of the motion's contents. Facebook's pre-
15   filing behavior constitutes a violation of Local Rule 7-3 and thus the Court should
16   strike or deny Facebook's Motion. *See* Dkt. 18 at 4; *Baker v. Firstcom Music*, No.
17   2:16-CV-08931-VAP, 2017 WL 9500980, at *4 (C.D. Cal. Nov. 3, 2017) (denying
18   motion because counsel failed to discuss "'the substance or content'" of the motion
19   prior to filing); *Singer v. Live Nation Worldwide, Inc.*, No. 8:11-cv-427-DOC, 2012
20   WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) (denying motion for failure to comply
21   with Local Rule 7-3 and noting that "conversations about the merits of Plaintiff's
22   claims do not equate with discussions regarding a contemplated motion" (internal
23   quotation marks omitted)); *Thomas v. Brett Sports & Entm't, Inc.*, No. 5:16-cv-480-
24   AB, 2016 WL 4472995, at *1 (C.D. Cal. Aug. 23, 2016) (denying motion for failure
25   to comply with Rule 7-3); *Access Ins. Co. v. Peralta*, No. 8:15-cv-622-JLS, 2015 WL
26   13036938, at *1 (C.D. Cal. Oct. 13, 2015) (striking motion for failure to comply with
27   Local Rule 7-3).

28

McKool Smith, P.C.

**B.** **The '599 Claims Solve a Difficult Problem Using Mobile-Device Tools to Trigger the Display of Specific Content in a New and Unique Way.**

Facebook suggests that the '599 patent is nothing more than a way for "people [to] help manage each other's schedules." Mot. at 5. Not so. The '599 claims solve computer-related problems (mobile devices being unable to learn and understand user behavior to enable better relevant content) with computer-related solutions (using mobile-device specific information to make presentation decisions), and are therefore patent eligible. *See, e.g., Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that "specific technique[s] that depart[] from earlier approaches to solve a specific computer problem" are patent eligible); *Enfish*, 822 F.3d at 1339 (holding that the claims solve "a problem in the software arts…[and] are not directed to an abstract idea"); *TecSec*, 978 F.3d at 1293; *DDR*, 773 F.3d at 1257-59 (finding "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" and is therefore patent eligible).

To better understand the '599 claims and analyze them under the *Alice* framework, a summary of the patent is helpful. When the '599 patent was filed, mobile device makers had begun adding "computation power and a growing number of communication features." '599 patent at 1:22-24. Despite the proliferation of these devices (*e.g.,* phones, PDA, and laptops), they were "not capable of learning and understanding the behavior of their users." *Id.* at 1:19-22, 1:41-43. In fact, "these mobile devices [could not] determine when and how best to provide their users with information or suitable entertainment content, because they [did] not take into account the activities that their users [were] involved in." *Id.* at 1:43-46.

To address these issues, the '599 patent "provide[s] a content management system for organizing and delivering packages of audio and visual content to a user in response to activities being performed by the user, and in response to a number of environmental factors associated with the user." *Id.* at 3:51-55. The claims are

McKool Smith, P.C.

directed to this solution by reciting a specific technique for receiving an information package, and then presenting that information only when certain triggering conditions based on users' mobile device context are met. Claim 1, for example, requires receiving a content package including one or more content pieces and rules including a trigger condition for presenting the content piece and an expected response. *Id.* at claim 1. The system works by "receiv[ing] a set of contextual information with respect to the user, and processes the contextual information to determine a context which is associated with an activity being performed by the user." *Id*. This contextual information can come "from a number of input sources (*e.g.*, a global positioning system (GPS) device, or an accelerometer), which reflects basic information associated with the user." *Id.* at 4:33-36, 4:36-46, 6:23-7:2. The system can "determine a context associated with a user and/or operating conditions of the mobile device based on contextual information." *Id.* at 7:30-33, 7:33-45. And the system "can be programmed to infer specific contexts about the user based on contextual information." *Id.* at 7:46-59. Then, if the user's context or activity "satisfy a trigger condition," the system "selects content from a content database…to present to the user." *Id.* at claim 1. These triggers can cause different contexts to drive the presentation of different content. *Id.* at 3:60-4:6, 8:39-50. Finally, the system receives a response from the user corresponding to the presented content, determines whether the response matches an expected response, and performs an action if it does. *Id.* at claim 1. The '599 patent thus advances the state of mobile devices by enabling them to account for their users' activities.

### 1.    The '599 Patent is Not Directed to an Abstract Idea.

For *Alice* step one, the Court should "look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019). The Court must also consider the claims "as a whole, and in light of the specification." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999,

9

McKool Smith, P.C.

1007 (Fed. Cir. 2018) ("*DET*"); *see also TecSec*, 978 F.3d at 1295 (holding that the "specification ... shows that the claims at issue are directed at solving a problem specific to computer data networks"). For software innovations, this decision turns on whether the claims are directed to (1) improvements to the functionality of a computer or network platform itself or (2) a solution to a problem specifically arising in the realm of computers or networks. If so, they are patent eligible. *TecSec*, 978 F.3d at 1293; *Koninklijke*, 942 F.3d at 1149-50.

The '599 patent claims meet *Alice* step one. The Federal Circuit's *TecSec*, *DET*, *Enfish*, *DDR*, and *Visual Memory* decisions are each instructive. For instance, the Federal Circuit in *TecSec* held claims eligible under step one where "the claim language and specification establish ... that the claims are directed to improving a basic function of a computer data-distribution network, namely, network security." 978 F.3d at 1296. In doing so, the court criticized the defendant's attempt to disregard claim elements. *Id.* at 1295. Here, too, the '599 claims are directed to improving a basic function of mobile devices by teaching how to use mobile device input sources (*e.g.*, GPS and accelerometer) to account for specific mobile device conditions that can then trigger the presentation of content. As in *TecSec*, Facebook disregards claim elements—including the full and proper scope of "contextual information," "trigger conditions," and "current context"—to criticize the patent. Facebook's efforts, like the defendant's in *TecSec*, should be rejected.

*DET* is also instructive. In *DET*, the Federal Circuit held electronic spreadsheet claims eligible because they "improv[ed] computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets." 906 F.3d at 1007-08. In that case, the Federal Circuit considered the specification's discussion of the prior art to determine how the claims improved the existing technology. *Id.* at 1008. The '599 patent likewise improves computer functionality. It addresses the technological problem of "mobile devices ... not [being] capable of learning and understanding the behavior of their users." '599 patent at 1:19-22, 1:41-

McKool Smith, P.C.

43. And the '599 solution improved mobile device functionality to account for the mobile device's surrounding, making it patentable. *DET*, 906 F.3d at 1007-08.

The Federal Circuit's *Enfish*, *DDR*, and *Visual Memory* decisions are similarly helpful. In *Enfish*, the Federal Circuit held self-referential table claims eligible because they improved the way computers operated and handled data. 822 F.3d at 1333. In *DDR*, the Federal Circuit held "hybrid web page" claims patent eligible because they "overcome a problem specifically arising in the realm of computer networks." 773 F.3d at 1257. And in *Visual Memory LLC v. NVIDIA Corp.*, the Federal Circuit held claims eligible that were "directed to an improved computer memory system, not to the abstract idea of categorical data storage." 867 F.3d 1253, 1259 (Fed. Cir. 2017). Like the *Enfish*, *DDR*, and *Visual Memory* patents, the '599 patent overcomes a problem unique to, and improves, computers and mobile devices. The '599 patent is tightly tethered to the technology it improves. The '599 claims solve the mobile device-specific problem of being unable to learn and understand users' behavior by teaching new techniques for considering mobile-device specific information to make presentation decisions.

Facebook's contrary arguments are unpersuasive. First, Facebook suggests that the '599 patent relates to simply gathering, storing, analyzing, tailoring, and transmitting information. Mot. at 1, 13 (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("*IV/Capital One*"); *Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020)). As a preliminary matter, Facebook runs into the trap of oversimplifying the claims, which the Federal Circuit has repeatedly cautioned against. *McRO*, 837 F.3d at 1313; *TecSec*, 978 F.3d at 1293; *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020). Contrary to Facebook's oversimplification, the claims here solve specific computer-related problems (mobile devices being unable to learn and understand user behavior to enable better tailoring of content) with computer-related solutions (using mobile-device specific information to make presentation decisions).

MCKOOL SMITH, P.C.

11

Facebook's cited cases do not change this result. The claims in *IV/Capital One* involved "[t]ailoring information based on the time of day." 792 F.3d. at 1370. This is unlike the claims here, which are directed to a specific technique for using mobile device detector information to create a better mobile device experience. And the claims in *Elec. Comm'n Techs.* were "directed to longstanding commercial practices." 958 F.3d at 1182. Again, this is unlike the mobile device-specific claims solving a mobile device-specific problem here.

Second, Facebook criticizes the '599 patent as being merely functional and using already well-known mobile devices. *See, e.g.*, Mot. at 4, 11. Yet the claims are not merely functional with result-oriented aspirations. Instead, they are detailed and specific. Certain types of content and triggering information is received, mobile device contextual information is received and processed to determine the device's context, and information is presented if a trigger condition is met. The invention is "targeted at achieving a specific improvement in computer technology," namely mobile devices. *See, e.g.*, *Proxyconn, Inc.* v. *Microsoft Corp.*, No. 8:16-cv-1102-DOC, 2016 WL 9109110, at *3-6 (C.D. Cal. Sept. 29, 2016) (denying motion to dismiss where claims were "targeted at achieving a specific improvement in computer technology through rules tailored to the issue of redundant data transmission through networks").

Third, Facebook's citation to a litany of cases holding a number of other patent claims to be abstract is also unpersuasive. Mot. at 12-13. Even ignoring that Facebook makes no effort to analogize those cases, reviewing a handful of those cases shows how different they are from the facts here. For instance, as just discussed, the claims in *IV/Capital One* involved "[t]ailoring information based on the time of day," 792 F.3d. at 1370, which is unlike the mobile device-specific claims here. The *Customedia Techs., LLC v. Dish Network Corp.* case had claims the Federal Circuit described as "dedicating a section of the computer's memory to advertising data" (951 F.3d 1359, 1363 Fed. Cir. 2020), and *Bridge & Post, Inc. v. Verizon Comm'ns., Inc.* had claims

McKool Smith, P.C.

McKool Smith, P.C.

1    the Federal Circuit described as "[t]ailoring advertisements based on real time

2    information about the user and their location" (778 App'x 882, 884 (Fed. Cir. 2016)).

3    None of these is like the '599 patent's mobile-device claims. Nor are any of the

4    other cases Facebook cites—without any analysis whatsoever—like the '599 claims.

5    The patent claims at issue in those cases, according to Facebook's own quotations,

6    involved things like: (1) analyzing records of human activity; (2) delivering user-

7    selected content; (3) providing users with historical information; (4) showing an

8    advertisement before showing content; and (5) gathering information and displaying

9    results. The '599 claims, on the other hand, solve specific computer-related problems

10   (mobile devices being unable to learn and understand user behavior to enable better

11   tailoring of content) with computer-related solutions (gathering and processing

12   mobile-device specific information to make presentation decisions).

13   Fourth, Facebook suggests that the '599 patent does not solve an "Internet-

14   specific problem" because the claims—other than three dependent claims—do not use

15   the word "Internet." Mot. at 15. This is irrelevant. The '599 patent does solve an

16   Internet-and-mobile-device-specific problem, as discussed above. Indeed, the patent is

17   rife with references to the Internet. *See, e.g.*, '599 patent at 4:64-67, 6:58-7:2, and

18   claims 11, 18, and 25. Moreover, the patent specifies that the purpose of the invention

19   is to advance communication with others around the world. *Id.* at 1:13-24. The patent

20   also explains that "[m]obile devices often have access to the Internet, either via a Wi-

21   Fi connection and/or a cellular network," and that "[i]n some embodiments, content

22   management system 100 utilizes an Internet connection to gather public context and

23   content information." *Id.* at 6:58-62. Thus, the claims plainly encompass and relate to

24   the use of mobile devices connected to networks like the Internet, which Facebook

25   admits dependent claims 11, 18, and 25 contemplate.

26   **2.    PARC's Plausible Allegations, When Taken as True, Show the '599 Claims Recite an Inventive Concept.**

27   The '599 patent claims pass *Alice* step one, and it is unnecessary to analyze

28

13

McKOOL SMITH, P.C.

1   *Alice* step two. Even so, the '599 patent claims plainly recite an inventive concept. As

2   an initial matter, Facebook never addresses whether the '599 patent's inventive

3   concept—using certain types of mobile device contextual information to ascertain

4   context and trigger the display of certain types of content—is actually an inventive

5   concept. This idea is explained in the patent (*see* '599 patent at 1:50-62), in the claims

6   (*see* '599 patent at claims 1, 12, 19), and in the Complaint (Dkt. 1 ¶¶ 30-37). The

7   patent itself explains the difficulties faced by the prior art: that mobile devices (1)

8   "[were] not capable of learning and understanding the behavior of their users;" and (2)

9   "[could not] determine when and how best to provide their users with information or

10  suitable entertainment content, because they do not take into account the activities that

11  their users are involved in." '599 patent at 1:41-46; *see also* Dkt. 1 ¶¶ 31-32

12  (discussing same). It was these difficulties faced by mobile devices at the time that

13  make the '599 patent so unique. These are exactly the sort of inventive concept

14  allegations that the Federal Circuit has held require denial of motions to dismiss. *See,*

15  *e.g.*, *Cellspin*, 927 F.3d at 1318; *BASCOM*, 827 F.3d at 1349-50 (holding that

16  "install[ing] a filtering tool at a specific location remote from end users" was an

17  inventive concept despite the tool itself and the hardware components being well

18  known); *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01

19  (Fed. Cir. 2016) (holding that even though "[t]he solution requires arguably generic

20  components, including network devices[,] ... these generic components operate in an

21  unconventional manner to achieve an improvement in computer functionality").

22      The '599 patent's file history confirms the inventive nature of the claims.[4]

23  Specifically, the patentee explained that the prior art does not disclose "selecting a

24  piece of contact to be presented from a plurality of content pieces based on the user

25  context" or "determining whether a user response corresponding to a presented

26  content piece matches an expected response, and performing an action on the content

---

[4] As explained in a contemporaneously filed request, PARC asks this Court to take
judicial notice of the prosecution histories.

PARC RESPONSE TO FACEBOOK MOTION TO DISMISS          CASE NO. 2:20-CV-10753 AB(MRWx)

1   piece based on the outcome of the determination." *See* Ex. A at 13;[5] Ex. B at 12. After

2   the patentee filed an appeal to the PTAB arguing the inventiveness of the claims, the

3   examiner then allowed the claims on those grounds. *See* Ex. C; Ex. D at 3.

4         Instead of addressing the '599 patent's inventive concept or the patent's

5   inventiveness, Facebook selectively picks out a number of individual terms in the

6   claims, oversimplifies their meaning, and wrongly concludes that the claims contain

7   nothing inventive. Mot. at 20-21 (discussing "processor," "computer," "mechanism,"

8   and "manager" in isolation). But Facebook ignores other critical terms, including

9   "contextual information," "trigger condition," and "context," which, in combination,

10  all relate to the inventive nature of the claims. Indeed, the patentee called out the

11  importance of the claimed "trigger condition" in the prosecution history, and the

12  dependent claims here provide specific details about the narrowly-tailored nature of

13  "contextual information" (claims 10, 17, 24) and "context" (claims 11, 18, 25).[6] Thus,

14  dismissal on this record is inappropriate. *See Aatrix*, 882 F.3d at 1128 (holding that

15  "[w]hether the claim elements or the claimed combination are well-understood,

16  routine, [or] conventional is a question of fact. And in this case, that question cannot

17  be answered adversely to the patentee based on the sources properly considered on a

18  motion to dismiss ... ."); *Speakware, Inc. v. Microsoft Corp.*, No. 8:18-cv-1293-DOC,

19  slip op. at 9 (C.D. Cal. June 6, 2019) (denying motion to dismiss where patentee

20  "alleges that the circuity, which transmits signals to speech recognition mode by voice

21  commands, in combination with the other elements of the claim, makes the system

22  'truly hands-free' in comparison to previous voice-operated remote-control systems")

23  (Ex. E); *Allconnect, Inc. v. Consumer Brands, LLC*, No. 2:18-cv-5959-DOC, 2018

24  WL 7377934, at *7 (C.D. Cal. Dec. 14, 2018) (denying motion to dismiss "given the

25

26  ---

[5] All exhibits are attached to the Declaration of Alexandra F. Easley.

27  [6] Facebook contests PARC's interpretation of each of these terms, and dismissal is
    therefore premature. *Nagravision SA v. NFL Enters., LLC*, No. 2:17-cv-3919-AB,

28  2018 WL 1807285 (C.D. Cal. March 9, 2018) (denying motion to dismiss as claim
    term needed construction).

McKool Smith, P.C.

express recitation of databases and the allegations that the claims entail an unconventional technological solution through a specialized database permitting powerful data analytics and comparing, via a computer processor, the received capabilities, the claims are not properly dismissed at this stage").

Nor are the claims merely functional, as Facebook suggests. Mot. at 19. Instead, as discussed above for *Alice* step one, the claims recite a specific, detailed set of steps that explain *how* to trigger and display information. *See, e.g.*, '599 patent at claim 1. The claims do not contain mere "open-ended functional goals," and Facebook's attempts to describe the claims in this way highlights the weakness of its argument.

Taking PARC's allegations as true, there is a factual dispute that prevents resolving § 101 as a matter of law. *Aatrix*, 882 F.3d at 1129. Facebook "has not satisfied its burden of showing that no issue of fact exists as to whether the ordered combination of limitations is unique or inventive." *Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-9129-AB, slip op. at 12 (C.D. Cal. July 1, 2020) (Ex. F).

## C.   The '439 Patent Claims Patentable Subject Matter.

Facebook suggests that the '439 patent is nothing more than a manager keeping tabs on an employee working overtime from home and "suggesting that the employee check in regularly regarding workload." Mot. at 9. Facebook is again wrong. The '439 claims solve specific, computer-related problems (developing context-aware systems for mobile devices) with computer-related solutions (storing, in an unconventional "context graph," information gathered from a mobile device to then determine when to notify recommenders of changes to the context graph), and are therefore patent eligible. *See, e.g., Ancora*, 908 F.3d at 1348; *Enfish*, 822 F.3d at 1339; *TecSec*, 978 F.3d at 1293; *DDR*, 773 F.3d at 1257-59.

A brief overview of the '439 patent is helpful in applying *Alice*. The '439 patent inventors saw that "software on the mobile devices that detect and make use of physical surroundings can increasingly contribute to improving the lifestyle of mobile device users." '439 patent at 1:13-17. One way to improve the mobile device user

16

McKool Smith, P.C.

lifestyle was a "context-aware system" that "adapts to changing conditions detected from the environment, such as location and movement of the mobile device, nearby devices, and other surrounding conditions." *Id.* at 1:22-26. Yet it "takes considerable time and expense to develop such context-aware systems." *Id.* at 1:14-33.

The '439 patent inventors therefore sought to solve this problem, by claiming a specific technique for receiving certain mobile device-specific context information, storing that data in an unconventional context graph, and then notifying relevant individuals of certain changes in the mobile device's context. *See id.* at claim 1. Contextual data describes, for example, "a computing context detected by a mobile device client, such as physical surroundings and/or application and/or operating system context" that is collected "using detectors such as a GPS, an accelerometer, and/or a compass." *Id.* at 2:60-62, 3:49-51, 4:31-40. Claim 1 further requires using this data to modify a context graph that stores user behavior information. *Id.* at claim 1. One exemplary context graph "is a per-user, in-memory, graph-based model that stores facts and assertions about user behavior and actions." *Id.* at 7:28-31. The context graph can be used, for instance, by "recommenders [to] modify implementation-specific user models based on the data received from the context graph, and make recommendations based on the information-specific user models." *Id.* at 6:67-7:4. Finally, a recommender is notified based on certain changes to the context graph. *Id.* at claim 1. "Such a contextual intelligence system facilitates real-time processing of contextual information and support[s] contextual application development for Web and mobile applications." *Id.* at 2:53-55.

### 1.   The '439 Patent Claims are Not Directed to an Abstract Idea.

The '439 claims meet *Alice* step one. The Federal Circuit's *Enfish*, *DET*, *DDR*, and *Visual Memory* decisions, among many others, are instructive. For instance, the Federal Circuit in *Enfish* held claims covering self-referential tables that improved the way computers operated and handled data patent eligible. 822 F.3d at 1333. These self-referential tables offered "increased flexibility, faster search times, and smaller

McKool Smith, P.C.

memory requirements." *Id.* at 1337. The '439 patent's unconventional "context graph" similarly improves the way that data is stored and used. '439 patent at 6:59-7:52 (discussing context graph features). The '439 context graph also offers a flexible, superior way to handle mobile device data. *Id.* at 7:36-40 ("The system can store data in [the] context graph ... using a type-less approach to data storage. Context graph ... may store data according to different data models, including data models for entity-relationship data and unstructured data."); 7:41-43 ("In one embodiment, the system can manage context graphs with greater numbers of nodes using cross module interconnections."); 7:47-49 ("The components that transfer event information into context graph 406 can be specially developed for specific applications.").

*DET* (discussed with respect to the '599 patent) is also applicable to the '439 patent. Like in the *DET* case, the '439 patent improves computer functionality. It "solve[s] the problem of efficiently developing context aware systems by providing a generic contextual intelligence platform that may be adapted for specific applications." *Id.* at 2:49-52. It does so, for instance, by using specifically-claimed steps, including the use of the then-unconventional context graph, that "facilitate[s] real-time processing of contextual information and support contextual application development for Web and mobile applications." *Id.* at 2:53-55.

The Federal Circuit's *DDR* and *Visual Memory* decisions (discussed with respect to the '599 patent) are likewise helpful. Like the *DDR* and *Visual Memory* patents, the '439 patent overcomes a problem unique to, and improves, computers and mobile devices by using context derived from mobile device equipment to create an efficient context-aware system.

Facebook's contrary arguments are unpersuasive. First, much like the '599 patent, Facebook suggests that the '439 patent relates to simply gathering, storing, analyzing, tailoring, and transmitting information. Mot. at 1, 17, 18 (citing *IV/Capital One*, 792 F.3d at 1369; *Elec. Comm'n*, 958 F.3d at 1182). As a preliminary matter, Facebook again runs into the trap of oversimplifying the claims, which the Federal

McKOOL SMITH, P.C.

18

McKool Smith, P.C.

1    Circuit has repeatedly cautioned against. *McRO*, 837 F.3d at 1313; *TecSec*, 978 F.3d
2    at 1293; *CardioNet.*, 955 F.3d at 1371. Moreover, as detailed above, the claims here
3    solve specific computer-related problems (developing context-aware systems for
4    mobile devices) with computer-related solutions (storing in an unconventional
5    "context graph" data gathered from mobile device detectors to determine when to
6    notify recommenders of changes to the context graph). Furthermore, Facebook's cited
7    cases bear no similarity to the facts here. The claims in *IV/Capital One* involved
8    "[t]ailoring information based on the time of day." 792 F.3d. at 1370. This is entirely
9    unlike the '439 claims directed to a specific technique for storing specific, mobile data
10   in the unconventional context graph. The claims in *Elec. Comm'n* were "directed to
11   longstanding commercial practices." 958 F.3d at 1182. Again, this is unlike the
12   mobile device-specific claims solving a mobile device-specific problem here.

13        Second, Facebook criticizes the '439 patent as functional and generic by
14   misleadingly citing to the use of the word "generic" in the '439 specification. *See,*
15   *e.g.*, Mot. at 8, 9. The patent's claims are not merely functional with result-oriented
16   aspirations. Instead, they are detailed and specific. Mobile device-specific data from
17   mobile device detectors is received, a context graph is updated with relevant changes,
18   and a recommender is notified of changes as appropriate. In addition, although the
19   '439 invention certainly contemplates a "generic contextual intelligence platform that
20   may be adapted for specific applications," it is still directed to a concrete, mobile-
21   device specific issue. '439 patent at 2:51-52. The '439 invention is "targeted at
22   achieving a specific improvement in computer technology," namely mobile devices.
23   *See, e.g.*, *Proxyconn*, 2016 WL 9109110, at *3-6. Achieving the invention in a new
24   way—the context graph—similarly differentiates the claims here. *Hypermedia*
25   *Navigation LLC v. Facebook, Inc.*, No. 4:17-cv-5383-HSG, 2018 WL 3932434, at *4
26   (N.D. Cal. Aug. 16, 2018) (denying motion to dismiss where patent claimed "a
27   specific online search mechanism by creating web programs that are geared towards
28   entertaining and presenting the user with desirable information in a new way: through

MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.

1  'linearly linked websites'").

2      Third, Facebook suggests that the '439 patent does not solve an "Internet-

3  specific problem" because the patent does not use the word "Internet." Mot. at 18. The

4  '439 patent certainly does solve an Internet-and-mobile-device-specific problem. As

5  the patent makes clear, mobile device information is transmitted over a network (*e.g.*,

6  the Internet), '439 patent at 3:58-61, and the dependent claims (*e.g.*, 5, 11, and 17) call

7  out the invention's use of the Web through the use of "a RESTful WebAPI"—and the

8  Web is just one example of a protocol used to communicate over the Internet.

9      **2.    PARC's Plausible Allegations, When Taken as True, Show the '439 Claims Recite an Inventive Concept.**

10     As discussed above, the '439 patent claims pass *Alice* step one. Analyzing *Alice*

11  step two is unnecessary. Still, the '439 patent claims recite an inventive concept.

12  Facebook never addresses whether the '439 patent's inventive concept—storing

13  mobile device contextual information in an unconventional context graph to trigger

14  the display of certain types of content on mobile devices and a notification to a

15  recommender of the change—is actually an inventive concept. This idea is explained

16  in the patent (*see* '439 patent at 1:38-48), in the claims (*see* '439 patent at claims 1, 7,

17  13), and in the Complaint (Dkt. 1 ¶¶ 59-64). And the '439 patent's prosecution history

18  confirms the inventive nature of the claims. Specifically, the patentee explained that

19  the prior art does not disclose the claimed context graph or a notification of a change

20  being sent to a recommender. *See* Ex. G at 11 (stating that the prior art "does not

21  disclose a system that, in response to determining that there exists a registration for

22  notification of changes that matches a modification to the context graph, sends a

23  notification of context graph change to a recommender," and that the prior art "does

24  not describe a context graph"). The examiner then allowed the claims. *See* Ex. H.

25     New data or memory constructs, like the claimed context graph, can be

26  patentable. *See Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1349 (Fed. Cir. 2017)

27  (stating that "claims directed to a new and useful technique for defining a database

28

1   that runs on general-purpose computer equipment are patent eligible"); *Visual*
2   *Memory*, 867 F.3d at 1259 (finding claims directed to a memory system with
3   programmable characteristics patent eligible). As noted above, the claimed context
4   graph is an inventive concept, as confirmed by the claims, specification, Complaint,
5   and prosecution history. Indeed, before Facebook's attorneys got involved, Facebook
6   named its infringing system "Unicorn" because it "would solve all of [Facebook's]
7   problems and heal our woes *if only it existed*."[7] Facebook's bare attorney argument to
8   the contrary now is unfounded.

9          Nor are the claims merely functional, as Facebook suggests. Mot. at 21. Instead,
10   as discussed with respect to *Alice* step one, the claims contain a specific and detailed
11   set of steps that explain *how* to store information and notify recommenders of
12   changes. *See, e.g.*, '439 patent at claim 1.

13          Moreover, Facebook suggests that the claims are made of merely "conventional
14   technologies." Mot. at 21. But Facebook inappropriately isolates individual aspects of
15   the invention and suggests that each aspect was well-known. Mot. at 6-8 ("Both the
16   'context graph' and the 'recommender' borrow from prior art concepts... . This is
17   essentially the same as the admitted prior art software that can 'make
18   recommendations based on the physical surroundings' and 'recommend activities ...
19   based on the user model.'"); Mot. at 17 ("The claims borrow from admitted prior art
20   ***systems*** that store a user model, detect context around a mobile device, and make
21   recommendations." (emphasis added)). Yet the specification, claims, prosecution
22   history, and Complaint explain that the claimed combination of elements is unique
23   and different when considered as one. *See, e.g.*, *Speakware*, No. 8:18-cv-1293-DOC,
24   slip op. at 9 (Ex. E); *Allconnect*, No. 2:18-cv-5959-DOC, 2018 WL 7377934, at *7.

25          Facebook also highlights a factual dispute between the parties: what "context
26

27   ───────────────
     [7] Unicorn: A System for Searching the Social Graph (https://research.fb.com/wp-
28   content/uploads/2013/08/unicorn-a-system-for-searching-the-social-graph.pdf   (cited
     by Dkt. 1 ¶ 67)) at 1 n.1 (emphasis added).

McKool Smith, P.C.

1    graph" means and whether it is inventive. Mot. at 7, 21-22. The specification, claims,

2    prosecution history, and Complaint show that the "context graph" is a new, inventive

3    way to store information. Facebook's attorney argument—premised on its own

4    interpretation of the '439 patent—does not change this. *Nagravision SA*, 2018 WL

5    1807285 (denying motion to dismiss as claim term needed construction).

6         Taking all allegations as true, there is a factual dispute that prevents resolving

7    the eligibility question as a matter of law. *Aatrix*, 882 F.3d at 1129. Facebook has not

8    met its burden, and its Motion should be denied. *Ceiva*, No. 2:19-cv-9129-AB, slip op.

9    at 12 (Ex. F).

10        **D.    Facebook's Behavior Contradicts Its § 101 Arguments.**

11        When it suits them, Facebook defends its own patents on the very same basis it

12   now uses to challenge PARC's. For example, Facebook patented a method of

13   "presenting suggestion contention" in a social network in U.S. Patent No. 10,924,532

14   (the "'532 patent"). During prosecution, Facebook argued its '532 patent claims were

15   patent eligible under *Core Wireless* because they "recite a specific *improvement over*

16   *prior art systems*." Ex. I at 9-10 (emphasis added)). Similarly, Facebook argued for

17   the patent eligibility of another patent, U.S. Patent No. 10,924,445 (the "'445 patent"),

18   because it was not a method of organizing human activity, but was instead a method

19   of ranking notifications based on user history and time of day. Ex. J at 8-9; *see also*

20   Ex. K   ¶¶ 38, 40 (stating that Facebook patent "reflect[]s [] technological benefits to

21   computer network functionality" by providing "personalized multimedia delivery."). It

22   is incredible that Facebook now argues the very opposite in its Motion.

23        **E.    If Needed, PARC Should Be Permitted to Amend its Complaint.**

24        A district court should freely give leave to amend a complaint "when justice so

25   requires." FED. R. CIV. P. 15(a)(2). In the event that Facebook's Motion raises matters

26   of concern for the Court, PARC requests leave to address any such issues in an

27   amended Complaint. *See Aatrix*, 882 F.3d at 1127 (holding that "the proposed

28   amended complaint, which alleges facts directed to the inventive concepts in [the]

McKOOL SMITH, P.C.

claimed invention[s], would not be futile."); *Kajeet, Inc. v. Qustodio, LLC*, No. 8:18-cv-1519-JAK, 2019 WL 8060822, at *1 (C.D. Cal. Nov. 1, 2019); *Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 4:19-cv-5903-JST, 2020 WL 6129139, at *12 (N.D. Cal. Sept. 2, 2020) (granting leave to amend to "plead patent eligibility").

This is especially important here, as Facebook did not provide the basis of its § 101 allegations until filing its Motion. Although Facebook attempts to shift the blame to PARC, it is Facebook that failed to raise any particulars of its Motion. This precluded PARC from understanding Facebook's arguments and being able to counter those arguments with the information noted above. And, to be clear, PARC stated that it could not amend its Complaint given Facebook's "unarticulated, baseless concerns," but noted that "PARC's statement should not be taken as foreclosing future amendments…if the circumstances merit such an amendment." Dkt. 34-5 at 4.

## IV.  CONCLUSION

At bottom, Facebook ignores the context and scope of the claims and specification. Facebook does so in an effort to reduce the claims to basic human practices such as managing schedules and employees. The claims are more than that.

Had Facebook offered any insight into the basis for filing its Motion, the parties may have been able to better understand their respective positions. However, PARC doubts that would have reduced any burden on the Court as Facebook has only used this process to extort numerous unjustified delays, and failed to address any of the points raised in PARC's multitude of correspondences on the subject. For the reasons noted above, PARC requests that Facebook's Motion be denied in full.

1 │ DATED: February 26, 2021

Respectfully submitted,

MCKOOL SMITH, P.C.

BY  /s/ *David Sochia*
      David Sochia

Alan P. Block (SBN 143783)
ablock@mckoolsmith.com
McKool Smith Hennigan, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

David Sochia (TX SBN 00797470)
(Pro Hac Vice)
dsochia@McKoolSmith.com
Ashley N. Moore (TX SBN 24074748)
(Pro Hac Vice)
amoore@McKoolSmith.com
Alexandra F. Easley (TX SBN 24099022)
(Pro Hac Vice)
aeasley@McKoolSmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 500
Dallas, Texas 75201
Telephone (214) 978-4000
Facsimile: (214) 978-4044

James E. Quigley (TX SBN 24075810)
(Pro Hac Vice)
jquigley@McKoolSmith.com
McKool Smith, P.C.
300 W. 6th Street, Suite 700
Austin,, Texas 7870
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

ATTORNEYS FOR PLAINTIFF
PALO ALTO RESEARCH CENTER INC.

PARC RESPONSE TO FACEBOOK MOTION TO DISMISS          CASE NO. 2:20-CV-10753 AB(MRWx)