# EXHIBIT F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 19-09129-AB (MAAx) | Date: | July 1, 2020 |
|---|---|---|---|

| Title: | *Ceiva Logic, Inc. v. Amazon.com, Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO ALLEGE INFRINGEMENT OF A PATENTABLE CLAIM UNDER FED. R. CIV. P. 12(B)(6)**

Before the Court is Defendant Amazon.com, Inc.'s ("Defendant") motion to dismiss the First Amended Complaint ("FAC") of Plaintiff Ceiva Logic, Inc. ("Plaintiff") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ("Motion," Dkt. No. 35.) Plaintiff filed an opposition ("Opp'n," Dkt. No. 38), and Defendant filed a reply ("Reply," Dkt. No. 39). Defendant further filed a notice of supplemental authority. ("Notice," Dkt. No. 47.) Finding this motion suitable for resolution without oral argument, the Court vacated the hearing set for June 12, 2020. (*See* Dkt. No. 41; Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.) For the following reasons, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion.

I.      BACKGROUND

Plaintiff filed the Complaint ("Compl.," Dkt. No. 1) in this action on October 23, 2019, following which Plaintiff filed its First Amended Complaint ("FAC," Dkt. No. 31) on February 13, 2020. The Court accepts as true the following allegations from Plaintiff's FAC to decide this Motion.

Plaintiff is the owner of U.S. Patent Nos. 6,442,573 (the "'573 Patent"), 9,203,930 (the "'930 Patent"), and 9,654,562 (the "'562 Patent") (collectively, "the Asserted Patents"). (FAC ¶¶ 10, 28; *id.* Ex. 1 ('573 Patent); *id.* Ex. 2 ('930 Patent); *id.* Ex. 3 ('562 Patent).) The Asserted Patents are related, share the same inventors, and share a common specification. (FAC ¶¶ 23, 53.) The '573 Patent and '930 Patent are both titled "Method and Apparatus for Distributing Picture Mail to a Frame Device Community." ('573 Patent; '930 Patent.) The '562 Patent is titled "Method and Apparatus for Distributing Content Via a Communications Network." ('562 Patent.)

As of 1999, digital picture frames existed, but required formatting of digital photos and proprietary equipment. (FAC ¶ 18.) In 1999, the inventors of the Asserted Patents created a self-configuring digital picture frame that automatically obtained digital images for display on a frame. (*Id.* ¶ 20.) Specifically, the Asserted Patents disclose a digital picture frame that does not require user input to download new content or to update its software. (*Id.* ¶¶ 57–59.) Plaintiff released its commercial embodiment of the Asserted Patents, the Ceiva Frame, in December 1999. (*Id.* ¶ 73.)

The parties appear to agree that the following claims are representative of the claims in each of the Asserted Patents: claim 19 ('573 Patent)[1], claim 1 ('562 Patent)[2], and claim 1 ('930 Patent)[3].[4] Claim 19 of the '573 Patent recites:

---

[1] (Mot. at 2; Opp'n at 6.)

[2] (Mot. at 4; Opp'n at 3.)

[3] (Mot. at 5; Opp'n at 5 (citing '930 Patent, claim 1).)

[4] The Court has independently reviewed the agreed-upon representative claims and accepts them as representative, for purposes of this Motion. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as . . . if the parties agree to treat a claim as representative.").

> A system for distributing image data comprising:
>
> at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;
>
> a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;
>
> said at least one server system coupled to said at least one digital picture frame via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

'573 Patent, claim 19. Claim 1 of the '562 Patent recites:

> An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:
>
> said display screen;
>
> a central processing unit;
>
> a video controller configured to control display of said content on said display screen;
>
> a communications interface configured to communicate with said server system via said communications network;

> a memory comprising a unique identifier for said apparatus,
>
> computer readable instructions different from said content for controlling the operation of said apparatus, and a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:
>
> upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;
>
> sending by said apparatus said unique identifier to said server system;
>
> sending by said apparatus said version identifier to said server system;
>
> prompting by said apparatus a user of said apparatus to create an account at said server system;
>
> receiving by said apparatus updated computer readable instructions for controlling the operation of said apparatus from said server system;
>
> updating by said apparatus said computer readable instructions in said memory with said updated computer readable instructions;
>
> receiving by said apparatus updated content from said server system;
>
> displaying by said apparatus said updated content on said display screen.

'562 Patent, claim 1. Claim 1 of the '930 Patent recites:

> A digital display apparatus having an integrated housing, said integrated housing comprising:
>
> an image display region on an outside surface of said integrated housing;
>
> a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information for a first remote server system and a

>>unique identifier for said digital display apparatus, and a current version of onboard software;
>>a processor configured to control the display of image data from said plurality of image data files in said image display region in accordance with said onboard software in said inside of said integrated housing;
>>communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;
>>wherein said onboard software comprises:
>>an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region[;]
>>a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;
>>an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;
>>software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

'930 Patent, claim 1.

## II.     LEGAL STANDARDS

### a. Rule 12(b)(6)

Rule 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under

Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face." *Id.* That is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.*

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689–90.

### b.  Patent Eligibility Under 35 U.S.C. § 101

Title 35 of the United States Code Section 101 "specifies four independent categories of inventions or discoveries that are eligible for patent protection:

processes, machines, manufactures, and compositions of matter." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). "In choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope." *Id.* (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308–09 (1980)) (internal quotation marks omitted). Even so, the Supreme Court has carved out three exceptions to Section 101's "broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Id.* (quoting *Chakrabarty*, 447 U.S. at 309). These exceptions seek to protect concepts that "are part of the storehouse of knowledge of all men" that should be "free to all men and reserved exclusively to none." *Id.* at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)) (internal quotation marks omitted). "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) ("*Alice*") (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) ("*Mayo*")).

The Supreme Court has also recognized that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1293) (ellipsis in original). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (internal quotation marks and citations omitted). The Supreme Court has established a two-step process for resolving patent eligibility under Section 101. *See Alice*, 134 S. Ct. at 2354. A claim is ineligible under Section 101 if "(1) it is 'directed to' a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered 'both individually and as an ordered combination,' do not add enough to 'transform the nature of the claim' into a patent-eligible application.'" *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2355 (internal quotations omitted)). Patent eligibility is a question of law that may include underlying questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."), *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Patent eligibility can be determined on a motion to dismiss "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1125.

"[T]he first-stage filter is a meaningful one, sometimes ending the § 101 inquiry." *Elec. Power Grp.*, 830 F.3d at 1353. Although meaningful, this step is not always "straightforward." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (identifying various step one characterizations of the claims, but ultimately finding the claims patentable under step two). As part of this evaluation, courts may ask whether the claims "focus on a specific means or method that improves the relevant technology" or are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); *see also id.* at 1312 ("The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" (citing *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 113 (1854))).

Given the interrelated nature of the two steps, there can be close questions about whether the inquiry should end at either the first stage or the second. *DDR Holdings*, 773 F.3d at 1257; *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016); *see also Ameranth, Inc. v. Genesis Gaming Solns., Inc.*, No. CV 11-00189 AG, 2014 WL 7012391, at *2 (C.D. Cal. Nov. 12, 2014) (internal citations omitted) ("Judges of this Court have recognized that the two steps of the *Alice/Mayo* test are easier to separate in recitation than in application."). In proceeding to the second step, "the court must search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Timeplay*, 2015 WL 9695321, at *3. This second step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (Fed. Cir. 2014). The Supreme Court has made clear, for example, that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Aatrix Software*, 882 F.3d at 1128.

### III.  DISCUSSION

#### a.  Step 1: Abstract Idea

Defendant argues that the Asserted Patents are drawn to the abstract idea of a digital picture frame connected to the internet, controlled and populated remotely

through generic servers and a user interface. (Mot. at 9–10.) Defendant further argues that the asserted claims use only similarly abstract concepts, such as routing information using unique identifiers and transmitting software updates. (*Id.* at 10.)

Plaintiff responds that the Asserted Patents focus on a "technologically improved digital picture frame device" "that enable Ceiva's Frame to automatically access a remote data repository." (Opp'n at 12.) Plaintiff further responds that the combination of components disclosed in the Asserted Patents allows automatic access to new images without user input, automatic display of the images, and remote control by authorized third parties. (*Id.* at 14.)

Defendant replies that Plaintiff points only to "generic computing elements" to identify an alleged improvement. (Reply at 2.) Defendant further replies that Plaintiff points to the specification, rather than the claims, to argue a technological improvement over existing digital picture frames. (*Id.* at 3.)

The relevant inquiry at step one is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). A claim is directed to an abstract idea if it "consist[s] only of 'generalized steps to be performed on a computer using conventional computer activity.'" *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016) (citing *TLI*, 823 F.3d at 612).

The claimed invention of the Asserted Patents distills down to a digital picture frame able "to automatically access a remote data repository to obtain updated content without the use of a computer and without any further user input." (Opp'n at 12.) Specifically, claim 19 of the '573 Patent recites a system for distributing image data, including a digital picture frame, a user interface, and a server system. ('573 Patent, claim 19.) Claim 1 of the '562 Patent recites an apparatus for displaying image data received from a server system and lists other components. ('562 Patent, claim 1.) Claim 1 of the '930 Patent recites a digital display apparatus with an onboard software comprising an image display function, remote connection function, authentication function, and software update function. ('930 Patent, claim 1.)

The Court notes that, as claimed in the Asserted Patents, the idea of a digital picture frame automatically accessing a remote data repository appears to be abstract and thus ineligible for patent protection. This idea is comparable to, in a

non-technological context, the abstract idea of compiling photos to display in succession, such as on a film projector. Merely transferring this idea to a technological context does not automatically render it worthy of patent protection. *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (noting previous authority "does not stand for the general proposition that a claim implemented on a computer elevates an otherwise ineligible claim into a patent-eligible improvement").

The Court additionally notes that the Asserted Patents do not appear to contain sufficient specificity to be directed to an improvement in computer functionality. *See TLI*, 823 F.3d at 612 (finding method of classifying and storing images abstract because the claims were "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two"). Similarly here, the specification of the Asserted Patents refers to several of the components as existing prior art (*e.g.*, virtual picture frames ('573 Patent at col. 1:47–48)), or describes them in the "Background" section of the specification (*e.g.*, "server computer" and "image data" ('573 Patent at cols. 1–7)). Moreover, the components are described in functional terms, rather than explaining how the components perform the function. For example, claim 1 of the '562 Patent requires "sending by said apparatus said unique identifier," without explaining how the unique identifier is generated or sent. *See Secured Mail Solutions LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (limitation directed to abstract idea where "[t]here is no description of how the unique identifier is generated . . . . Rather, the claim language cited by [plaintiff] merely recites that the unique identifier is generated by the sender"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 2019-1765, 2020 WL 3400682, at *3 (Fed. Cir. June 19, 2020) (affirming claimed advance over prior art was a "functional abstraction" where the specification treated an element of the claimed invention as "a black box").

Although the Court has provided its comments herein regarding step 1, it does not reach a final determination at this time on the issue of whether the claims are drawn to an abstract idea. As discussed below, even assuming the claims are drawn to an abstract idea, the Court finds that factual questions at step 2 preclude dismissal.

### b. Step 2: Inventive Concept

Defendant argues that the Asserted Patents add no inventive concept because they disclose only generic computer components performing normal functions. (Mot. at 14.) Defendant further argues generic computing components, such as generic memory, a generic server system coupled to a user interface and digital picture frame using a generic network, and a generic processing unit are non-inventive as a matter of law. (*Id.* at 14–15.) Defendant further argues the configuration of the claim elements—a network of servers, user interface, and digital picture frame—is not unique or inventive. (*Id.* at 19.)

Plaintiff responds that the specific combination of elements disclosed in the Asserted Patents provides an inventive concept. (Opp'n at 21.) Plaintiff further responds that the unconventional configuration in the Asserted Patents—unique identifier, frame that initiates communications with server, and server that automatically distributes content to the frame—allows for remote customization and control. (*Id.* at 22.) Plaintiff further responds that Defendant did not analyze the Asserted Patents as an ordered combination of elements, instead focusing on individual elements alone. (*Id.* at 23.)

Defendant replies that there is nothing unconventional about the configuration disclosed in the Asserted Patents. (Reply at 8.) Defendant further replies that Plaintiff's allegations in the FAC are directed to concepts unrelated to patent eligibility, such as commercial success and obviousness. (*Id.* at 12–13.)

The second step of the *Alice* inquiry asks "whether the claims do significantly more than simply describe [the] abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs*, 838 F.3d at 1262 (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (internal quotation marks omitted)). The inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). However, "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry." *TLI*, 823 F.3d at 613 (quoting *Alice*, 134 S. Ct. at 2359) (internal quotation marks omitted).

The Court finds that an issue of fact exists as to whether the ordered combination of limitations in the Asserted Patents discloses an inventive concept that transforms the abstract idea into a patentable invention. Defendant presents abundant authority for the proposition, and Plaintiff does not appear to dispute, that certain limitations from the Asserted Patents, divorced from the context of a virtual picture frame, were routine and well-known in the art. (Mot. at 14–18 (citing authority holding that generic computing components, such as network and display components, databases, servers, network streaming, and customized user interface are not unique or inventive); Reply at 8–10 (citing authority holding that using a unique identifier, and automatic software updates is non-inventive).) However, Defendant has not satisfied its burden of showing that no issue of fact exists as to whether the ordered combination of limitations is unique or inventive.

To the contrary, Plaintiff identifies a specific configuration of limitations in the claims: "a unique identifier stored in memory, a frame that initiates communications with the server, and a server that automatically distributes updated content to the frame." (Opp'n at 22; '562 Patent, claim 1 (reciting an apparatus for displaying content, a memory comprising a unique identifier, initiating a communications session with server system, and receiving updated readable instructions and updated content); '930 Patent, claim 1 (reciting digital display apparatus, memory comprising a unique identifier, and a remote connection function configured to automatically initiate communications with a remote server system); '573 Patent, claim 19 (reciting a system for distributing image data comprising periodically relaying image data when the picture frame automatically issues a request for image data).) The specification of the Asserted Patents supports Plaintiff's assertion that this specific arrangement was unconventional and adds an inventive element because the specific configuration allows content to be sent to the frame automatically, without user input. In other words, the specific configuration of components is the inventive concept for realizing the abstract idea of a digital picture frame that can automatically access a remote repository.

For example, the specification states that the invention solves the problem that previously, storage media had to be physically inserted in a frame. (*See, e.g.*, '573 Patent at col. 2:15–16 ("A problem with prior art mechanisms, such as the one illustrated in FIG. 1a, is that the user must physically provide storage media 103 to the device.").) The specification further states that functions in the prior art "cannot be remotely updated, modified, or otherwise changed." (*Id.* at col. 2:23–25.) The FAC likewise supports Plaintiff's position, with specific allegations that do more than simply append conclusory statements. (*See, e.g.*, FAC ¶ 71 ("As discussed in the specification, another problem with then-existing digital picture

frames was that the manner in which photos were displayed on the digital picture frame could not be remotely controlled by an authorized user from a remote location via a website."); *see also id.* ¶¶ 61–72.) Given these assertions, "plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (holding district court erred by not accepting allegations in the complaint alleging why aspects of the claimed inventions were not conventional).

Defendant argues "[t]he patents themselves admit that the concepts of remotely delivering software updates from a server to a client and authentication using a remote server were routine and conventional as of the date of the patents." (Reply at 8.) However, Defendant's argument glosses over the question of fact as to whether the combination of the frame, with components permitting remote delivery of data and software updates, is inventive. *See Bascom Global Internet Servs.*, 827 F.3d at 1350 ("The district court's analysis in this case, however, looks similar to an obviousness analysis under 35 U.S.C. § 103, except lacking an explanation of a reason to combine the limitations as claimed. The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

Thus, the Court determines that underlying questions of fact exist as to whether the Asserted Patents add an inventive concept to the abstract idea and denies Defendant's Motion on this basis.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.