COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

COOLEY LLP
EMILY E. TERRELL (234353)
(eterrell@cooley.com)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899

Attorneys for Defendant
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC.,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No.  2:20-cv-10753-AB-MRW<br><br>**REPLY IN SUPPORT OF FACEBOOK, INC.'S MOTION TO DISMISS**<br><br>DATE:  March 19, 2021<br>TIME: 10:00 A.M.<br>COURTROOM: 7B<br>JUDGE:  Hon. André Birotte Jr. |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  REPLY ARGUMENT ......................................................................................... 1

    A.   The '599 Patent Is Ineligible Under § 101. ............................................. 1

        1.   The '599 patent fails *Alice* step one. ............................................ 1

        2.   The '599 patent fails *Alice* step two. .......................................... 7

    B.   The '439 Patent Is Ineligible Under § 101. ............................................. 8

        1.   The '439 patent fails *Alice* step one. ............................................ 8

        2.   The '439 patent fails *Alice* step two. ......................................... 11

    C.   Facebook Properly Met and Conferred. .................................................. 13

    D.   The Court Should Grant Dismissal With Prejudice. ............................... 14

III. CONCUSION ...................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Ins. Co. v. Peralta*,
   No. 8:15-cv-622-JLS, 2015 WL 13036938 (C.D. Cal. Oct. 13, 2015) ............... 13

*Ameranth, Inc. v. Domino's Pizza, LLC*,
   792 Fed.Appx. 780 (Fed. Cir. 2019) .................................................................. 15

*Baker v. Firstcom Music*,
   No. 2:16-CV-08931-VAP, 2017 WL 9500980 (C.D. Cal. Nov. 3,
   2017) ................................................................................................................... 13

*British Telecomm'ns PLC v. IAC/InterActiveCorp*,
   813 F. Appx. 584 (Fed. Cir. 2020) ....................................................................... 4

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) .............................................................. 2, 7, 11, 12

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
   94 F. Supp. 3d 1078 (C.D. Cal. 2015) ................................................................ 14

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) .............................................................................. 15

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) ...................................................................... 8, 12

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017) ............................................................................ 6

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018) .............................................................................. 5

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020) ....................................................................... 6, 11

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ................................................................ 5, 11, 12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Ericsson Inc. v. TCL Comm. Tech. Holdings Ltd.*,
　955 F.3d 1317 (Fed. Cir. 2020) ....................................................................*passim*

*Fisher v. HNTB Corp.*,
　No. 2:18-cv-08173-AB-MRW, 2018 WL 6323077 (C.D. Cal. Dec. 3,
　2018) ................................................................................................................. 14

*Gardner v. Martino (In re Gardner)*,
　563 F.3d 981 (9th Cir. 2009) ............................................................................ 15

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
　792 F.3d 1363 (Fed. Cir. 2015) .......................................................................... 4

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
　850 F.3d 1332 (Fed. Cir. 2017) ........................................................................ 12

*Morales v. Camelbak Prods., LLC*,
　No. 2:18-cv-09457-AB, 2019 WL 1276189 (C.D. Cal. Mar. 19, 2019) ............. 14

*Mortg. Application Techs., LLC* v. *Meridianlink, Inc.*,
　No. SA CV 190704DOCDFMX, 2020 WL 1000581 (C.D. Cal. Jan. 6,
　2020), *aff'd*, No. 2020-1504, — Fed. App'x —, 2021 WL 97347 (Fed.
　Cir. Jan. 12, 2021) .............................................................................................. 6

*SAP Am. Inc. v. InvestPic, LLC*,
　898 F.3d 1161 (Fed. Cir. 2018) .................................................................... 6, 7

*Simio, LLC v. FlexSim Software Prods., Inc.*,
　983 F.3d 1353 (Fed. Cir. 2020) .......................................................................... 7

*Singer v. Live Nation Worldwide, Inc.*,
　No. 8:11-cv-427-DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012) ................ 13

*TecSec, Inc. v. Adobe Inc.*,
　978 F.3d 1278 (Fed. Cir. 2020) .......................................................................... 4

*Thales Visionix, Inc. v. U.S.*,
　850 F.3d 1343 (Fed. Cir. 2017) ........................................................................ 12

*Thomas v. Brett Sports & Entm't, Inc.*,
　No. 5:16-cv-480-AB, 2016 WL 4472995 (C.D. Cal. Aug. 23, 2016) ................. 13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No.  2:18-cv-01844-GW-KS

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Trading Techs. Int'l v. IBG LLC,*
    921 F.3d 1084 (Fed. Cir. 2019) ............................................................... 3

*Trading Techs. Int'l v. IBG LLC,*
    921 F.3d 1378 (Fed. Cir. 2019) ............................................................. 11

*Two-Way Media v. Comcast Cable Commc'ns, LLC,*
    874 F.3d (Fed. Cir. 2017) ........................................................... 7, 11, 12

*Ubisoft Ent., SA v. Yousician OY,*
    814 Fed.Appx. 588 (Fed. Cir. June 11, 2020) ...................................... 14

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.,*
    916 F.3d 1363 (Fed. Cir. 2019) ............................................................... 2

*Whitserve LLC v. Donuts, Inc.,*
    809 Fed. Appx. 929 (Fed. Cir. 2020) ................................................... 14

**Statutes**

35 U.S.C. § 101 ...............................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure Rule 12 ................................................. 6

Federal Rule of Civil Procedure Rule 12(c) ......................................... 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:18-cv-01844-GW-KS

## I.    INTRODUCTION

PARC's opposition highlights the ineligibility of the '599 and '439 claims.  Dkt. 36, "Opp."  Facebook explained how these claims lack any technological improvement consistent with long lines of Federal Circuit precedent, and the specifications disavow any inventive technology.  Dkt. 34, "Mot."  In response, PARC avoids the claim language, misrepresents the specifications and ignores their admissions, fails to distinguish the on-point precedent, and cites no case that supports eligibility.

Unable to identify any eligible invention, PARC resorts to hand-waving delay tactics around non-existent constructions and an undisclosed amended complaint, but the Federal Circuit routinely affirms dismissal with prejudice on records like this.

## II.   REPLY ARGUMENT

### A.    The '599 Patent Is Ineligible Under § 101.

#### 1.    The '599 patent fails *Alice* step one.

PARC's opposition underscores the abstractness of the '599 claims.  If the claim language recited any specific improvement to computer functionality, surely PARC would have quoted and discussed it.  Instead, PARC avoids the claims because they recite only functional aspirations: "receiving," "processing," "determining," and "presenting" information, and "performing" some action.  *See* Mot. at 4-6.  These are only goals to be achieved, in some unspecified way, using unspecified hardware and/or software not in the claims.  The claims state only desired functional <u>results</u>, not any <u>technology for achieving</u> those results.  They fall squarely under precedent invalidating claims that lack "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it."  *Ericsson Inc. v. TCL Comm. Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) (citation omitted).

PARC argues that the claims "explain *how* to trigger and display information" (Opp. at 16) but cites no claim language explaining "*how*," as none exists.  The claims state only desired results: a "trigger condition specifies a context that triggers a presentation" and "in response to the trigger condition being satisfied, presenting the

Cooley LLP
Attorneys At Law
Palo Alto

1.

Reply ISO Facebook's
Motion to Dismiss
Case No. 2:20-cv-10753-AB-MRW

content piece to the first user." '599, claims 1, 12, 19. "Merely claiming those functions in general terms, <u>without limiting them to technical means for performing the functions that are arguably an advance</u>, does not make a claim eligible at step one." *Ericsson*, 955 F.3d at 1328 (invalidating claims that "merely make generic functional recitations that requests are made and then granted") (citation and internal quotes omitted).[1]

PARC ignores the patent's admission that it uses nothing more than conventional software and hardware: its ideas could be implemented, somehow, with "code and/or data" or "hardware modules" that are "now known or later developed." '599, col. 3:34-49. With no improvement to an underlying computer system, the focus is an abstract idea: that it would be nice to provide interactive content, such as reminders or foreign language lessons, based on context such as time or location.

As the patent states, the "<u>present invention</u>" relates to "<u>creating and presenting content based on contextual information</u>." *Id.*, col. 1:7-11; 1:50-62. That is an abstract notion familiar from everyday life. Figure 3 shows the high-level flow. *Id.*, Fig. 3. The idea is "<u>intended to help a user manage their content and responsibilities around their schedule</u>." *Id.*, col. 3:58-60. This is not a solution to a technological problem. It is an abstract idea for "organizing human activity" that is commonplace in the human world. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) (citation omitted). Instead of a person giving you a reminder or teaching you Japanese, a computer could do it—somehow, using undisclosed software and/or hardware that is "now known or later developed." '599, col. 3:34-49. "This is a quintessential 'do it on a computer' patent" of the type that courts routinely invalidate. *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

PARC misstates the patent's purported problem and solution. PARC repeatedly argues that the patent improves "mobile devices" in a "mobile-device specific" way. Opp. at 8, 10-11. The background does state that "mobile devices are not capable of learning and understanding the behavior of their users." '599, col. 1:19-22, 1:41-46.

_____

[1] All emphasis herein is added unless otherwise noted.

However, <u>the claims do not solve that problem</u>.  "Eligibility depends on what is claimed, not all that is disclosed in the specification." *Trading Techs. Int'l v. IBG LLC*, 921 F.3d 1084, 1095 (Fed. Cir. 2019).  Nothing <u>in the claims</u> provides any technological solution that enables a mobile device to learn and understand users' behavior.  In fact, <u>the '599 claims do not recite or require any mobile device</u>, let alone any improved mobile device or any technology specific to mobile devices.[2]  *See Ericsson Inc. v. TCL Comm. Tech. Holdings Ltd.*, 955 F.3d 1317, 1327-28 (Fed. Cir. 2020) (rejecting injection of "mobile" into claims that "merely require '[a] system for controlling access to a platform,' whether mobile, desktop, or otherwise").  The <u>claims</u> here are similarly silent on mobile or non-mobile and merely recite desired functional results for "creating and presenting content based on contextual information." '599, col. 1:7-11, 1:50-62.

In any event, assuming *arguendo* for purposes of this motion that the claims were limited to mobile devices, mobile devices were prevalent before this patent ('599, col. 1:17-24) and they would simply be a generic and conventional environment for carrying out the abstract idea.  *Ericsson*, 955 F.3d at 1328 ("limiting the abstract idea to a particular environment—a mobile telephone system—does not make the claims any less abstract for the step 1 analysis") (citation omitted).

The specification confirms that it does not teach a specific technological solution related to improving mobile devices.  On the contrary, the specification illustrates the generic nature of the idea.  The Abstract, Summary, process flow in Figure 3, and preferred embodiment of a user's device shown in Figure 5 discuss only a generic "computing device" that somehow carries out the idea of "deliver[ing] personally-defined context-based content to a user." '599, Abstract, col. 1:50-2:50, 18:53-63, 19:8-59, Fig. 3, Fig. 5.  The user's computer may be a "personal computer (PC)" or a mobile device. *Id*., col. 9:44-47, 16:50-52.  Even if the patent were limited to mobile devices,

---

[2] PARC's infringement allegations are not limited to mobile.  Compl., ¶ 39 ("Facebook offers detailed targeting to target ads to users based on user location, or whether the user is on a mobile device or a <u>desktop</u>"), ¶ 40 ("Facebook ad targets include location and device conditions such as a user's location or a user's type of device (including mobile versus <u>desktop</u>) that trigger presenting an ad to the user").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

1   it uses only conventional software and/or hardware that is "now known or later
2   developed." *Id.*, col. 3:34-49.

3        PARC has not distinguished the many on-point cases cited in the opening brief.
4   Regarding the directly on-point *IV/Capital One*, PARC avers only that the '599 has
5   "mobile device-specific claims." Opp. at 12. The claims are not limited to mobile, but
6   even if they were, that would merely be a generic environment for carrying out the
7   abstract idea. *Ericsson*, 955 F.3d at 1327-28. PARC cannot credibly dispute that the
8   idea here—providing interactive content based on context—is indistinguishable from
9   "tailoring content" based on "information known about the user" such as "location or
10  address" or "time of day of viewing" content, which the Federal Circuit held ineligible
11  as a "fundamental practice long prevalent in our system." *Intell. Ventures I LLC v.*
12  *Capital One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015) (ellipses omitted).

13       PARC also cannot avoid the compelling similarity between the claimed idea here
14  and the ideas in many other cases invalidating claims directed to <u>providing content to</u>
15  <u>users</u> in electronic environments. Mot. at 12-13; Opp. at 13; *British Telecomm'ns PLC*
16  *v. IAC/InterActiveCorp*, 813 F. Appx. 584, 587 (Fed. Cir. 2020) ("tailoring the
17  provision of information to a user's characteristics, such as location, is an abstract
18  idea.") (citations omitted).

19       The cases PARC cites further confirm the ineligibility of the '599 claims. In
20  those cases, unlike here, <u>the claims recited specific improvements to technology</u>. The
21  claims in *TecSec* were directed to "solving a particular problem of multicasting
22  computer networks." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1296 (Fed. Cir. 2020).
23  The patent "identifie[d] a deficiency of using only multilevel security through
24  encryption requiring keys at more than one level," which was "unwieldy, inflexible, and
25  difficult to manage." *Id.* at 1295. The "<u>claims address[ed] the data-network problem</u>,"
26  with "<u>important aspects of the claims</u>" "<u>improving a data network's basic functioning</u>
27  <u>by enabling secure and efficient transmission to intended recipients</u>" in a multicast
28  network by using "labeling together with encryption." *Id.* at 1296.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

The eligible claims in *DET* solved a problem specific to "navigating through three-dimensional electronic spreadsheets." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018). Prior art techniques to "review and edit a spreadsheet" including "three-dimensional spreadsheets" suffered from "complexity of using and navigating between multiple spreadsheets." *Id.* The eligible claims "solved this known technological problem in computers in a particular way," which "allowed computers, for the first time, to provide rapid access to and processing of information in different spreadsheets, as well as easy navigation in three-dimensional spreadsheets." *Id.* Critically, these claims "recite[d] precisely this technical solution and improvement in computer spreadsheet functionality." *Id.* Other claims with the same specification failed § 101 as they did not recite that improvement. *Id.* at 1011-13.

Here, nothing in the '599 claims solves any specific technological problem. The claims state only desired results to be achieved somehow using admittedly conventional software and/or hardware. The stated goal is organizing human activity: helping people manage their schedules by presenting content based on context. '599, col. 1:7-11, 3:58-60. The claims are directed to an abstract idea for presenting interactive content to a user based on their context, such as reminders and language lessons. *DDR Holdings*, *Enfish*, *Visual Memory*, and other cases where the claims recite technological improvements are distinguishable for the same reasons. *See* Mot. at 16-17.

Ironically, while PARC tries to focus attention away from the claims, it wrongly accuses Facebook of disregarding the claim elements of "contextual information," "trigger conditions," and "current context." Opp. at 10. But Facebook fully embraces these abstract claims and encourages the Court to closely scrutinize them. "Contextual information" and "current context" are merely types of information that are ubiquitous in human life. "Information as such is an intangible, hence abstract." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (citation and internal quotes omitted). PARC does not dispute that patent does not limit "context." Mot. at 4, citing '599, col. 6:15-19, 4:9-29. The "trigger conditions" are also abstract information,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

1    essentially "if-then" logical rules, which the Federal Circuit has repeatedly found

2    ineligible.  Mot. at 14.  For example, a certain time triggers the presentation of content,

3    much like a mechanical alarm clock rings when the hands reach a certain time.

4         PARC fails to provide any basis to delay resolution of the threshold § 101 issue

5    until after claim construction based on undisclosed "interpretations" it has never

6    presented.  Opp. at 15, n.6.  It has had its positions on § 101 since its pre-filing analysis

7    months ago.  Dkt. 34-4.  If it had any constructions of "contextual information," "trigger

8    conditions," or "context" it believed would affect § 101, it would have and should have

9    disclosed them.  The Federal Circuit consistently affirms Rule 12 dismissals where, as

10   here, the patentee fails to propose any constructions and fails to demonstrate how claim

11   construction would make any difference.  *Cleveland Clinic Found. v. True Health*

12   *Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (the patentee "provided no

13   proposed construction of any terms or proposed expert testimony that would change the

14   § 101 analysis. Accordingly, it was appropriate for the district court to determine that

15   the [asserted] patents were ineligible under § 101 at the motion to dismiss stage."); *Elec.*

16   *Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183-84 (Fed. Cir.

17   2020) (affirming dismissal where patentee failed to identify any required construction

18   "much less how this construction could affect the analysis"); *Mortg. Application Techs.,*

19   *LLC* v. *Meridianlink, Inc.*, No. SA CV 190704DOCDFMX, 2020 WL 1000581, at *3

20   (C.D. Cal. Jan. 6, 2020) (dismissal is proper where patentee "does not raise a claim

21   construction dispute with proposed constructions but instead simply lists terms that it

22   contends 'should be construed.'"), *aff'd*, No. 2020-1504, — Fed. App'x —, 2021 WL

23   97347 (Fed. Cir. Jan. 12, 2021).  Further, no plausible claim construction could possibly

24   change the result because these items are all only <u>information</u>, which is "an intangible,

25   hence abstract," *SAP Am.*, 898 F.3d at 1167.  The "context" can be "time," "date," or

26   "location" (*see* claim 10); the "content" can be anything (*see* Mot. at 4:13-14); and the

27   "trigger condition" is essentially just abstract logic (*see* '599 claims 1, 12, 19, col. 1:56-

28   62, 3:55-58, 4:29-32, 11:11-21).  The Court may also properly assume for this motion

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

any interpretation evident from PARC's opposition, as it does not change the result on § 101. *Two-Way Media v. Comcast Cable Commc'ns, LLC*, 874 F.3d at 1335-38 (Fed. Cir. 2017) (affirming district court that assumed the patentee's constructions because claims were ineligible "even in light of [patentee's] proposed claim constructions").

### 2. The '599 patent fails *Alice* step two.

PARC did not identify any inventive concept during the parties' meet and confer or in its opposition brief. Opp. at 13-16. Indeed, there is no inventive concept <u>in the claims</u> that provides significantly more than the abstract idea of presenting interactive content to a user based on their context. PARC points to "contextual information" and "context." Opp. at 15. But those are merely (1) abstract intangible information, *SAP Am.*, 898 F.3d at 1167, and (2) part of the abstract idea itself (presenting content based on context). *BSG Tech*, 899 F.3d at 1290. The "trigger condition" is equally abstract, as Facebook's motion explained, and PARC ignores. Mot. at 14. It is also part of the abstract idea: presenting content <u>based on</u> (triggered by) context. None of those notions provides "significantly more" than the abstract idea sufficient to "transform the nature of the claim" into a patent-eligible invention. *BSG Tech*, 899 F.3d at 1289-90.

PARC's citation to the prosecution history does not change the claims' ineligible abstract nature. Opp. at 14-15. The allegation that a feature was not disclosed in certain cited prior art does not save the claims because "[e]ligibility and novelty are separate inquiries." *Two-Way Media*, 874 F.3d at 1340. "[E]ven assuming that a particular claimed feature was novel does not avoid the problem of abstractness." *Id*. (citation and internal quotations omitted). A "claim for a *new* abstract idea is still an abstract idea." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359, 1364 (Fed. Cir. 2020) (italics in original) (citation omitted).[3]

PARC's references to its complaint actually support Facebook's position. Opp.

---

[3] Even if the prosecution were relevant to § 101, it would only underscore the claims' ineligibility. Selecting content to be presented, matching a response, performing an action, and using a "trigger condition" (Opp. at 14-15) are only (1) high-level desired results that are ubiquitous in everyday human life, and (2) aspects of the abstract idea for presenting <u>interactive</u> content based on context. *BSG Tech*, 899 F.3d at 1290.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO
7.
REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

at 14.  PARC characterizes the '599 as directed to "creating and presenting content based on contextual information."  Compl., ¶ 30.  This is fully consistent with Facebook's proposed abstraction and the claims and specification.  '599, col. 1:7-11, 1:50-62, Abstract.  The complaint cites the background statement that mobile devices lacked capabilities (*id*., ¶ 31), but then proceeds to discuss the patent's embodiments without tying them to claim language at all.  *Id*., ¶¶ 32-37.  In fact, the complaint's failure to tie anything to the claims themselves dooms its use to save anything.

*Cellspin* is illustrative.  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316-17 (Fed. Cir. 2019).  The patents there failed step 1. *Id*. at 1315. At step 2, the claims specifically recited a "two-step, two-device structure requiring a connection *before* data is transmitted" that was "discussed throughout the shared specification." *Id*. at 1316-18 (emphasis in original).  The complaint plausibly alleged an inventive concept in the claims that was significantly more than the "idea of capturing and transmitting data from one device to another" – to "separate the steps of capturing and publishing data so that each step would be performed by a different device linked via a wireless, paired connection." *Id*. at 1315-1316.

Nothing similar to *Cellspin* is present here.  The '599 claims recite only desired functional results, the specification suggests to use only conventional hardware and software for its idea, and PARC's complaint never discusses any claim language, let alone raise "plausible and specific factual allegations that aspects of the claims are inventive" in view of the specification.  *Cellspin*, 927 F.3d at 1317-18.

**B.    The '439 Patent Is Ineligible Under § 101.**

**1.    The '439 patent fails *Alice* step one.**

As with the '599, PARC avoids discussing the '439 claim language, which is impermissibly abstract on its face.  PARC argues that the claims recite something more than "gathering, storing, analyzing, tailoring, and transmitting information."  Opp. at 11, 18.  However, it never identifies anything in the claims beyond the abstract functions of collecting information ("receiving, from a mobile device, event data . . ."), processing

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

information ("modifying a context graph . . . using the event data" and "in response to determining that there exists a registration for notification of changes that matches the modification . . ."), and transmitting information (". . . sending a notification of context graph change to a recommender"). Mot. at 17. The '439 thus falls squarely under the Federal Circuit precedent invalidating (1) claims directed to desired functional results and (2) claims directed to collecting, storing, analyzing, and transmitting information. *See* Mot. at 17-18 (citing cases).

PARC again mischaracterizes this specification. The patent explicitly states the problem to be solved: "Unfortunately, it takes considerable time and expense to develop such context-aware systems." '439, col. 1:32-34. The patent states that its disclosure would "solve the problem of efficiently developing context aware systems." *Id*., col. 2:49-51. It proposes a "generic" approach that supposedly allows humans to save "time and expense in developing" a system. *Id*., col. 3:43-45.

Nothing about this purported problem and solution would improve the operation of a computer system or otherwise solve any specific technological problem. On the contrary, like the '599, the '439 patent disavows any improved new software and/or hardware. It provides the same critical admission that the ideas are to be implemented with undisclosed software code and/or hardware that is "now known or later developed." '439, col. 10:3-20. PARC again ignores this admission.

PARC attempts to hang its hat on the "context graph," but that concept does not provide any hook. First, PARC does not dispute that the '439 patent explicitly defines the term "context graph": "A context graph is an in-memory model that stores facts and assertions about a user's behavior and interests." '439, col. 3:20-22. This is the only definitional statement in the patent. A "context graph" is just stored information. The claims likewise recite the "context graph" as only a passive repository for storing information. Desired results are to be achieved, somehow, of "modifying" the context graph (stored information) and "determining" that a registration matches that change. '439, claims 1, 7, 13. But in the claims, the context graph doesn't actually do anything.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

1    It is merely acted upon by some undisclosed underlying software and/or hardware.

2         PARC also does not identify any difference between the "context graph" and the

3    prior art "user model": "A user model describes user activity and interests at different

4    points in time, including present and future activity." *Id.*, col. 1:28-30.  Nor does PARC

5    identify any difference between the claimed "recommender" and the prior art

6    recommendation software.  *See* Mot. at 7.  Thus, the patent's purported advance is not

7    the "context graph" but merely a high-level idea of using event information to modify

8    stored information about a user and provide a notification of the change.  *See* Mot. at 7-

9    9.  PARC acknowledges that the '439 summarizes this idea at column 1:38-48 (*see* Opp.

10   at 20), illustrating its wholly result-oriented and functional nature.  '439, col. 1:38-48.

11        PARC does not cite anything in the claim language reflecting that the "context

12   graph" is anything more than an abstract, passive repository of information consistent

13   with the specification's definition.  '439, col. 3:20-22.  Instead, PARC cites discussions

14   of an example embodiment labeled "context graph **406**."  Opp. at 18.  But that is merely

15   a non-limiting illustration: "In one embodiment, the system may store contextual data

16   for each user. Each user is associated with a context graph **406** that describes their

17   current state."  '439, col. 7:24-26.  PARC distorts the patent's discussion of the non-

18   limiting example "context graph **406**" to make it sound definitional when in fact it is

19   only an optional illustration that is not required by the claims.  *Compare* Opp. at 18:3-

20   7 (purportedly quoting col. 7:36-40 as "The system can store data in [the] context graph

21   . . . using a type-less approach to data storage.  Context graph . . . may store data . . .")

22   *with* '439 col. 7:36-40 ("The system can store data in context graph **406** using a type-

23   less approach to data storage. Context graph **406** may store data . . .").  It is axiomatic

24   that the specification "cannot be used to import details from the specification if those

25   details are not claimed."  *Ericsson*, 955 F.3d at 1328.  "[A]ny reliance on the

26   specification in the § 101 analysis must always yield to the claim language."  *Id.*

27   (citation omitted).

28        In any event, assuming for this motion that the claimed "context graph" was (1)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

undefined in the patent, (2) substantially more than the prior art "user model," and (3) limited to the illustrative embodiment of context graph **406** (none of which is true), it would still not provide a specific patent-eligible solution to a technological problem. Nowhere does the patent teach that any context graph would "improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Trading Techs. Int'l v. IBG LLC*, 921 F.3d 1378, 1384-85 (Fed. Cir. 2019). The patent never describes any technological problem about how computers store information that would be solved by a "context graph." On the contrary, it leaves the implementation of its idea to conventional hardware and/or software. '439, col. 10:3-20. And the claims recite nothing more than collecting, processing, and transmitting information, which dooms them under Federal Circuit precedent. *See* Mot. at 17-18 (citing cases).

The '439 falls squarely under the governing lines of Federal Circuit precedent cited by Facebook that PARC cannot distinguish. Mot. at 17-18. It is nothing like the *Enfish*, *DET*, *DDR*, or *Visual Memory* claims that recited specific technological improvements and solutions to computer-specific problems. *See* Mot. at 16.

There is no basis to delay until after claim construction. PARC fails to propose any construction or explain how it would make a difference. *Elec. Comm'n Techs.*, 958 F.3d at 1183-84. And accepting, for purposes of this motion, all of PARC's assertions in its opposition about the meaning and scope of "context graph," nothing in the patent plausibly supports a finding of eligibility. *Two-Way Media*, 874 F.3d at 1335-38.

## 2. The '439 patent fails *Alice* step two.

PARC does not identify any inventive concept set forth in the '439 claims. Opp. at 20-22. In meet and confer, PARC pointed to the "context graph," but that fails for similar reasons as above. *See supra*; Mot. at 21-22. PARC now argues that the entire claim "considered as one" is an "inventive concept." Opp. at 20-21. But at step two, "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine." *BSG Tech*, 899 F.3d at 1290. Rather, step two examines whether the claims recite "additional elements" beyond the abstract idea itself—"transformative

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

elements" providing "significantly more" to "transform" the idea into an eligible invention. *Id.* at 1289-90. In other words: "After identifying an ineligible concept at step one, we ask at step two '[w]hat else is there in the claims before us?'" *Id.* at 1290.

Here, the claims reflect the abstract idea (using event information to modify stored information about a user and providing a notification of the change) and nothing significantly more that transforms them into an eligible invention. Mot. at 17-18, 21-22. Whether "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017).

Contrary to PARC's misstatement, Facebook does not contend here that "the claims are made of merely 'conventional technologies.'" Opp. at 21. Rather, the "claims do not contain anything significantly more than the abstract idea to be implemented using admittedly conventional technologies." Mot. at 21. Mobile devices with context-aware recommendation software were conventional, and the context graph is just stored information that is (1) part of the abstract idea (stored information that is modified) and (2) not significantly more than a conventional "user model" as discussed previously.[4] The alleged points of novelty during prosecution similarly do not save these impermissibly abstract claims. Opp. at 20. *Two-Way Media*, 874 F.3d at 1340.[5]

PARC's complaint further shows ineligibility. Opp. at 21. It does not provide any "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin*, 927 F.3d at 1317-18. On the contrary, it summarizes the patent's high-level

---

[4] The claims are not directed to an eligible "new and useful technique for defining a database." *Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016).
[5] Even if relevant to § 101, the stated distinctions over the cited art would only illustrate ineligibility as they were merely an abstract notion of providing a notification of a change and the "context graph" that does not confer eligibility. *See* Opp. at 20. Facebook's own prosecutions are also irrelevant. *Id.* at 22. The '532 patent claims a specific improved "user interface" consistent with the *Core Wireless* case that is inapplicable here. Ex. I. The '445 claims a "push notification" invention limited to an application requiring "particular media channels." Ex. J.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

1  functional aspirations consistent with the abstract idea.  *See* Compl. ¶¶ 61-64.

2  **C.   Facebook Properly Met and Conferred.**

3  Facebook satisfied this Court's meet and confer requirements.  On January 12,

4  2021, Facebook provided the basis for this motion:

5  The patents that PARC asserts against Facebook are invalid under 35
6  U.S.C. § 101. The claims identified in PARC's complaint recite abstract
   ideas of gathering, analyzing, and displaying information, and contain
7  nothing significantly more that would confer patent eligibility.

8  As to step one of the *Mayo/Alice* inquiry, it is well-settled that "claims
   focused on 'collecting information, analyzing it, and displaying certain
9  results of the collection and analysis' are directed to an abstract idea."
   [citing cases] The claims in this case fall squarely within the "familiar class
10 of claims that do not focus on an improvement in computers as tools, but
   on certain independently abstract ideas that use computers as tools." [citing
11 cases] As to step two of the Mayo/Alice inquiry, nothing in the claims
   recites an "inventive concept" providing "significantly more" than the
12 abstract idea. . . . The claims instead invoke "generic computer
   implementation" with "purely functional" recitations. . . .

13 Nor does PARC's complaint allege that any identified claim recites any
14 inventive concept that would allegedly confer patent-eligibility—nor
   could PARC plausibly raise any such allegation in view of the intrinsic
15 records. . . .

16 Dkt. 34-3 at 1-2.  The letter proceeded to request PARC's positions and a meet and

17 confer.  *Id.*  On January 19, 2021, the parties conducted that meet and confer.  The

18 defendants commenced the call by reiterating the positions in their correspondence.

19 Reply Declaration of Lowell D. Mead, ¶ 2.  PARC then provided certain positions.  Dkt.

20 34-4.  The meet and confer process worked as intended by the Court's rules and orders.

21 PARC refused to amend its complaint and the parties confirmed they were at impasse.

22 None of the cases cited by PARC on L.R. 7-3 resembles this one.[6]  PARC faults

23
   _____

24 [6] *See Baker v. Firstcom Music*, No. 2:16-CV-08931-VAP, 2017 WL 9500980, at *4
   (C.D. Cal. Nov. 3, 2017) (*pro se* movant "did not conduct or even request a pre-filing
25 conference"); *Singer v. Live Nation Worldwide, Inc.*, No. 8:11-cv-427-DOC, 2012 WL
   123146, at *2 (C.D. Cal. Jan. 13, 2012) (moving party did not conduct any live meet
26 and confer and only sent correspondence "three days before the filing of the motion");
   *Access Ins. Co. v. Peralta*, No. 8:15-cv-622-JLS, 2015 WL 13036938, at *1 (C.D. Cal.
27 Oct. 13, 2015) (moving party did not meet and confer and merely faxed a letter the
   day before filing its motion); *Thomas v. Brett Sports & Entm't, Inc.*, No. 5:16-cv-480-
28 AB, 2016 WL 4472995, at *1 (C.D. Cal. Aug. 23, 2016) (moving party failed to
   confer at least 7 days prior to motion as L.R. 7-3 requires).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

Facebook for reiterating its positions from its correspondence during the meet and confer without re-reading the text of the letter, but that is a trivial elevation of form over substance. PARC also complains that Facebook did not separately list each patent number, but Facebook and the parties discussed <u>all</u> of the asserted patents' § 101 defects. This motion addresses the first two of those patents.

Even if parties do not confer at all (which is not the case here), that does "not automatically require the denial" of a motion, "particularly where," as here, "the non-moving party has suffered no apparent prejudice." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (citation omitted). PARC does not allege any prejudice; nor could it, since PARC conducted a pre-filing investigation specifically on § 101 before filing suit in November 2020. Dkt. 34-4. Far from suffering any "ambush," PARC knew all along (or should have known) that these patents have serious § 101 problems. There is no reason to delay resolving this threshold legal issue which could otherwise simply be re-noticed as a Rule 12(c) motion. *See Fisher v. HNTB Corp.*, No. 2:18-cv-08173-AB-MRW, 2018 WL 6323077, at *3 (C.D. Cal. Dec. 3, 2018); *Morales v. Camelbak Prods., LLC*, No. 2:18-cv-09457-AB (JCx), 2019 WL 1276189, at *1, n.1 (C.D. Cal. Mar. 19, 2019).

### D.     The Court Should Grant Dismissal With Prejudice.

PARC fails to demonstrate any basis to avoid dismissal with prejudice. First, amendment would be futile because the patents themselves are dispositive. *Whitserve LLC v. Donuts, Inc.*, 809 Fed. Appx. 929, 935 (Fed. Cir. 2020) ("'the specification alone' may suffice to resolve the patent-eligibility inquiry.") (citation omitted). Both patents state nothing more than ideas to be implemented with conventional software and/or hardware that is "now known or later developed." *Id*. at 934 (affirming dismissal with prejudice because "[t]he description of already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional.") (citation omitted). PARC's opposition ignores the specifications' admissions. *Ubisoft Ent., SA v. Yousician OY*, 814

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

Fed.Appx. 588, 592 (Fed. Cir. June 11, 2020) (affirming dismissal with prejudice where "the patent itself makes clear that the claimed invention involves merely the application of conventional computer technology"); *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 Fed.Appx. 780, 787 (Fed. Cir. 2019) (affirming ineligibility where the specification stated that its functions "can be based on 'commonly known' programming steps").

Second, the Court may in its discretion deny leave because PARC fails to attach its proposed amended complaint per L.R. 15-1 and fails to explain what it might amend or why that might matter, which is particularly egregious since PARC investigated these § 101 problems months ago and refused to amend after those problems were laid bare through the parties' meet and confer. *Gardner v. Martino (In re Gardner)*, 563 F.3d 981, 991 (9th Cir. 2009) (affirming district court's discretion in denying leave to amend where the party failed to attach a proposed amended complaint in violation of local rules and "did not explain how they would cure the deficiencies" by amendment); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) ("the district court may exercise its discretion to deny leave to amend due to undue delay, bad faith or dilatory motive" by the party seeking leave) (citation and internal quotes omitted).[7]

## III.   CONCUSION

For the foregoing reasons, Facebook respectfully requests that the Court dismiss the complaint with prejudice as to the '599 and '439 patents.

---

[7] *Aatrix* does not help PARC.  In that case, the patentee filed a "proposed amended complaint" alleging "facts directed to the inventive concepts."  *See* Opp. at 22-23.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW

1

Dated: March 5, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP

*/s/ Heidi L. Keefe*
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
LOWELL D. MEAD (223989)
(lmead@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400

EMILY E. TERRELL (234353)
(eterrell@cooley.com)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899

Attorneys for Defendant
Facebook, Inc.

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

REPLY ISO FACEBOOK'S
MOTION TO DISMISS
Case No. 2:20-cv-10753-AB-MRW