COOLEY LLP
Heidi L. Keefe (178960)
hkeefe@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000

Attorneys for Defendant
FACEBOOK, INC.

MCKOOL SMITH HENNIGAN, P.C.
Alan P. Block (143783)
ablock@mckoolsmith.com
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200

Attorneys for Plaintiff
PALO ALTO RESEARCH CENTER

*See Additional Counsel Next Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>        Defendant. | Case No.  2:20-cv-10753-AB-MRW<br><br>**SCHEDULING CONFERENCE**<br><br>Date: May 21, 2021<br>Time: 10:00 am<br>Courtroom: 7B |
| TWITTER, INC.<br><br>        Defendant. | Case No.  2:20-cv-10754-AB-MRW |
| SNAP INC.<br><br>        Defendant. | Case No.  2:20-cv-10755-AB-MRW |

*Additional Counsel:*

COOLEY LLP
Mark R. Weinstein (193043)
mweinstein@cooley.com
Lowell D. Mead (223989)
lmead@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:  (650) 843-5000

COOLEY LLP
Emily E. Terrell (234353)
eterrell@cooley.com
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Telephone:  (202) 842-7800

Attorneys for Defendant
FACEBOOK, INC.

MCKOOL SMITH HENNIGAN, P.C.
David Sochia (*pro hac vice*)
dsochia@McKoolSmith.com
Ashley N. Moore (*pro hac vice*)
amoore@McKoolSmith.com
Alexandra F. Easley (*pro hac vice*)
aeasley@McKoolSmith.com
300 Crescent Court, Suite 500
Dallas, Texas 75201
Telephone (214) 978-4000

MCKOOL SMITH HENNIGAN, P.C
James E. Quigley (*pro hac vice*)
jquigley@McKoolSmith.com
300 W. 6th Street, Suite 700
Austin, Texas 7870
Telephone: (512) 692-8700

Attorneys for Plaintiff
PALO ALTO RESEARCH CENTER

BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
Ekwan E. Rhow  (174604)
erhow@birdmarella.com
Grace W. Kang (271260)
gkang@birdmarella.com
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
Nicholas Groombridge (*pro hac vice*)
ngroombridge@paulweiss.com
Jenny C. Wu (*pro hac vice*)
jcwu@paulweiss.com

PAUL HASTINGS LLP
Yar R. Chaikovsky (175421)
yarchaikovsky@paulhastings.com
Philip Ou (259896)
philipou@paulhastings.com
David Okano (278485)
davidokano@paulhastings.com
Bruce Yen (277920)
bruceyen@paulhastings.com
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800

Attorneys for Defendant
SNAP INC

Michael F. Milea (*pro hac vice*)
mmilea@paulweiss.com
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
J. Steven Baughman (*pro hac vice*)
sbaughman@paulweiss.com
Megan Raymond (*pro hac vice*)
mraymond@paulweiss.com
Tanya S. Manno (*pro hac vice*)
tmanno@paulweiss.com
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300

Attorneys for Defendant
TWITTER, INC.

**JOINT RULE 26(f) REPORT**

Pursuant to Fed. R. Civ. P. 26(f) and 16(b), Local Rule 26-1, and the Court's February 16, 2021 Order Setting Scheduling Conference (*See, e.g.*, Case No. 2:20-cv-10753, Dkt. 35), Plaintiff Palo Alto Research Center Inc. ("PARC"), and Defendants Facebook, Inc. ("Facebook"), Twitter, Inc. ("Twitter"), and Snap Inc. ("Snap") (collectively, "Defendants") submit this Joint Rule 26(f) Report. Counsel conferred pursuant to Rule 26(f) via telephone April 30, 2021.

A. **Statement of the Case**

    1. **PARC's Statement**

PARC, a wholly-owned subsidiary of Xerox Corporation, has been at the forefront of technological innovation for over 50 years. In addition to inventing the first personal computer, PARC is also responsible for many cutting-edge technologies including the laser printer; Ethernet; and the windows, pop-up menus, and icons that form today's computer "desktop." In recognition of its hard work and innovation, the USPTO has issued PARC thousands of patents. In these suits, PARC asserts infringement of a number of its patents, including U.S. Patent Nos. 8,489,599 (the "'599 Patent"); 9,208,439 (the "'439 Patent"); 9,137,190 (the "'190 Patent"); 8,732,584 (the "'584 Patent"); 7,043,475 (the "'475 Patent"); and 8,606,781 (the "'781 Patent").[1]

The technologies claimed in the Facebook Asserted Patents support many of Facebook's core functionalities, such as its personalized search and targeted advertisement services; and its News Feed, notifications, and group features. Facebook infringes each of the Facebook Asserted Patents through the unauthorized

---

[1] The "Facebook Asserted Patents" are the '599 Patent, the '439 Patent, the '190 Patent, the '584 Patent, the '475 Patent, and the '781 Patent. The "Twitter Asserted Patents" are the '599 Patent, the '439 Patent, the '475 Patent, and the '781 Patent. The "Snap Asserted Patents" are the '599 Patent and the '439 Patent. Collectively, the "Facebook Asserted Patents," "Twitter Asserted Patents," and "Snap Asserted Patents" are referred to herein as the "Asserted Patents."

and unlicensed use of the patented technologies on its websites and apps. Additional detail regarding PARC's infringement claims and requested relief can be found in PARC's Complaint against Facebook, which was filed on November 25, 2020 (Case No. 2:20-cv-10753, Dkt. 1).

The technologies claimed in the Twitter Asserted Patents support many of Twitter's core functionalities, such as its personalized search and targeted advertisement services. Twitter infringes each of the Twitter Asserted Patents through the unauthorized and unlicensed use of the patented technologies on its websites and apps. Additional detail regarding PARC's infringement claims and requested relief can be found in PARC's Complaint against Twitter, which was filed on November 25, 2020 (Case No. 2:20-cv-10754, Dkt. 1).

The technologies claimed in the Snap Asserted Patents support many of Snap's core functionalities, such as its personalized and targeted advertisement services. Snap infringes each of the Snap Asserted Patents through the unauthorized and unlicensed use of the patented technologies on its websites and apps. Additional detail regarding PARC's infringement claims and requested relief can be found in PARC's Complaint against Snap, which was filed on November 25, 2020 (Case No. 2:20-cv-10755, Dkt. 1).

On February 12, 2021, Twitter filed a motion to dismiss pursuant to FRCP 12(b)(6). In its motion, Twitter contended that the '781, '871, and '362 Patents[2] were directed to patent ineligible subject matter and thus invalid under 35 U.S.C. § 101. On March 16, 2021, the Court denied Twitter's motion to dismiss the '781 Patent, but granted the motion as to the '871 and '362 Patents. Snap and Facebook, in their respective cases, also filed motions to dismiss, contending that the '599 and '439 patents are invalid under 35 U.S.C. § 101. On March 16, 2021, the Court denied

---

[2] The '871 Patent refers to U.S. Patent No. 7,167,871, while the '362 Patent refers to U.S. Patent No. 8,966,362.

Snap's and Facebook's § 101 challenges as to those patents.

### 2. Facebook's Statement

Facebook denies that it has infringed any PARC patent and contends that the Asserted Patents are invalid. PARC asserted seven patents against Facebook in its Complaint, filed on November 25, 2020 (the '599 patent, the '439 patent, the '190 patent, the '584 patent, the '781 patent, and the '871 patent). On March 16, 2021 the Court granted-in-part Twitter's Motion to Dismiss, finding the '871 patent invalid under 35 U.S.C. § 101 (Case No. 2:20-cv-10754, Dkt. 39). Facebook filed its Answer on March 30, 2021, denying PARC's claims and allegations, denying that PARC is entitled to any relief, asserting various defenses, and reserving the right to supplement its defenses and/or assert affirmative defenses and/or counterclaims.

### 3. Twitter's Statement

Twitter operates a global Internet platform for public self-expression and conversation in real time. People with a Twitter account can post "Tweets"—messages of 280 characters or less, sometimes with pictures or video—and those messages can be read by other people using the Twitter platform. Each day, people post hundreds of millions of Tweets, engaging in public conversation on virtually every conceivable topic. Twitter disagrees with PARC that the technologies claimed in PARC's patents are part of that core functionality. Twitter also disagrees with PARC's characterization of the Twitter Asserted Patents. For example, the Twitter Asserted Patents are not directed to and do not relate to targeted advertising or the provision of targeted advertisement services.

Twitter denies that it infringes any PARC patent and contends that the Twitter Asserted Patents are invalid. PARC asserted six patents against Twitter in its Complaint, filed on November 25, 2020 (the '599 patent, the '439 patent, the '362 patent, the '781 patent, the '475 patent, and the '871 patent). On March 16, 2021, this Court granted-in-part Twitter's motion to dismiss, finding the '362 patent and '871 patent invalid under 35 U.S.C. § 101. Twitter filed its answer on March 30, 2021,

denying PARC's claims and allegations, denying that PARC is entitled to any relief, asserting various defenses and declaratory judgment counterclaims, and reserving its right to assert additional defenses.

### 4. Snap's Statement

Defendant Snap Inc. is a camera company that subscribes to the belief that reinventing the camera represents our greatest opportunity to improve the way people live and communicate. Part of Snap's offerings include Snapchat, a popular global, multimedia messaging and entertainment application.

Snap denies that it infringes any valid enforceable claim of the patents-in-suit. PARC asserted three patents against Snap in its Complaint. On March 16, 2021, the Court granted-in-part Snap's Motion to Dismiss, finding U.S. Patent No. 8,966,362 invalid under 35 U.S.C. § 101 (Case No. 2:20-cv-10755, Dkt. 36). Snap filed its Answer on March 30, 2021, denying PARC's claims and allegations, denying that PARC is entitled to any relief, asserting various defenses and counterclaims, and reserving the right to supplement its defenses and/or assert affirmative defenses and/or counterclaims. Snap intends to demonstrate that the remaining patents asserted against Snap are invalid under 35 U.S.C. § 101 et seq., including that the claims are invalid over prior art, and like U.S. Patent 8,966,362, U.S. Patent Nos. 8,489,599 and 9,208,439 are invalid under 35 U.S.C. § 101.

### B. Subject Matter Jurisdiction

The parties agree that this is an action for alleged patent infringement arising under federal law, specifically the patent laws of the United States, 35 U.S.C. § 101 *et seq.* This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

### C. Legal Issues

The parties anticipate that the key legal issues include the proper claim construction for the asserted claims of the Asserted Patents, infringement of the Asserted Patents, validity of the Asserted Patents, enforceability of the Asserted

Patents, damages and/or any other remedies for any acts of infringement, and any other matters that the parties have or may plead. The parties are not presently aware of any unusual substantive, procedural, or evidentiary issues.

**D. Parties, Evidence, etc.**

### 1. Key Documents Identified by PARC

PARC identifies the following categories of key documents in this case:

- The file histories for each of the Asserted Patents;
- Documents and source code that describe the design and operation of the accused products;
- Documents relating to the Defendants' development and implementation of the accused products;
- Documents relating to Defendants' marketing, advertising, testing, and use of the accused products ;
- Documents related to the validity and enforceability of, and prior art to, the Asserted Patents;
- Defendants' financial information related to the accused products;
- Documents relating to Defendants' awareness of PARC and the Asserted Patents; and
- Documents relating to the allegations contained in PARC's Complaint.

### 2. Key Documents Identified by the Defendants

Facebook, Twitter and Snap anticipate the following categories of key documents in this case:

- The Asserted Patents and related patents and applications;
- Prosecution of the Asserted Patents and related patents and applications, including reexaminations and/or any post-grant review proceedings before the U.S. Patent and Trademark Office;
- Documents related to the conception, inventorship, diligence, reduction to practice, and the priority date of the Asserted Patents;

- Documents related to the assignment of, title to, and/or to any transfer of rights in the Asserted Patents;
- Technical documents and source code relating to the design and operation of relevant features and/or functions of the accused products;
- Documents relating to the development and implementation of relevant features and/or functions of the accused products;
- Technical documents and source code relating to the relevant features and/or functions of any products, including those of PARC and/or Xerox, that practice one or more claims of the patents-in-suit;
- Financial documents regarding the accused products;
- Documents relating to marketing, advertising, testing, and use of the accused products;
- Documents relating to Defendants' awareness (or lack thereof) of PARC, the Asserted Patents, and the allegations contained in PARC's complaints filed in the above-captioned actions;
- Documents relating to PARC's awareness of the accused products;
- Prior art, including prior disclosures and prior use of the Asserted Patents;
- License and other agreements and/or valuations or assessments relating to the Asserted Patents and to similar technologies;
- PARC's licensing efforts and practices and PARC's commercialization efforts and practices;
- Documents relating to PARC's practice of the Asserted Patents;
- Documents relating to any patent marking or notice(s) of infringement.

### 3.  PARC Percipient Witnesses, Subsidiaries, Parents and Affiliates

PARC anticipates that percipient witnesses in this case may include (i) the named inventors of the Asserted Patents; and (ii) one or more PARC corporate representatives.

PARC previously filed its Certification and Notice of Interested Parties pursuant to Local Rule 7.1-1 (Case No. 2:20-cv-10753, Dkt. 5; Case No. 2:20-cv-107543, Dkt. 5; Case No. 2:20-cv-10755, Dkt. 5), disclosing that Xerox Corporation is the owner of PARC. As of April 1, 2021, PARC's subsidiaries are Thin Film Electronics ASA, PARC China Holdings, Inc., and Metawave Corporation.

### 4. Defendants' Percipient Witnesses, Subsidiaries, Parents and Affiliates

Defendants anticipate that percipient witnesses in this case may include the inventors of the Asserted Patents, parties with knowledge of prior art, and PARC witnesses with knowledge relating to the Asserted Patents and/or related technologies, including for example licensing and/or valuation of the Asserted Patents.

### a. Facebook Percipient Witnesses, Subsidiaries, Parents and Affiliates

Facebook expects that it will call one or more corporate witnesses to introduce the company and the accused products and/or functionalities.

Facebook previously filed its Certification and Notice of Interested Parties pursuant to Local Rule 7.1-1 (Case No. 2:20-cv-10753, Dkt. 27), disclosing that Defendant Facebook, Inc. does not have a parent corporation.  As of the January 27, 2021, the date of Facebook, Inc.'s Form 10-K for the fiscal year ended December 31, 2020, Facebook's subsidiaries are: Andale, LLC; Cassin Networks ApS; Facebook Holdings, LLC; Facebook Ireland Holdings Unlimited; Facebook Ireland Limited; Facebook Operations, LLC; Facebook Payments Inc.; Facebook Technologies, LLC; FCL Tech Limited; Goldframe LLC; Greater Kudu LLC; Instagram, LLC; KUSU PTE. LTD.; MALKOHA PTE LTD.; Morning Hornet LLC; Novi Financial, Inc.; Pinnacle Sweden AB; Raven Northbrook LLC; Runways Information Services Limited; Scout Development LLC; Siculus, Inc.; Sidecat LLC; Stadion LLC; Starbelt LLC; Vitesse, LLC; WhatsApp LLC; Winner LLC; Woolhawk LLC.

1
2

      **b.**      **Twitter Percipient Witnesses, Subsidiaries, Parents and Affiliates**

3
4

      Twitter expects that it will call one or more corporate witnesses to introduce the company and the accused products and/or functionalities.

5
6
7
8
9
10
11
12
13
14

      Twitter previously filed its Certification and Notice of Interested Parties pursuant to Local Rule 7.1-1 (Case No. 2:20-cv-10754, Dkt. 24), disclosing that Twitter does not have a parent corporation.  As of the February 17, 2021 date of Twitter's Form 10-K for the fiscal year ended December 31, 2020, Twitter's subsidiaries are: T.I. Sparrow Ireland I; T.I. Sparrow Ireland II; T.I. Sparrow Holdings III; Twitter Asia Pacific Pte. Ltd.; Twitter Australia Holdings Pty Limited; Twitter Brasil Rede de Informacao Ltda.; Twitter Canada ULC; Twitter Communications India Private Limited; Twitter France S.A.S.; Twitter Germany GmbH; Twitter International Company; Twitter Japan K.K.; Twitter Korea Ltd.; Twitter México S.A. de C.V.; Twitter Netherlands B.V.; Twitter Spain, S.L.; Twitter UK Ltd.

15
16

      **c.**      **Snap Percipient Witnesses, Subsidiaries, Parents and Affiliates**

17
18

      Snap expects that it will call one or more corporate witnesses to introduce the company and the accused products and/or functionalities.

19
20
21
22
23
24
25
26

      Snap previously filed its Corporate Disclosure Statement in this case, disclosing that in November 2017, Tencent Holdings Limited informed Snap that it purchased 10% or more of Snap's stock.  Because Snap's Class A common stock is non-voting, Tencent is not obligated to disclose changes in its ownership of Snap's Class A common stock.  As of February 5, 2021, the date of Snap's Form 10-K for the fiscal year ended December 31, 2020, Snap's subsidiaries are:  Snap LLC; Snap Group Limited; Snap International I Limited; Snap International II Limited; Snap Intermediate Inc.; Snap Group SAS; and Snap Aus Pty Ltd.

27

**E. <u>Damages</u>**

28

      **1.  PARC's Statement**

PARC is currently unable to realistically estimate a range of provable damages at this time. Through discovery and with the assistance of one or more expert witnesses, PARC will provide its computation of damages in accordance with its proposals in the schedule set forth in **Exhibit A** (Parties' Detailed Proposed Schedule) and **Exhibit B** (Scheduling Worksheet). At the very least, PARC is entitled to a reasonable royalty adequate to compensate it for infringement, with pre-judgment and post-judgment interest, under 35 U.S.C. § 284. PARC also reserves its right to treble any damages awarded based upon Defendants' willful infringement.

### 2. Defendants' Statement

Defendants deny that they infringe any valid and enforceable claim of any of the Asserted Patents and deny that PARC is entitled to damages or any other relief. Defendants have not asserted claims for damages. Defendants reserve the right to seek recovery of their reasonable attorneys' fees and costs.

**F. Insurance**

The parties are not aware of any insurance coverage issues in this case.

**G. Motions**

The parties do not at this time anticipate filing any motions seeking to add other parties or claims, motions to transfer venue, or motions for leave to file amended pleadings.

**H. Dispositive Motions**

At the appropriate time, PARC may file a dispositive or partially dispositive motion on infringement, validity, or any other issue that it becomes aware of. Defendants believe that some issues regarding infringement, invalidity, and/or limitations on damages may be appropriate for determination by summary judgment.

**I. Manual for Complex Litigation**

The parties agree that this is not a complex case requiring any of the procedures of the Manual for Complex Litigation.

**J. Status of Discovery**

The parties conducted a Rule 26(f) conference on April 30, 2021, which was attended by counsel for PARC, Facebook, Twitter, and Snap.

**K. Discovery Plan**

### 1. Initial Disclosures Under Rule 26(a)

The parties agree that Initial Disclosures should be exchanged on May 14, 2021, as set forth in Fed. R. Civ. P. 26(a)(1)(C).

### 2. Subjects on which Discovery may be Needed

PARC anticipates seeking discovery on the following topics:

- The file histories for each of the Asserted Patents;
- Documents and source code that describe the design and operation of the accused features and products;
- Documents relating to Defendants' development and implementation of the accused features and products;
- Documents relating to Defendants' marketing, advertising, testing, and use of the accused features and products;
- Documents related to the validity and enforceability of, and prior art to, the Asserted Patents;
- Defendants' financial information related to the accused features and products;
- Documents relating to Defendants' awareness of PARC and the Asserted Patents; and
- Documents relating to the allegations contained in PARC's Complaint.

Facebook, Twitter, and Snap anticipate seeking discovery on the following topics:

- The Asserted Patents and related patents and applications;
- Prosecution of the Asserted Patents and related patents and applications, including reexaminations and/or any post-grant review proceedings before the U.S. Patent and Trademark Office;

- Conception, inventorship, diligence, reduction to practice, and the priority date of the Asserted Patents;

- Assignment of, title to, and/or to any transfer of rights or interests in the Asserted Patents;

- Technical documents and source code relating to the relevant features and/or functions of any products, including those of PARC and/or Xerox, that practice one or more claims of the patents-in-suit;

- PARC's awareness of the accused products;

- Prior art, including prior disclosures and prior use of the Asserted Patents;

- License and other agreements and/or valuations or assessments relating to the Asserted Patents and to similar technologies;

- PARC's licensing efforts and practices and PARC's commercialization efforts and practices;

- PARC's practice of the Asserted Patents;

- Any patent marking or notice(s) of infringement relating to the Asserted Patents.

**3.  Discovery Limitations**

- Document Requests: The parties agree there are no limitations on the number of document requests that can be served by the parties, subject to the general scope and limits of discovery in Rule 26(b)(1).  For avoidance of doubt, each Defendant is permitted to serve individual document requests on PARC in addition to any joint requests that Defendants serve on PARC.

- Requests for Admission:  The parties agree PARC may serve 50 requests for admission on each Defendant.  Defendants may each serve 50 individual requests for admission on PARC. Alternatively, Defendants may each serve 25 individual requests for admission and also serve 25 additional joint requests for admission.  These limitations do not apply to requests for admission to authenticate documents; there is no limit on such requests.

- Interrogatories:  The parties agree that PARC may serve 25 interrogatories on each of Defendants; and Defendants may serve 10 joint interrogatories on PARC and may each serve 15 individual interrogatories on PARC.
- Depositions:
  - [[***Plaintiff proposes:*** PARC shall be permitted 125 hours of non-expert deposition time in each matter, including depositions of witnesses deposed under Fed. R. Civ. P. 30(b)(6).
  - Each Defendant shall be permitted 75 hours of non-expert deposition time, including depositions of witnesses deposed under Fed. R. Civ. P. 30(b)(6).]]

    [[***Plaintiff's statement:*** Under PARC's proposal, all parties would be permitted an alloted number of fact-deposition hours—for party and non-party witnesses. PARC would be permitted 125 hours per case to depose an individual Defendants' witnesses and depose third parties relevant to that case. Defendants would each be permitted 75 hours—which, when combined across Defendants, amounts to 225 total Defendant deposition hours—to depose PARC's witnesses and third parties (including inventors, prior artists, and others). This allocation of hours permits both PARC and Defendants adequate time to take fact depositions.

    Defendants' proposal, on the other hand, gives Defendants more than twice as much party-deposition time as PARC (70 hours for PARC versus 150 hours for Defendants) and further gives Defendants an *unlimited* number of hours to depose and inconvenience third party inventors, prior artists, and other witnesses. Not only is Defendants' proposal unfairly slanted as to party deposition hours, but their failure to impose an outer bound on non-party depositions is inefficient and will inevitably lead to

unnecessarily inconveniencing untold numbers of third party witnesses. Therefore, PARC proposes that its hours-based proposal for non-expert depositions be adopted.]]

o [[***Defendants propose:*** PARC shall be permitted 70 hours of non-expert party deposition time in each matter, including depositions of witnesses deposed under Fed. R. Civ. P. 30(b)(6). Depositions of the inventors named on the Asserted Patents or applications thereto, third-parties, or individuals retained by a party or by counsel for a party as a consultant or otherwise non-permanent employee do not count toward this hours limit.

o Each Defendant shall be permitted 50 hours of party non-expert deposition time, including depositions of witnesses deposed under Fed. R. Civ. P. 30(b)(6). Depositions of the inventors named on the Asserted Patents or applications thereto, third-parties, or individuals retained by a party or by counsel for a party as a consultant or otherwise non-permanent employee do not count toward this hours limit.]]

[[***Defendants' statement:*** Defendants' proposal for deposition time limits fairly balances the needs of this litigation with considerations of efficiency and undue burden. Defendants propose to permit ample time to depose the parties in this litigation (PARC and the three Defendants) while setting reasonable limits to help ensure that the parties' employees are not subjected to unduly burdensome and inefficient deposition discovery. Defendants propose to carve-out the 11 named patent inventors and other third-party witnesses from these time limits, since all 11 inventors will presumptively be deposed by Defendants (and possibly by PARC)

1    in this litigation on potentially relevant issues relating to the
2    patents and their purported inventions.

3    Defendants propose that PARC can take up to 70 hours of
4    deposition time from each Defendant, which is more than
5    sufficient to allow ample discovery of relevant fact witness
6    testimony.  The Federal Rules permit up to 10 depositions, each
7    limited to a maximum 7 hours.  Fed. R. Civ. P. 30(a)(2), 30(d)(1).
8    As such, PARC could take up to 14 depositions of each
9    Defendant's employees averaging 5 hours each, for example, plus
10   any number of additional third-party depositions.  That is more
11   than enough.  By contrast, PARC's proposal to give itself 125
12   hours in each action – a total of 375 hours, or 75 depositions
13   averaging 5 hours each, all of which PARC could impose upon
14   Defendants' employees – is unreasonable, unwarranted, and would
15   only encourage inefficiency and burden upon Defendants'
16   employees.  PARC has not demonstrated any need for that much
17   time.

18   PARC's proposal to subject each Defendant to a maximum time
19   limit of 75 hours to take all depositions in the litigation, including
20   parties and third-parties, is inherently unreasonable and unjustified
21   given that there are 11 named patent inventors.  Those inventors
22   alone will be 11 depositions totaling up to 77 hours.  All of the
23   inventor depositions might need to be taken entirely by one
24   defendant in the event that the other defendants are dismissed from
25   the action.  That would leave no time to depose PARC's other
26   relevant employees, non-inventor 30(b)(6) witnesses, and third-
27   parties such as prior art witnesses, third-party licensing related

28

witnesses, and other individuals or entities that may be relevant in the case.

Under the circumstances, the best approach is to carve-out the named patent inventors and third-parties, as Defendants propose. PARC's concern about undue burden on third-parties is unfounded.  In contrast with the inherent risk that a plaintiff may be tempted to impose burdensome deposition discovery on a defendant's employees as a litigation tactic (which favors lower deposition time limits to depose the parties), Defendants have no interest in wasting time and resources taking unnecessary depositions of third-party witnesses who are not parties to this action.  Each third-party witness can represent the witness's own interests as needed.  As such, there is no need or justification to impose an unreasonable case-wide limit of 75 hours that encompasses all of PARC's employee witnesses, all of the 11 named inventors, and all of other relevant third-party witnesses, which would unfairly prejudice Defendants' defense of the case.]]

o The parties will endeavor to ensure, but cannot guarantee, that 30(b)(6) designees will be deposed once in both a personal (if requested) and corporate capacity.

o All non-expert depositions, no matter the number of parties taking the deposition, shall be limited to seven (7) hours per day. If two or more parties notice the same deposition, the deposition time will be split.

o [[***Plaintiff proposes***:    The deposition of any expert witness testifying in his capacity as an expert shall be limited to seven (7) hours per expert report or disclosure, with the following exceptions.

1
2
3
4
5
6
7
8

- ▪ To the extent an expert report or disclosure of any expert witness testifying on behalf of PARC is addressed to alleged activities (e.g., alleged infringement or damages) of more than one Defendant, such expert may be deposed for an additional five (5) hours per additional Defendant addressed. In no event shall any one Defendant depose such expert concerning such report or disclosure for more than seven (7) hours.

9
10
11
12
13

- ▪ If an expert responds to multiple reports in a single report (e.g. PARC's expert has one validity report responding to reports regarding invalidity from separate experts for each Defendant), such expert may be deposed for an additional five (5) hours per additional Defendant addressed.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- ▪ To the extent an expert report or disclosure of any expert witness testifying on behalf of multiple Defendants is addressed to alleged activities (e.g., alleged infringement or damages) of more than one Defendant, such expert may be deposed for up to five (5) additional hours per additional Defendant addressed, and in no event shall PARC depose such expert concerning the alleged activities of any one particular Defendant addressed in such report or disclosure for more than seven (7) hours. If an expert report of any expert witness testifying on behalf of one or more Defendants addresses a common issue for Defendants (e.g., alleged invalidity of the patent-in-suit), PARC shall be entitled to up to seven (7) hours of deposition time, plus an additional five (5) hours per additional Defendant addressed.]]   [[***Plaintiff's statement:*** PARC believes that

depositions of expert witnesses should be limited to prevent excess time spent unnecessarily deposing experts. For instance, PARC proposes that if it has one expert address infringement by multiple Defendants, or one expert address damages for multiple Defendants, those experts' depositions should be limited to 7 hours for the first report and up to an additional 5 hours for each additional Defendant an expert addresses a report to. And if plaintiff has one expert serve a rebuttal to Defendants' three invalidity reports, PARC's expert's deposition should be similarly limited. This sort of cap makes sense, as there would be numerous common issues that would be best addressed only once (*e.g.*, background, experience, technology background, general views on infringement/validity, etc.). Defendants propose no cap on expert deposition time but instead wish to punt the issue until significant time has been spent and many expert-related decisions have been made. Defendants' proposal will inevitably lead to spending unnecessary time repeatedly deposing experts on the same issues. Thus, PARC proposes that its limitation on expert deposition hours be implemented now so that the parties and Court can save time and resources later.]] [[***Defendants propose***:   The parties shall confer in good faith to determine reasonable and appropriate time limits for expert depositions in connection with the service of expert reports.]] [[***Defendants' statement:*** PARC's "one-size-fits-all" proposal regarding expert depositions is premature at this stage.   Nobody currently knows what particular issues and parties might be addressed

by each expert and expert report. PARC's proposal does not account for the different numbers of unrelated patents that might be addressed by any given expert. For example, the six patents asserted against Facebook could all be addressed by one expert or could be split among multiple experts, and one or more of those experts might also present common opinions on overlapping patents (and/or also separate unrelated issues) for Twitter and/or Snap. The various possible permutations present various different deposition timing scenarios that do not fit PARC's proposal, which could end up arbitrarily and unfairly cutting back the time for Defendants to question PARC's experts on their opinions. Contrary to PARC's suggestion, Defendants have no desire to expend resources "repeatedly deposing experts on the same issues." Defendants have committed to confer in good faith once the scope of expert reports is determined. Common/joint depositions of experts may be appropriate if an expert presents the same opinion as to multiple Defendants. The point is that setting arbitrary limits at this juncture is simply premature, and it could also improperly incentivize gamesmanship in allocating issues among experts and reports. The better course is for the parties to revisit and confer in good faith after the logistics of expert reports become clear.]]

- Without agreement of the parties and the witness, experts may be deposed for no more than seven (7) hours on a single day.

- Any deposition lasting longer than one day shall take place on contiguous days unless the witness (party, third party, or expert) agrees that non-contiguous days are acceptable.

- <u>Elections of asserted claims</u>.  The parties agree to the following limits on elections of asserted claims (where elected claims need not be identical across cases), to be served by the dates indicated in the parties' respective proposed case schedules:

  - Preliminary Election of Asserted Claims:  PARC to identify not more than 10 asserted claims from each patent, and not more than 32 asserted claims total.

  - Final Election of Asserted Claims:  PARC to identify not more than 5 asserted claims from each patent, and not more than 16 asserted claims total, from among the previously identified claims.

- <u>Elections of prior art references</u>.  The parties agree to the following limits on elections of prior art references, to be served by the dates indicated in the parties' respective proposed case schedules.

  - As to defendants Twitter and Snap:

    - Preliminary Election of Asserted Prior Art: each Defendant shall serve a Preliminary Election of Asserted Prior Art, which shall assert no more than twelve prior art references against each patent and not more than a total of 40 references. For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

    - Final Election of Asserted Prior Art: each Defendant shall serve a Final Election of Asserted Prior Art, which shall

identify no more than six asserted prior art grounds per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 20 grounds.

   ○ As to defendant Facebook:

      ▪ Preliminary Election of Asserted Prior Art:  Facebook shall serve a Preliminary Election of Asserted Prior Art, which shall assert no more than twelve prior art references against each patent and not more than a total of 60 references. For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist.

      ▪ Final Election of Asserted Prior Art: Facebook shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art grounds per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 30 grounds.

**L. Discovery Cut-Off**

The parties' positions regarding the schedule for fact discovery are set forth in **Exhibits A** and **B**.

**M. Expert Discovery**

The parties propose that reports from any expert required to provide a report under Rule 26(a)(2) will be due from each party with respect to issues for which that party bears the burden of proof on or before the date set forth in the parties' respective proposals in **Exhibits A** and **B**. Rebuttal reports will be due on or before the date set forth in the parties' respective proposals in **Exhibits A** and **B** and all expert discovery

and depositions will be completed on or before the date set forth in the parties' respective proposals in **Exhibits A** and **B**.

**N. <u>Settlement Conference/Alternative Dispute Resolution ("ADR")</u>**

The parties are in receipt of the Court's Notice to Parties of Court-Directed ADR Program (*see, e.g.*, Case No. 2:20-cv-10753, Dkt. 15).  The parties prefer to engage in private mediation.

**O. <u>Trial Estimate</u>**

Trial will be by jury. Given the number of Asserted Patents and the complex issues involved with each action, the parties presently expect that each trial will take up to approximately 5-9 court days.   At this time, the parties anticipate calling approximately 5-9 witnesses each, including corporate representatives and other fact witnesses, as well as technical and damages expert witnesses.  These estimates may change depending on the number of fact and expert witnesses who are relevant to the issues that are ultimately tried.

**P. <u>Trial Counsel</u>**

- For PARC, at least Alan Block, David Sochia, Ashley Moore, James Quigley, and Alexandra Easley will try the case.
- For Facebook, at least Heidi Keefe, Mark Weinstein, Phil Morton, Lowell Mead and Emily Terrell will try the case.
- For Twitter, at least Nicholas Groombridge, Jenny C. Wu, Tanya Manno, Michael Milea, Ariella Barel, and Timothy Beavers will try the case.
- For Snap, at least Yar Chaikovsky, Steven Marenberg, Chad Peterman, Philip Ou, David Okano, and Bruce Yen will try the case.

**Q. <u>Independent Expert or Master</u>**

The parties do not believe that the Court should consider appointing a master pursuant to Fed. R. Civ. P. 53, or an independent scientific expert.

**R. Schedule Worksheet (and Detailed Schedule Proposal)**

On February 16, 2021, the Court ordered a scheduling conference in this matter for May 21, 2021 at 10:00 am. (*see, e.g.*, Case No. 2:20-cv-10753, Dkt. 35). The Court ordered the parties to "confer on a discovery plan by 21 days before the Scheduling Conference" and "encourage[d] the parties to begin to conduct discovery actively *before* the Scheduling Conference." (*Id.*) The parties' agreements (or alternative proposals) for the case schedule are outlined in **Exhibit A** (Parties' Detailed Proposed Schedule) and **Exhibit B** (Scheduling Worksheet). The parties' positions on scheduling disputes are set forth below.

**1. Plaintiff's Positions**

**a.     Trial Date**

The Court's Pretrial and Trial Dates Worksheet specifies that trial shall be scheduled "**within 18 months after [the] Complaint [is] filed**." *See, e.g.*, Case No. 2:20-cv-10753, Dkt. 45 (emphasis in original). Consistent with this instruction from the Court, PARC proposes that trial for these three matters be scheduled to start on May 24, 2022, which is 18 months from the filing of the Complaints that initiated these actions. PARC further proposes that the cases pending against Snap, Twitter, and Facebook be tried in succession starting on or around this May 24, 2022 date. Defendants propose that trial be scheduled to begin on February 20, 2023, which is **26 months** after the filing of the Complaints.

PARC sees no reason to stray from the Court's instruction and to delay trial in these cases an additional eight months, as requested by Defendants. As PARC's proposed schedule in Exhibits A & B illustrates, a May 24, 2022 trial date allows sufficient time for the parties to conduct fact discovery, expert discovery, summary judgment briefing, and exchange pretrial materials. Defendants attempt to delay resolution of these matters by arbitrarily scheduling trial 26 months, rather than 18 months, from the filing of the Complaints. As discussed below, Defendants' only

1   basis for this delay is their imposition of a number of unnecessary and unjustified
2   intermediate deadlines.

3   Defendants suggest that more time is needed here because much of their
4   information is confidential. Indeed, they point to PARC's already-served RFPs and
5   ROGs to support their argument. Yet PARC's already-served discovery shows why
6   additional deadlines and mandatory disclosures are unnecessary: the parties are able to
7   serve relevant, targeted discovery requests without any additional deadlines or rules
8   that will only needlessly increase costs and disputes. Moreover, many of Defendants'
9   schedule-extending deadlines are premised on Defendants timely producing
10  information that they call confidential. Yet Defendants only responded to PARC's
11  April 20, 2021 protective order proposal (which deals, in part, with confidential
12  information and technical consultants that may review Defendants' confidential
13  information) on May 7, 2021. Defendants' extra deadlines will do more harm than
14  good. The parties are more than capable of getting to trial in the Court's typical 18
15  months, and the parties can each do their part by timely responding to discovery
16  requests such as those PARC has already served.

17  PARC therefore asks that the Court, consistent with its typical practice,
18  schedule trial to begin in late May 2022.

19                        b.    **Local Patent Rules**

20  PARC believes that the Eastern District of Texas' local patent rules ("EDTX
21  Patent Rules"), which are similar to former Judge Guilford's patent rules
22  (https://www.cacd.uscourts.gov/sites/default/files/documents/AG/AD/Standing%20Pa
23  tent%20Rules.pdf), are appropriate for these cases. The EDTX Patent Rules have
24  successfully governed thousands of patent cases in recent years, including complex
25  cases involving multiple defendants and numerous asserted patents. The EDTX Patent
26  Rules are more than sufficient to guide the three infringement matters at issue here.

27  Defendants propose that the Court adopt the Northern District of California's
28  local patent rules, which require the parties to exchange multiple rounds of

infringement, invalidity, non-infringement, validity, and damages contentions. PARC does not believe that exchanging these additional contentions will help efficiently facilitate resolution of these matters, and instead will only further delay trial (as Defendants propose the Court do by pushing trial 26 months out from PARC's filing of the complaints) and present additional opportunities for disputes requiring Court intervention to arise.

Defendants are wrong that multiple rounds of infringement contentions this summer and damages contentions before fact discovery is even close to completion are needed. PARC will disclose its theories of infringement next week. Defendants are sophisticated companies with sophisticated counsel and should have little issue understanding PARC's theories. If Defendants do not understand PARC's theories, they are free to follow up with PARC. Once Defendants produce relevant damages discovery, which PARC has strived to ask for in its already-served discovery, PARC will timely and appropriately respond to any relevant discovery requests that Defendants serve. At this time, the parties simply do not need to add extra deadlines and extra time to the case schedule.

PARC therefore asks the Court to adopt the EDTX Patent Rules.

c. **Limitations on Asserted Claims and Prior Art References**

PARC proposes following the Eastern District of Texas's Model Order Focusing Patent Claims and Prior Art to Reduce Costs ("EDTX Model Order," http://www.txed.uscourts.gov/sites/default/files/goFiles/13-20.pdf) for both the limitation of asserted claims and asserted prior art (except as to Facebook, which PARC has agreed to increase the prior art limits for). Defendants, on the other hand, propose moving up PARC's deadline to narrow claims—before invalidity construction and early claim construction deadlines which will give PARC additional information to more efficiently narrow this case—but provide themselves with the

benefit of not having to narrow their own invalidity case (the final election of prior art) until discovery is over with and expert reports have been served.

The EDTX Model Order—including its proposed timing for both sides—works. PARC therefore asks the Court to adopt the EDTX Model Order.

### 2. Defendants' Positions

To benefit the Court and the parties and help streamline this litigation, Defendants propose a case schedule that is carefully tailored to the particular needs of these cases. Defendants' proposed schedule is explained below.

### a. Trial Date

Defendants' proposed schedule results from the unique case-specific points discussed below. These three cases brought by PARC against Facebook, Twitter, and Snap collectively form a large, complex multi-party patent litigation that requires sufficient time to unfold in an orderly manner that will minimize burdens on the Court. PARC asserts 6 unrelated patents with 133 claims and 11 different named inventors against three unrelated Defendants, each with its own unique products and systems. PARC has already served 251 document requests and 57 interrogatories before even disclosing its infringement contentions. PARC seeks a discovery plan permitting up to 600 hours for fact witness depositions alone (excluding expert depositions), equivalent to 85 full-day depositions or 170 half-day depositions.

The chart below identifies the remaining patents[3] that PARC asserts against each defendant.

| Patent | Facebook | Twitter | Snap |
|--------|----------|---------|------|
| 7,043,475 | X | X | |

---

[3] PARC previously asserted U.S. Patent No. 7,167,871 against Facebook and Twitter, and U.S Patent No. 8,966,362 against Twitter and Snap. However, PARC's infringement claims with respect to these patents were dismissed by the Court's March 16, 2021 Order (*see* Case No. 2:20-cv-10754, Dkt. 39) finding both patents invalid under 35 U.S.C. § 101.

| 8,489,599 | X | X | X |
| 8,606,781 | X | X | |
| 8,732,584 | X | | |
| 9,137,190 | X | | |
| 9,208,439 | X | X | X |

Defendants respectfully submit that a trial within 18 months after the complaints is not reasonably practicable here. Critically, the effective starting point in patent cases is the disclosure of infringement contentions that identify "specifically where" infringement is found in each accused product, as directed by patent local rules and discussed further below. *See* N.D. Cal. P.R. 3-1(a); E.D. Tex. P.R. 3-1(a). The patent local rules are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech Co.*, 521 F.3d 1351, 1366, n.12 (Fed. Cir. 2008) (citation omitted) (discussing N.D. Cal. local rules).

Here, the technical details of Defendants' accused back-end systems are confidential. Thus, at this time, PARC's infringement allegations are based on speculative "information and belief" that infringement might have occurred, for every defendant and asserted patent.[4] As such, until it receives technical discovery, PARC cannot crystallize an infringement theory that identifies specifically where the claim elements might be located in Defendants' confidential code. Only after PARC serves supplemental contentions accounting for initial technical discovery will this litigation be properly set on track. Defendants' proposed schedule will have the cases ready for trial within 18 months thereafter. If PARC wanted the case to progress faster, it could have served its initial infringement contention claim charts based on public

---

[4] *See PARC v. Facebook*, Dkt. 1, ¶¶ 39, 45, 66, 70, 91, 99, 122, 128, 151, 158, 179, 186; *PARC v. Twitter*, Dkt. 1, ¶¶ 40, 46, 67, 71, 118, 125, 147; *PARC v. Snap*, Dkt. 1, ¶¶ 39, 45, 66, 70.

1   information at any time over the past several months, but instead it waited, and it has

2   chosen to withhold those claim charts until two business days after this filing.

3        PARC's complaint of an alleged delay is undermined not only by its

4   withholding of its initial infringement contentions, but also the fact that PARC waited

5   for *years* before filing suit. PARC asserts patents that issued years ago—between

6   2006 and 2015—against Facebook, Twitter, and Snap products and features that were

7   introduced many years ago. Before filing suit, PARC never contacted any defendant

8   to discuss an amicable resolution. The infringement allegations in this litigation are

9   brand-new; they are not the culmination of any long-running dispute. PARC chose to

10  sue three unrelated defendants at the same time, in the same court, on a large number

11  of unrelated patents. There is no good basis for PARC's newfound sense of urgency.

12  PARC will not be unduly prejudiced by a schedule that proceeds in an orderly and

13  considered manner to benefit the Court and the parties as discussed further below.

14             **b.**      **Patent Local Rules**

15       Defendants propose adoption of the Northern District of California ("N.D.

16  Cal.") Patent Local Rules as tailored to the unique facts of this complex litigation.

17  Patent cases in this Court routinely apply the N.D. Cal. rules, and for good reason.[5]

18  The N.D. Cal. rules were the first Patent Local Rules in the nation, adopted more than

19  20 years ago. They have received extensive updates based on practical experience and

20  judicial committee review. Courts in this district cite the N.D. Cal. rules and

21  associated case law precedent as persuasive authority.[6]

22

23  [5] *See*, *e.g.*, *E.g.*, *Throop v. Google*, Case No. 2:19-cv-10602, Dkt. 37, Ex. B; *Hoist v.*

24  *Tuffstuff Fitness*, Case No. 5:17-cv-01388, Dkt. 61; *ProSource Discounts, Inc. v. Dye et al.*, Case No. 2:19-cv-00489, Dkt. 43; *Mosaic Brands v. The Ridge Wallet LLC*,

25  Case No. 2:20-cv-04556, Dkt. 69; *Snap Lock Indus., Inc. v. Swisstrax Corp.*, Case No.

26  5:19-cv-00948, Dkt. 31; *Unique Garage Door Inc. v. Clopay Building Prods. Co., Inc. et al*, Case No. 8:19-cv-00756, Dkt. 27.

27  [6] *See*, *e.g.*, *Zenith Elec., LLC v. Sceptre, Inc.*, No. LA 14-cv-05150 JAK (AJWx), 2015

28  U.S. Dist. LEXIS 199091 at *3-4 (C.D. Cal. Nov. 2, 2015) (citing N.D. Cal. patent rules case law as persuasive authority); *BlackBerry Ltd. v. Facebook, Inc. et al.*, No.

**JOINT RULE 26(F) REPORT**
**Case Nos. 2:20-cv-10753; 2:20-cv-10754;**
**2:20-cv-10755**

1    Defendants' proposal properly suits this case for the following reasons.

2    <u>The parties are based in N.D. Cal.</u>  The N.D. Cal. rules are naturally appropriate

3  in this case because the parties themselves are based in Northern California.  PARC,

4  as its name indicates, is based in Palo Alto, in the Northern District.  Facebook and

5  Twitter are both headquartered nearby in the Bay Area.  Snap has two office locations

6  in the Bay Area in addition to its headquarters in Los Angeles.  There is no reason to

7  apply rules from the Eastern District of Texas ("E.D. Tex.") as PARC proposes.

8    <u>The N.D. Cal. rules will reduce burden on the Court</u>.  Adopting the N.D. Cal.

9  rules will streamline this case for the Court and parties much more than the E.D. Tex.

10  Rules—precisely the opposite of PARC's assertion.  The core function of patent local

11  rules is to mandate patent-specific disclosures in an orderly, streamlined manner rather

12  than leaving those disclosures to *ad hoc* discovery requests and responses.  The E.D.

13  Tex. rules are based on an older version of the N.D. Cal. rules that is now long

14  outdated.  Both sets of rules, for example, require early infringement and invalidity

15  contentions.  However, after years of review and revision, the N.D. Cal. rules are now

16  significantly more comprehensive than the E.D. Tex. rules.  For example, only the

17  N.D. Cal. rules require (1) damages contentions from both sides, (2) relevant

18  agreements from both sides (for example, relevant patent license agreements), (3)

19  sales/financial information from the defendant, (4) disclosures regarding the patentee

20  practicing its patents, (5) disclosures regarding the timing of alleged infringement and

21  damages, (6) evidence regarding marking products with patent numbers, and (7)

22  documents evidencing the plaintiff's patent ownership—none of which is required by

23  the E.D. Tex. rules.  *See* N.D. Cal. Pat. L.R. 3-1(h), 3-2(d)-(j), 3-4(c)-(e), 3-8, 3-9.  It

24  is thus no surprise that patent cases in this Court routinely adopt the N.D. Cal. rules.

25

---

26  2:18-cv-01844-GW-KS, slip op. at 2 (C.D. Cal. Aug. 31, 2018) ("Although the Court

27  adopts Judge Guilford's Patent Local Rules, to the extent necessary and appropriate, the parties may rely on legal authority developed based

28  on the Northern District of California's Patent Local Rules . . .").

The advantage for the Court is more patent-related discovery that is court-ordered in sequence, reducing the likelihood of disputes over discovery requests that burden the Court.

The damages-related discovery required by the N.D. Cal. rules is particularly important for an early assessment of the proper scope, relevance, and proportionality of discovery in this case.  *See* Fed. R. Civ. P. 26(b)(1) (discovery must be relevant and "proportional" in view of factors including "the amount in controversy").  Indeed, in this filing, PARC flouts the Court's order to disclose "[t]he realistic range of provable damages" and proclaims that it plans to withhold its damages positions until *expert discovery*, *after the close of fact discovery*.  At the same time, PARC has already served on Defendants *251 document requests and 57 interrogatories before* disclosing its infringement contentions that will specify the accused products and features.  Adopting the comprehensive N.D. Cal. rules will provide a much better framework than the disorderly, scattershot approach that PARC apparently seeks.

Defendants' proposed early supplementation of infringement contentions will reduce burden on the Court.  Another critical fact informing the case schedule is that PARC's initial infringement contentions will not be able to specifically identify any alleged infringement in the confidential details of Defendants' accused systems. Unlike a case accusing, for example, mechanical devices where infringement can be easily assessed by simply looking at the device, this case accuses back-end systems with code and technical details that are currently unavailable to PARC.   Under PARC's proposed schedule, it would not serve infringement contentions crystallizing its theories with those confidential details *before* the Court engages in claim construction as the patent rules were designed to ensure.  *O2 Micro*, 521 F.3d at 1364, 1366, n.12 (the patent rules are designed to ensure to ensure that patentees "crystallize their theories of the case early in the litigation" and "prevent the 'shifting sands' approach to claim construction") (citation omitted).

1   For this case to proceed consistent with the letter and spirit of the patent rules, it

2   is critical that PARC serve meaningful infringement contentions *before* invalidity

3   contentions and claim construction.   Until PARC serves contentions that pinpoint

4   "specifically where" each element is found in the confidential back-end systems, the

5   parties and Court cannot fully evaluate claim construction—potentially wasting the

6   Court's and parties' resources with multiple rounds of claim construction as PARC's

7   positions take the "shifting sands" approach. *See also O2 Micro*, 521 F.3d at 1362-64

8   (explaining that "[c]laim construction is a matter of resolution of disputed meanings

9   and technical scope, to clarify and when necessary to explain what the patentee

10   covered by the claims, for use in the determination of infringement") (citation

11   omitted).

12   Defendants propose a schedule that properly fits these circumstances.

13   Defendants have accepted PARC's proposal to serve on May 11 its initial

14   infringement contentions based on public information and belief, disclosing the items

15   that are required by both N.D. Cal. and E.D. Tex. *See* N.D. Cal. P.R. 3-1(a)-(c), 3-

16   2(a)-(c); E.D. Tex. P.R. 3-1, 3-2.   To enable PARC to crystallize its theories,

17   Defendants will then, within 30 days, produce confidential technical documentation

18   for the products and features targeted in the contentions.   N.D. Cal. P.R. 3-4(a).

19   PARC can then review that discovery and within 40 days serve supplemental

20   infringement contentions disclosures that comply with the N.D. Cal. rules, along with

21   its preliminary election of asserted claims as discussed further below.   N.D. Cal. P.R.

22   3-1(a)-(i), 3-2(d)-(j); *see* N.D. Cal. P.R. 1-3 (providing that the N.D. Cal. patent rules

23   may be modified "based on the circumstances of any particular case" and typically "at

24   the case management conference").

25   Defendants' proposal streamlines the case by permitting PARC a "free"

26   supplement after receiving the technical discovery to bring its contentions into

27   compliance with the patent rules.   Amendment of infringement contentions in view of

28   discovery requires diligent "good cause" that is often disputed. *See* N.D. Cal. P.R. 3-

6, E.D. Tex. P.R. 3-6; *O2 Micro*, 521 F.3d at 1366 ("'good cause' requires a showing of diligence").   Under Defendants' proposal, however, PARC's supplemental contentions served within 40 days will be deemed to have good cause.  After PARC serves its amended contentions and claim election, the case moves forward with Defendants serving responsive invalidity contentions. *See* N.D. Cal. P.R. 3-3.

PARC does not articulate any principled objection to Defendants' proposed schedule.  It cannot dispute that it will need to review confidential technical discovery to crystallize its infringement theories.  PARC's own proposed schedule would leave open the critical question of when, if ever, PARC might disclose contentions that crystallize its infringement theories in view of the confidential technical discovery, with no meaningful disclosure before claim construction and the risk of "shifting sands" undermining the Court's claim construction efforts.

<u>Defendants' proposed schedule will avoid massive wasted resources on invalidity contentions</u>.  Defendants' proposed schedule provides the additional benefit of narrowing the asserted claims *before* Defendants serve invalidity contentions. There are 133 claims in the asserted patents.  PARC refuses to disclose how many claims it will assert in the contentions that it plans to serve only two business days after this filing.  PARC has agreed, however, that it will elect no more than 32 total claims in its preliminary claim election prior to claim construction.

With over 100 claims in play for an infringement case that is currently little more than "information and belief" guesswork, it would be hugely wasteful for Defendants to prepare invalidity contentions addressing scores of claims that will only be dropped soon thereafter, as PARC would propose. *See Network Prot. Scis., LLC v. Fortinet, Inc*., No. C 12-01106 WHA, 2013 WL 1949051, at *3 (N.D. Cal. May 9, 2013) (discussing the "bone-crushing burden of conducting a prior art search for more than fifty patent claims").  District courts have recognized the wisdom of narrowing the asserted claims *before* invalidity contentions as Defendants propose here. *See*, *e.g.*, *Medtronic Minimed Inc. v. Animas Corp.*, No. 12-cv-04471 RSWL (RZx), 2013

WL 3322248 (C.D. Cal. Apr. 5, 2013) (limiting 255 claims down to no more than four claims per asserted patent because it would be improper to require invalidity contentions on all claims where "the vast majority of those contentions will become moot upon Plaintiffs' reduction of claims shortly thereafter"); *Morsa v. Facebook*, Case No. 8:14-cv-00161-JLS-JPR, slip op., D.I. No. 51 at 4 (C.D. Cal. Sept. 30, 2014) (requiring an election of no more than 20 claims before invalidity contentions: "By requiring Plaintiff to elect claims before Facebook serves invalidity contentions, the Order allows Facebook to focus on those claims Plaintiff actually intends to assert in these proceedings."); *Software Rights Archive v. Facebook*, Case No. 12-cv-3970, slip op., D.I. No. 41 at 3 (N.D. Cal. Feb. 15, 2013) (requiring selection of no more than 30 claims before invalidity contentions—"judicial efficiency and economy is best served by limiting the number of claims asserted before defendants spend time and resources preparing invalidity contentions.").

PARC will not suffer any undue prejudice because it still would be permitted to assert up to 32 different total claims—a very large number of unique claims—after reviewing Defendants' confidential technical discovery. *See also Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd., et al.*, Case No. CV 19-4952-MWF (RAOx), Dkt. No. 97, at 11 (C.D. Cal. Aug. 30, 2019) (ordering a reduction of asserted claims from 68 to 15 prior to invalidity contentions—"It appears that the prejudice that Plaintiff will suffer from reducing its claim at this stage is far outweighed by the burden Defendants would face if the asserted claims were not reduced. It would also not promote judicial economy given that Plaintiff plans to reduce its claims to 30 claims or fewer only a few weeks after Defendants disclose the invalidity contentions.").

PARC's proposed schedule is unworkable. PARC waited for years before bringing this massive litigation and now wants to rush headlong to trial. PARC's proposed schedule is unreasonably aggressive. It would only unnecessarily burden the Court and parties by attempting to force this sprawling, complex litigation into far too short a time span. For example, PARC's schedule would not accommodate fully

JOINT RULE 26(F) REPORT
Case Nos. 2:20-cv-10753; 2:20-cv-10754;
2:20-cv-10755

compliant supplemental contentions before claim construction, potentially rendering the entire *Markman* process a premature and wasted effort.  PARC's schedule is also unworkable for the fact discovery period after the Court's claim construction ruling, when the vast majority of party depositions typically occur so that the parties can account for the Court's rulings.  PARC would propose a claim construction hearing in late September 2021—too early and premature under the circumstances—and then have fact discovery close little more than two months after the hearing, which is far too short a time period given the potential for literally hundreds of hours for scores of depositions as well as the rest of post-*Markman* fact discovery to be completed in such a cramped time period.  PARC's newfound urgency, after it waited years to file suit and withheld its initial infringement contentions for months, would likely burden the Court with urgent discovery disputes, rather than permitting a reasonable period of time (as Defendants propose) for the parties to accommodate schedules and voluntarily work through any discovery issues that arise.

PARC's schedule is similarly unworkable for expert discovery and motion practice.  PARC proposes allowing Defendants only 2 weeks to prepare and serve rebuttal expert reports on infringement and damages, responding to PARC's infringement and damages reports on up to 6 patents that typically contain hundreds of pages of detailed technical analysis including source code and damages-related evidentiary analysis.  Then all of the parties' experts—perhaps more than a dozen experts across the four parties—would all need to be deposed over the holidays between December 23 and January 7, with summary judgment briefing due January 7, which makes no sense.  PARC's proposed schedule is unreasonable, particularly given the size and complexity of this case.  Having sat and waited for years and months up to this point, PARC has no good justification to require such an unreasonably aggressive schedule.

### c.   Limitation on Asserted Claims

While the parties have agreed on numerical limits on phased elections of asserted claims and prior art, the parties have different views as to the appropriate timing for PARC's preliminary election of asserted claims. Both sides propose and agree that this preliminary election should occur within 40 days of PARC receiving Defendants' technical document productions. Only Defendants' proposed schedule, however, would properly have the claim narrowing occur *before* invalidity contentions, as discussed previously. PARC's proposed timing, on the other hand, would force Defendants to waste "bone-crushing" effort preparing invalidity contentions on potentially scores of different claims that will not be dropped until shortly after the invalidity contentions, which makes no sense as discussed previously. The appropriate timing for narrowing asserted claims, prior to invalidity contentions, is another reason supporting adoption of Defendants' proposed schedule.

There is no basis to separately also enter an Eastern District of Texas model order regarding focusing claims and prior art, as PARC proposes, and Defendants object to entry of that inapplicable model here. Prior to this filing, the parties reached agreement on unique case-specific parameters for elections of asserted claims and prior art. Those agreed parameters are stated above. The only disputed point regarding elections relates to the timing of elections in the context of the parties' proposed case schedules, and the parties have explained their positions on that issue.

No further separate entry of a model order is needed or appropriate. In the event that the Court nevertheless deems it appropriate to enter a separate model order, Defendants would propose to follow the Federal Circuit Advisory Committee's Model Order Limiting Excess Patent Claims and Prior Art ("Federal Circuit Model"), as modified by the case-specific points set forth herein.[7] The Federal Circuit Model has

---

[7] Available at https://patentlyo.com/media/docs/2013/07/model-order-excess-claims.pdf.

been expressly suggested for patent cases by Judge Kronstadt and former Judge Guilford in this District.[8]

By contrast, the Eastern District of Texas model that PARC proposes is a different, modified version of the Federal Circuit Model that has no place in this California litigation.

**S. <u>Other Issues</u>**

- Pursuant to Federal Rule of Evidence 502(d) and (e), if documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the produced documents, information or other material. The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.
- The parties consent to electronic service under Fed. R. Civ. P. 5(b)(2)(E).

---

[8] *See* https://www.cacd.uscourts.gov/sites/default/files/documents/JAK/AD/Civil%20Case%20Standing%20Order%20%28Revised%2003-25-19%29.pdf (Initial Patent Rules), § 2.3; https://www.cacd.uscourts.gov/sites/default/files/documents/AG/AD/Standing%20Patent%20Rules.pdf, § 2.3.

- The parties agree to use their best efforts to negotiate a joint proposal addressing electronically-stored information.

- The parties agree to use their best efforts to negotiate a proposed protective order.

- The parties agree that privileged communications created on or after November 25, 2020 (*i.e.*, the date of the filing of the above-captioned actions) need not be included on any privilege log, absent agreement of the parties or showing of good cause.

- The parties propose that the number of claim terms for construction be discussed at a date closer to the deadline for Exchange of Proposed Claim Terms for Construction set forth in **Exhibit A** and in view of the Preliminary Election of Asserted Claims. The parties believe that a claim construction hearing can be completed in one court day. The parties have agreed to discuss the order of presentation closer to the date of the claim construction hearing. The parties are unlikely to offer live expert testimony at the claim construction hearing, but will confirm with the Court closer to the date of the claim construction hearing. The parties may serve declarations of an expert as part of claim construction briefing, and may depose each expert prior to the close of claim construction discovery. The parties propose educating the Court on the technology relevant to the Asserted Patents at the claim construction hearing.

The parties are not at this time aware of any other issues that should be presented to the Court.

Respectfully Submitted,

Dated: May 7, 2021

Dated: May 7, 2021

/s/ David Sochia

Alan P. Block (143783)
ablock@mckoolsmith.com
MCKOOL SMITH HENNIGAN, P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200

*Attorneys for Plaintiff*
*Palo Alto Research Center Inc.*

/s/ Heidi L. Keefe

Heidi L. Keefe (178960)
hkeefe@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:  (650) 843-5000

*Attorneys for Defendant*
*Facebook, Inc.*

Dated: May 7, 2021

Dated: May 7, 2021

/s/ Nicholas Groombridge

Nicholas Groombridge (*pro hac vice*)
ngroombridge@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

*Attorneys for Defendant*
*Twitter, Inc.*

/s/ Yar S. Chaikovsky

Yar R. Chaikovsky (175421)
yarchaikovsky@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800

*Attorneys for Defendant*
*Snap Inc.*

1

## <u>ATTESTATION OF AUTHORIZATION</u>

2

3      Pursuant to Central District Local Rule 5-4.3.4(a)(2)(i), the filer of this

4 document hereby attests that all other signatories listed, and on whose behalf the filing

is submitted, concur in the filing's content and have authorized this filing.

5

6 Dated: May 7, 2021                    Respectfully submitted,

7

8                                        */s/ David Sochia*_____

David Sochia

9

10                                       *Attorney for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28